# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

_____

| | |
|---|---|
| William R. Hall, Jr., individually and as a representative of the classes, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| TransUnion Rental Screening Solutions, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

_____

COMES NOW, William R. Hall, Jr. ("Plaintiff"), on behalf of himself and the classes set forth below and states as follows:

## INTRODUCTION

1. This is a class action for damages, costs and attorneys' fees brought against Defendant TransUnion Rental Screening Solutions, Inc., ("Defendant" or "TU Rental") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3. Defendant falsely reported to Plaintiff's potential landlord that Plaintiff had been convicted of a serious sexual offense. In fact, the conviction reported belonged to an entirely different individual with a similar name to Plaintiff. The individual who was actually convicted of the sexual offense was born more than 30 years before Plaintiff, has a different name than Plaintiff, and has a vastly different physical description from Plaintiff.

4. Defendant's reporting cost Plaintiff his chance to rent the property of his choice, caused him serious distress and embarrassment, and caused him financial loss.

5. Defendant's failure to require matching on anything other than an individual's name is a predictable cause of mismatches like that suffered by Plaintiff, and could have been easily remedied had Defendant consulted more comprehensive data sources.

6. Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of its records. Its failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

7. On behalf of himself and a class of similarly situated individuals, Plaintiff brings claims pursuant to § 1681e(b) of the FCRA.

8. When Plaintiff requested a copy of his file in an attempt to pinpoint the

source of the error, Defendant reported inaccurate and contradictory information about the source of the reported record.  Because of this, on behalf of himself and a class of similarly situated individuals, Plaintiff brings claims pursuant to § 1681g of the FCRA.

## PARTIES AND JURISDICTION

9. Individual and representative Plaintiff William R. Hall, Jr., is a resident of Canton, Georgia.

10. Plaintiff is a natural person and a "consumer" as protected and governed by the FCRA.

11. Defendant TransUnion Rental Screening Solutions, Inc., provides consumer reports for rental screening purposes.  Defendant sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective landlords.  Defendant is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

12. Among other things, Defendant provides background checks and credit reports to landlords for their use in deciding whether to rent to a prospective tenant.  These reports are provided in connection with a business transaction initiated by the

consumer.

13.     Defendant is a Delaware corporation headquartered in Colorado.

14.     The Court has personal jurisdiction over Defendant.  Defendant conducts substantial business in this District, including issuing background checks and credit reports on residents of this District, including Plaintiff's report.

15.     This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in the District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

17.     In early 2018, Plaintiff was hired as the manager of an auto dealership in Newnan, Georgia, to start work in August 2018.  Because his new job was over an hour away from the home he owns with his family in Canton, Georgia, Plaintiff sought to rent a property in Newnan to use during the work week.

18.     Plaintiff has a preference for renting newly-constructed property.  In looking for such properties in Newnan, he found only one that met his needs, owned by non-party Gabriel Calderon.  Ms. Calderon arranged for her daughter to show

Plaintiff the property, and Plaintiff sought to rent the property for $1500 a month.

19.     On July 6, 2018, Ms. Calderon obtained a report from Defendant about Plaintiff. This report is attached as Exhibit A.

20.     On that report, Defendant indicated that Plaintiff had been subject to one criminal "court action:" a charge of "CRIM SEX COND W/MINOR(1ST)" in Aiken County, South Carolina. (Ex. A at 5.)

21.     Defendant's reporting was false. Plaintiff has no criminal record – and certainly has never been convicted of a sexual offense.

22.     After receiving Defendant's report, Ms. Calderon cut off contact with Plaintiff and refused to rent to him.

23.     Defendant also sent a copy of the report to Plaintiff. The report was received by mail and opened by Plaintiff's wife, causing Plaintiff considerable embarrassment and confusion.

24.     In approximately five minutes on the internet, Plaintiff was able to pinpoint the flaw in Defendant's reporting: Defendant was reporting the conviction of another individual named William R. Hall, who had been born in 1936, convicted in 1994, and who is likely deceased. (*See* Ex. B.)

25.     The other William Hall, besides having the same first and last name, has virtually no other links with Plaintiff. In addition to being born over 30 years

after the other William Hall, Plaintiff is William Hall, *Jr.*¸ while the other William Hall is not.  Further, Defendant reported a number of physical characteristics of the other William Hall, including a height of 5'8", a weight of 150 pounds, hazel eyes, grey hair and an olive complexion.  None of these descriptors fits Plaintiff, and simply consulting Plaintiff's driver's license would confirm this.

26. Plaintiff was mortified that his potential landlord now thought he was a sex offender.  He was further mortified when he considered that his potential landlord had arranged for their young daughter to give him a tour of the property.

27. In his new position as the general manager of an auto dealership, Plaintiff will be the face of the business, including appearing in advertising.  Plaintiff is very concerned that the false perception that he is a sex offender will damage his effectiveness in his new job.  Newnan, Georgia, is a small community, and Plaintiff has a real concern that false rumors, initiated by Defendant's erroneous reporting, could damage his standing in the community.

28. Having been denied the ability to rent his desired property, Plaintiff faced limited time to find a new rental before his employment began.  He ended up renting a unit which is less desirable to him, because it is not new construction, which costs considerably more ($2100 per month), and which is further from his work.

29. In August 2018, Plaintiff requested a copy of his file from Defendant

pursuant to § 1681g of the FCRA. On the copy of his file that he received, Defendant states on page five that the "dataset" containing the sex offense was the "SC Dept of Corrections." However, on page 36, it indicates that the "[t]he public record sources used to generate the report(s) are as follows: South Carolina, Aiken County." (Ex. A.)

30.  The South Carolina Department of Corrections is a different entity from Aiken County, South Carolina.

31.  It is readily apparent that Defendant did not consult the Aiken County data in generating its report – if it had, it would have noticed that the individual convicted was more than 30 years older than Plaintiff. The information available on the Aikin County court's website includes a year of birth, but no physical description. (Ex. B.) The information reported by Defendant incudes a physical description, but lists "N/A" for both date of birth and age. (Ex. A.) It is clear, therefore, that Defendant consulted the Dep't of Corrections data, not the Aiken County data, when preparing its report, likely because that data was more readily available and/or more affordable.

32.  Defendant misrepresented its sources of information when it stated that "[t]he public record sources used to generate the report(s) are as follows: South Carolina, Aiken County." (Ex. A.)

## **FACTS DEMONSTRATING THAT DEFENDANT WILLFULLY FAILED TO USE REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY**

33.     If Defendant had reasonable procedures to ensure maximum possible accuracy, it would have determined that the sexual offense it reported did not belong to Plaintiff.

34.     If Plaintiff was able to find the source of Defendant's error in five minutes on a court's website, Defendant should have been able to avoid that error in the first instance.

35.     Defendant did not consult the readily available online court records before accusing Plaintiff of being convicted of a serious sexual offense.  If it had, it would have avoided its error.

36.     Instead, Defendant chose to rely on Department of Corrections data, which did not include any date of birth or age information.  Defendant likely did this because this data was easier to access in bulk and/or more affordable than the court data.

37.     Defendant appears to have erroneously matched Plaintiff with this conviction record based on insufficient data.  Defendant's report makes clear that it did not have the convicted William Hall's date of birth, age, social security number or residence.  (Ex. A at 5 (listing "N/A" for each field).)  If Defendant had obtained

any of those data fields, it would have discovered that Plaintiff was not a match.

38. If Defendant had even carefully considered the name, it would have discovered that Plaintiff was not a match:  Plaintiff is William R. Hall, **Jr.**, and the convicted William R. Hall is not.  It is also likely that Plaintiff and the convicted William R. Hall do not have the same middle name, only the same middle initial.

39. Defendant also ran a search which found that Plaintiff was not on any sex offender registry, a finding that contradicts Defendant's own reporting.  (Ex. A at 34.)  This contradiction, however, did not cause Defendant to reevaluate its erroneous reporting.

40. Other tenant screening agencies have faced governmental scrutiny for substantially similar activities.  *See*, *e.g*., *FTC v. Realpage, Inc.*, No 3:18-cv-2737 (FTC settlement with tenant screening agency which failed to comply with 15 U.S.C. § 1681e(b) because it used loose matching criteria to link potential tenants with criminal records).

### **FACTS DEMONSTRATING THAT DEFENDANT WILLFULLY FAILED TO IDENTIFY ITS SOURCE**

41. Defendant, in its disclosure to Plaintiff, identified two different sources for the records it erroneously reported regarding Plaintiff.  (*See supra* ¶¶ 29.)

42. Defendant made it appear as if it had consulted the court records at

issue, when it appears that it actually relied on a more readily available and/or more affordable record source which did not even include any information about date of birth or age.

43. It is important that Defendant clearly report its sources of information in response to §1681g requests, so that consumers can correct erroneous information at the source, and/or identify why and how erroneous information about them is reported. If Defendant had actually consulted the sources that it claimed to consult, Defendant's reporting error would have been avoided.

44. Defendant has clearly failed to do so, as Defendant's disclosure is self-contradictory. If Defendant was serious about complying with §1681g, it would review its disclosures for consistency and accuracy.

**GENERAL FACTS REGARDING DEFENDANT'S WILLFULNESS**

45. In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, *inter alia*, the following:

    a. The FCRA was enacted in 1970; Defendant has had 48 years to become compliant;

    b. Defendant and its parent company have been repeatedly sued for

misreporting public record information.[1]

c. Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

d. Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

e. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

f. Defendant knew that matching individuals to criminal records using name only could and would result in false positives. However, it persisted in doing so;

g. If Defendant had consulted the publicly available online court records, it would have easily discovered that Plaintiff was not the

---

[1] *Anderson v. Trans Union LLC*, No. 3:16-cv-588 (E.D. Va.); *Clark v Trans Union LLC*, No. 3:15-cv-391 (E.D. Va.); *Walsh v. Trans Union, LLC*, No. 6:18-cv-00166, (M.D. Fla.).

  subject of the court record in questions.  However, Defendant failed to do so;

 h. Defendant could and should have reviewed Plaintiff's 1681g disclosure for inaccurate and contradictory information; if it had done so, it would have accurately reported the source of the information at issue; and

 i. Defendant's violations of the FCRA were repeated and systematic.

46. At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings Count I as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Inaccurate Matching Class, defined as:

> All individuals on whom Defendant prepared erroneous consumer reports including criminal records, where the information was included on the report based on a name match, to the exclusion of a match based on social security number and/or age. The class begins on the date two years prior to the filing of this Complaint and ends on the date the class list is prepared.

48.   Plaintiff brings Count II as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the §1681g Class, defined as:

> All individuals who requested their file from Defendant, for whom the "Sources of Data" on the file disclosure does not match the "Dataset" listed on the report. The class begins on the date two years prior to the filing of this Complaint and ends on the date the class list is prepared.

49.   Class certification is appropriate under Fed. R. Civ. P. 23(a).

50.   <u>Numerosity:</u>  The classes are so numerous that joinder of all class members is impracticable.  Given the volume of Defendant's business, there are hundreds or thousands of class members.

51.   <u>Typicality:</u> Plaintiff's claims are typical of the members of the classes.  It is typical for Defendant to match consumers to criminal records using name alone, and to produce inaccurate and inconsistent file disclosures.  The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

52.   <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of

the classes because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the classes.

53. <u>Commonality</u>: This case presents common questions of law and fact, including but not limited to:

    a. Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal convictions based on a name-only match;

    b. Whether Defendant violated the FCRA by inaccurately disclosing the sources of its information;

    c. Whether Defendant's violations of the FCRA were willful; and

    d. The proper measure of damages.

54. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because, *inter alia*, questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared

to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

55. In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

56. Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

57. Plaintiff intends to send notice to all members of the classes to the extent required by Rule 23(c)(2). The names and addresses of the class members are available from Defendant's records.

## COUNT I
## 15 U.S.C. § 1681e(b)
## On behalf of Plaintiff and the Inaccurate Matching Class

58. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

59. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the Inaccurate Matching Class members. Specifically, Defendant misidentified Plaintiff as a convicted sex offender based on a name-only match, without attempting to identify other data points, or consulting easily accessible online information, or questioning why Plaintiff was not on the sex offender registry.

60. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Inaccurate Matching Class members under 15 U.S.C. § 1681e(b).

61. As a result of Defendant's conduct, Plaintiff and Inaccurate Matching Class members suffered actual damages including but not limited to: denial of rental opportunities, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

62. Plaintiff and Inaccurate Matching Class members are entitled to recover

actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
## 15 U.S.C. § 1681g
## On behalf of Plaintiff and the §1681g Class

63. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

64. Defendant violated 15 U.S.C. § 1681g by including contradictory information it its disclosures regarding the source of the criminal records it reported.

65. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other §1681g Class members under 15 U.S.C. § 1681g.

66. As a result of Defendant's conduct, Plaintiff and §1681g Class members suffered damages including but not limited to: denial of information and denial of the opportunity to correct inaccurate information.

67. Plaintiff and §1681g Class members are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **JURY TRIAL DEMANDED**

Plaintiff demands a jury trial as to all claims so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the classes, seek the following relief:

   a. Determining that this action may proceed as a class action under Rule 23;

   b. Designating Plaintiff as the class representative for the classes;

   c. Designating Plaintiff's counsel as counsel for the classes;

   d. Issuing proper notice to the classes at Defendant's expense;

   e. Declaring that Defendant committed multiple, separate violations of the FCRA;

   f. Declaring that Defendant acted negligently, or willfully and in deliberate or reckless disregard of the rights of Plaintiff and the classes under the FCRA;

   g. Awarding actual and/or statutory damages as provided by the FCRA;

   h. Awarding punitive damages;

   i. Awarding reasonable attorneys' fees and costs and expenses, as

provided by the FCRA;

j.  Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

Date: November 7, 2018

Respectfully submitted,

/s/E. Michelle Drake
E. Michelle Drake (Bar No. 229202)
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel. 612.594.5999
Fax. 612.584.4470
Email: emdrake@bm.net

*Counsel for Plaintiff*