RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 24 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE RENTAL SCREENING CLASS LITIGATION | MDL DOCKET NO._____ |

## DEFENDANTS TRANSUNION RENTAL SCREENING SOLUTIONS AND TRANS UNION LLC'S MOTION TO TRANSFER ACTIONS TO THE NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1407 FOR CENTRALIZATION OF THE ACTIONS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Defendants TransUnion Rental Screening Solutions, Inc. and Trans Union LLC respectfully move the Judicial Panel on Multidistrict Litigation ("JPML") for an Order, pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the JPML, transferring six (6) related class actions pending in federal district courts to the Northern District of Georgia for centralization of the actions for coordinated or consolidated pretrial proceedings.

For the reasons set forth in their Memorandum In Support of Their Motion to Transfer to the Northern District of Georgia Pursuant to 28 U.S.C. § 1407 for Centralization of the Actions for Coordinated or Consolidated Pretrial Proceedings, filed herewith, Defendants' Motion should be granted and all of the "Related Actions" identified in the attached Schedule of Actions, as well as any tag-along actions or other cases that may be filed asserting related or similar claims, should be transferred to the Northern District of Georgia for centralization of the actions for coordinated or consolidated pretrial proceedings.

Dated: January 21, 2020

Respectfully submitted,

*/s/ Michael O'Neil*

Michael O'Neil
Albert E. Hartmann
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: 312-207-1000

michael.oneil@reedsmith.com
ahartmann@reedsmith.com

-and-

Terence N. Hawley
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
T: 415-543-8700
thawley@reedsmith.com

*Counsel for Defendants TransUnion Rental
Screening Solutions, Inc. and Trans Union LLC*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: RENTAL SCREENING
FCRA CLASS LITIGATION                    MDL DOCKET NO._____


**DEFENDANTS TRANSUNION RENTAL SCREENING SOLUTIONS, INC.
AND TRANS UNION LLC'S MEMORANDUM IN SUPPORT OF MOTION TO
TRANSFER ACTIONS TO THE NORTHERN DISTRICT OF GEORGIA
PURSUANT TO 28 U.S.C. § 1407 FOR CENTRALIZATION OF THE ACTIONS FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Defendants TransUnion Rental Screening Solutions, Inc. ("TURSS") and Trans Union

LLC ("Trans Union") (collectively, "Defendants") respectfully move, pursuant to 28 U.S.C. §

1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation

("JPML"), for an order transferring the actions listed on the attached Schedule of Actions (the

"Related Actions"), as well as any tag-along actions or other cases that may be filed asserting

related or similar claims, to the Northern District of Georgia for centralization of the actions for

coordinated or consolidated pretrial proceedings.  Defendants respectfully submit this

memorandum of law in support of their motion to transfer.

**FACTUAL BACKGROUND**

The Related Actions presently consist of *six* putative nationwide class actions pending in

*four different districts*: the Northern District of Georgia, the Central District of California, the

Eastern District of Pennsylvania, and two separate divisions within the Eastern District of

Virginia.  Five of the actions were filed against TURSS alone; only one action was filed against

both TURSS and Trans Union.  (*See* attached Schedule of Actions.)  The Related Actions were

brought by at least six different law firms.

The Related Actions all involve common questions of fact and assert substantially similar claims and legal theories. TURSS prepares and furnishes tenant screening reports to prospective landlords. TURSS is a "consumer reporting agency" as defined by the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA"). The tenant screening reports prepared by TURSS, which include public records, are "consumer reports," as also defined by the FCRA. When preparing such reports, TURSS obtains public record information from hundreds of jurisdictions, stores those records in its database, and then includes them on tenant screening reports. Upon request, TURSS also discloses information to consumers regarding the public records maintained by TURSS.

Each of the six Related Actions alleges that TURSS willfully violated Section 1681e(b) of the FCRA when preparing tenant screening reports including public records. That provision requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure the maximum possible accuracy of the information" on the report. 15 U.S.C. § 1681e(b). The plaintiffs in each of the Related Actions contend that TURSS's procedures for obtaining, evaluating, and then reporting public records result in inaccurate public records being included in reports and thus violate Section 1681e(b), i.e., that such procedures are not the "reasonable procedures" required by the FCRA.

Three of the Related Actions allege that TURSS willfully violated the FCRA, 15 U.S.C. § 1681g(a)(2), in disclosing that same public record information to consumers. That provision requires consumer reporting agencies, upon a consumer's request, to disclose to the consumer "[t]he sources of the information" in that consumer's "file." 15 U.S.C. § 1681g(a)(2). The plaintiffs in three of the Related Actions contend that TURSS violates this provision by disclosing the name of the courts (and other jurisdictions) from which it obtains public record

- 2 -

data, and not disclosing the name(s) of any vendors retained by TURSS to assist with such public record data collection.

Each of the Related Actions seeks statutory damages of $100 to $1,000 per putative class member available under the FCRA, as well as punitive damages. Each action also seeks certification of nationwide classes of persons as to whom TURSS generated inaccurate consumer reports and/or failed to disclose "source" information.[1] Each of the putative classes in each of the Related Actions is defined by the content of the public record data that TURSS used (or did not use) in preparing tenant screening reports and/or disclosures to consumers. Such public record data—to the extent it exists—is contained in TURSS's current and historical databases and systems.

The claims in the Related Actions—as well as the putative class definitions—all raise questions pertaining to the procedures used by TURSS to obtain, evaluate, and report public record data to prospective landlords, as well as the procedures used to disclose the "sources" of such public records to consumers. The Related Actions will require detailed analysis of the specific data available within hundreds of public record datasets, as well as the current and historical data maintained by TURSS used to create tenant screening reports that it issued and the related information it disclosed to consumers. Such data is therefore key not only to TURSS's potential liability under Section 1681e(b) and Section 1681g(a)(2), but also to determining the sizes and composition of the numerous putative classes.

The current status of each of the Related Actions is as follows:

---

[1] Two of the Related Actions include claims for violations of California's statutory analogues of Sections 1681e(b) and 1681g.

1. *William R. Hall, Jr., individually and as a representative of the class v.
TransUnion Rental Screening Solutions, Inc.,* Case No. 1:18-cv-05141-JPB-AJB, Northern
District of Georgia, was filed on November 7, 2018. The plaintiff alleges that TURSS violated
Section 1681e(b) by misattributing a criminal record to him when generating and furnishing a
consumer report to a third party from whom plaintiff sought to secure a rental property. (*Hall*,
ECF 62, ¶¶ 19-21, 39.)

The pleadings in *Hall* are now closed. Discovery, however, remains ongoing, and *Hall*
demonstrates the data-intensive nature of these actions. Initially, the *Hall* court allowed the
parties eight (8) months for discovery, which was the longest standard discovery track in the
Northern District of Georgia. (*Hall*, ECF 22.) At the request of the parties, the *Hall* Court
extended this period by an additional two (2) months, and later suspended the remaining
discovery deadlines altogether. (*Hall*, ECF 37, at 64.) Currently, the parties have until January
31, 2020, to file a proposed schedule for remaining pretrial deadlines, or to schedule a hearing to
resolve the ongoing discovery issues. (*Hall*, ECF 69.) The suspension of the discovery
deadlines was necessary to determine the feasibility of the plaintiff's request that TURSS
identify, prepare and export data he contends is necessary to identify the putative class. (*Hall*,
ECF 67.)

2. *Karl Anthony Francis v. TransUnion Rental Screening Solutions, Inc.*, Case No.
1:19-cv-1185, Eastern District of Virginia, was filed on September 13, 2019. As in *Hall*, the
plaintiff claims that TURSS violated Section 1681e(b) by misattributing a criminal record to him
when generating and furnishing a consumer report to a third party from whom plaintiff sought to
secure a rental property. (*Francis*, ECF 1, ¶¶ 3, 5, 32-34, 66.)

On November 26, 2019, TURSS moved to transfer Francis to the Northern District of Georgia pursuant to the first-to-file rule. (*Francis*, ECF 23.) Plaintiff opposed the motion, (*Francis*, ECF 27). Hearing on the transfer motion was held on January 17, 2020. (*Francis*, ECF 32.) The court denied the motion (*Francis*, ECF 40), holding that 28 U.S.C. § 1404(a) was the only authority for transfer and noting that § 1404(a) could not be satisfied because the lawsuit could not originally have been brought in the Northern District of Georgia. The Court also held in abeyance the motion's alternative prayer for a stay of the lawsuit, but stayed discovery until a further order of the Court. (*Id.*)

3.    *Chris Robinson and Jonathan Wright, on behalf of themselves and all others similarly situated v. TransUnion Rental Screening Solutions, Inc.*, Case No. 8:19-cv-01994-JLS-KES, Central District of California, was filed on October 18, 2019. The plaintiffs filed an Amended Complaint on November 14, 2019. (*Robinson*, ECF 12.) The plaintiffs allege that TURSS violated Section 1681e(b) (and its California statutory analogue) by misattributing criminal records to them and putative class members in generating and furnishing consumer reports to third parties from whom plaintiffs sought to secure a rental property. (*Id.* ¶ 6.). The plaintiffs further allege that TURSS violated Section 1681g(a)(2) (and the California statutory analogue) by responding to their requests for copies of their consumer files without disclosing that the source of public record information in the files was third-party vendors. (*Id.* ¶¶ 104-113.)

Before TURSS filed a responsive pleading, it met and conferred with counsel for Plaintiffs about a possible motion to dismiss certain of the claims. (*Robinson*, ECF 28, at 2.) In response, Plaintiff will file a second amended complaint by January 30, 2020. (*Id.*)

4.   *Patricia McIntyre, on behalf of herself and all others similarly situated v.*

*TransUnion, LLC, and TransUnion Rental Screening Solutions, Inc.*, Case No. 2:18-cv-03865-
RBS, Eastern District of Pennsylvania, was filed on September 10, 2018. Here too, the plaintiff
alleges that TURSS violated Section 1681e(b) by reporting inaccurate public record information
to a third party from whom plaintiff sought to secure a rental property, and that such inaccuracy
was caused by TURSS's use of allegedly unreasonable procedures. (*McIntyre*, ECF 1 ¶¶ 47-48.)
Similar to *Robinson*, the complaint further alleges that TURSS violated Section 1681g(a)(2) by
providing consumers with copies of the public record information in their files without
disclosing its vendor as the source of such public record information. (*Id.* ¶¶ 40-44, 152.)

Defendants moved to strike the plaintiff's class allegations relating to the claims against
TURSS on November 2, 2018, and the plaintiff submitted her response on December 7, 2018.
(*Robinson*, ECF 19, 22.) The case has effectively been stayed pending the court's ruling on
Defendants' motion to strike. No Rule 16 conference has occurred, no scheduling order was
issued, and the parties have not engaged in discovery.

5.   *Kaila Hector and William Aird, on behalf of themselves and all others similarly*
*situated v. TransUnion Rental Screening Solutions, Inc.*, Case No. 3:19-cv-790, Eastern District
of Virginia, was filed on October 25, 2019. As in the other Related Actions, the plaintiffs allege
that TURSS willfully violated Section 1681e(b) by reporting inaccurate information when
generating and furnishing a consumer report to a third party from whom plaintiff sought to
secure a rental property. (*Hector*, ECF 1, ¶¶ 36-40; *Hector*, ECF 28, ¶¶ 35-62.)

On December 31, 2019, TURSS moved to dismiss *Hector*. (*Hector*, ECF 16.) Because
the plaintiff is not a Virginia resident and no nexus exists between Virginia and the claims,
TURSS moved to dismiss the case for lack of personal jurisdiction. (*Id.* at 6-13.) TURSS also

- 6 -

moved to dismiss because venue for the plaintiff's claims against TURSS is improper. (*Id.* at 13-16.) Plaintiff's response to the motion is due on January 27, 2020, and TURSS's reply is due on or before February 10, 2020. (*Hector*, ECF 20.) On January 21, 2020—although the time to do so had expired—Plaintiff filed an Amended Class Action Complaint which added a new named plaintiff. (*Hector*, ECF 28.)

6. *Michael Reid Lewis, individually and on behalf of those similar situated v. TransUnion Rental Screening Solutions, Inc.*, Case No. 2:20-cv-00531, Central District of California, was filed on December 6, 2019, as Case No. 19 STCV 43951, in the Superior Court for the County of Los Angeles. By a complaint virtually identical to *Robinson*, the plaintiff alleges that TURSS violated Section 1681e(b) (and the California analogue) by misattributing criminal records to him when generating and furnishing consumer reports to third parties from whom plaintiff sought to secure a rental property. (*Lewis*, ECF 1-1, ¶¶ 3-7, 18-23.) The plaintiff further alleges that TURSS violated Section 1681g(a)(2) (and the California analogue) by responding to his requests for his consumer file without disclosing that the sources of criminal record information in the file were third-party vendors. (*Id.* ¶¶ 8, 26-28.)

TURSS removed *Lewis* to the Central District of California on January 17, 2020. (*Lewis*, ECF 1.)

## ARGUMENT

As set forth below, the JPML should grant the Defendants' motion to transfer the Related Actions for centralization of the actions for consolidated or coordinated pretrial proceedings in the Northern District of Georgia under 28 U.S.C. § 1407. Of the Related Actions, the only lawsuit in which discovery is occurring, *Hall*, is pending in the Atlanta Division of the Northern District of Georgia before Judge J.P. Boulee and Magistrate Judge Alan J. Baverman. Discovery

has been proceeding since February 2019, including written and oral discovery of the parties, and third-party discovery, as well. The court has issued multiple orders regarding electronic discovery and related case management issues. Given that all Related Actions involve claims and class definitions defined by the data historically maintained by TURSS, similar issues will undoubtedly arise in each of the Related Actions, which will benefit significantly from consolidation or coordination. Further, the Northern District of Georgia, Atlanta Division, will provide a convenient location in a major metropolitan area with ready access from every region in the country.

## I. THE RELATED ACTIONS SHOULD BE TRANSFERRED AND CENTRALIZED FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS.

Section 1407(a) permits transfer and centralization of cases that are pending in different districts if: (1) the cases "involv[e] one or more common questions of fact"; (2) transfer and centralization will further the "convenience of the parties and witnesses"; and (3) transfer and centralization "will promote the just and efficient conduct of such actions." The aim of Section 1407 is to "eliminate duplication in discovery, avoid conflicting rules and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (*quoting* Manual for Complex Litigation § 20.131, p. 220 (4th Ed. 2004). Transfer of the Related Actions to, and centralization for consolidated or coordinated pretrial proceedings in, the Northern District of Georgia will satisfy each of the above requirements and advance Section 1407's underlying objectives.

### A. Transfer Is Appropriate Because The Related Actions Involve One Or More Common Questions Of Fact And Law.

The JPML has consistently held that cases involving overlapping factual and legal issues are particularly appropriate for transfer and centralization for consolidated or coordinated pretrial proceedings, even if there are differing legal theories or remedies in the actions or the parties and

claims are not identical. *See In re Radiation Incident at Washington*, 400 F.Supp. 1404, 1405

(J.P.M.L. 1975) (holding that six actions in two different federal courts should be consolidated

because there were common questions of fact; the JPML noted that the MDL could still proceed

despite factual questions relating to damages that were unique to each action); *see also In re*

*Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 398 F.Supp.2d 1365,

1366 (J.P.M.L. 2005) (holding that the "presence of differing theories or remedies is outweighed

when the underlying actions still arise from a common factual core, as the actions do here."); *see*

*also In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.,* 857 F.Supp.2d 1371,

1373 (J.P.M.L. 2012) (finding consolidation appropriate notwithstanding different parties and

legal theories because "[a]ll actions share factual issues arising from allegations concerning BNY

Mellon's provision of foreign exchange [] services to its clients."); *In re Multidistrict Private*

*Civil Treble Damage Litig. Involving Plumbing Fixtures*, 308 F.Supp. 242, 244 (J.P.M.L. 1970)

("Such a potential for conflicting or overlapping class actions presents one of the strongest

reasons for transferring such related actions to a single district for coordinated or consolidated

pretrial proceedings which will include an early resolution of such potential conflicts").

The Related Actions share substantially similar allegations and common issues of fact

and law. Each Related Action alleges that TURSS did not obtain, use, and/or report all available

public record information, thereby resulting in the creation of inaccurate tenant screening reports

regarding the plaintiffs, which TURSS then furnished to third parties who were evaluating the

plaintiffs' rental applications. (*Hall*, ECF 62, ¶ 39; *Francis*, ECF 1, ¶ 66; *Robinson*, ECF 12, ¶

83; *McIntyre*, ECF 1 ¶¶ 47-48; *Hector*, ECF 1, ¶ 48; *Lewis*, ECF 1-1, ¶ 50.) The plaintiffs allege

that this conduct amounted to a willful failure by TURSS to adopt and follow reasonable

procedures to assure the accuracy of its tenant screening reports, in violation of 15 U.S.C. §

- 9 -

1681e(b). (*Hall*, ECF 62, ¶¶ 29-38, 51; *Francis*, ECF 1, ¶ 67; *Robinson*, ECF 12, ¶¶ 73-82, 95; *McIntyre*, ECF 1 ¶ 148; *Hector*, ECF 1, ¶¶ 43-47, 58; *Lewis*, ECF 1-1, ¶¶ 29-38.) Further, those Related Action seeks certification of one or more nationwide classes of consumers about whom TURSS included allegedly inaccurate public record information on tenant screening reports due to an alleged failure to obtain, use and/or report all aspects of the public record data. (*Hall*, ECF 62, ¶ 39; *Francis*, ECF 1, ¶ 54; *Robinson*, ECF 12, ¶ 83; *McIntyre*, ECF 1 ¶ 137; *Hector*, ECF 1, ¶¶ 48-49; *Lewis*, ECF 1-1, ¶ 39(b).) Three of the Related Actions also contend, on behalf of virtually the same classes or subclasses of consumers, that TURSS's procedures for disclosing the sources of public record information to consumers willfully violate 15 U.S.C. § 1681g(a)(2). (*Robinson*, ECF 12, ¶¶ 104-113; *Lewis*, ECF 1-1, ¶¶ 8, 26-28 ; *McIntyre*, ECF 1, ¶¶ 40-44, 152.)

While certain claims in some of the separate cases may vary slightly in terms of the specific facts and parties, the larger common factual and legal issues warrant transfer and centralization. The plaintiffs' allegations in each case relate to TURSS's policies and procedures for obtaining, using, and reporting public records on tenant screening reports, whether its procedures violate Section 1681e(b) of the FCRA, whether such violations were willful, and whether Rule 23 class certification requirements have been met. Further, the allegations in three actions relate to TURSS's policies and procedures for disclosing public record information to consumers, whether such policies and procedures violate Section 1681g(a)(2) of the FCRA and whether such violations were willful. Each Related Action raises issues concerning the content and scope of the public record (and other) data obtained, reported, and maintained by TURSS.

Given these allegations and issues, the Related Actions will all require detailed analysis of the specific data available within hundreds of public record datasets, and other data maintained by TURSS, as well as the feasibility of identifying, comparing, and exporting such

data. Such analysis will be relevant to issues including TURSS's potential liability under 15 U.S.C. §§ 1681e(b) and 1681g(a)(2), as well as determination of the composition of the putative classes. Moreover, these common issues span the various actions, irrespective of the particular types of public records involved (i.e, criminal vs. eviction) or whether the claim involves the alleged misattribution of information or use of incomplete or outdated information. If addressed in separate forums, those common allegations and issues will lead to duplicative discovery and motion practice and could result in conflicting rulings. They will be addressed most efficiently, and consistently, in a central forum.

## B. Transfer And Centralization Will Further The Convenience Of The Parties And Witnesses.

Transfer and centralization will also serve the overall "convenience of the parties and witnesses" consistent with Section 1407(a). *See In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, 38 F.Supp.3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will eliminate duplicative discovery…prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary."); *see also In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS 170489, *2-3 (J.P.M.L. 2018) (The JPML will look to the "overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.") (*citing In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F.Supp.2d 1350, 1351-52 (J.P.M.L. 2012).

As noted, the Related Actions all include substantially similar allegations regarding TURSS's policies and practices that will most certainly lead to duplicative discovery and pretrial motions in multiple judicial districts, unless the Related Actions are transferred and centralized. The plaintiffs will undoubtedly request many of the same documents and seek to depose many of the same witnesses. Indeed, this phenomenon has already occurred in *Hall* and *Francis*.

- 11 -

Disputes over discovery and other matters are inevitable. Centralization will help minimize duplicative discovery and depositions, reduce deposition-related travel, and facilitate resolution of disputes in a manner that avoids redundancy and conflicting rulings.

## C.     Transfer And Centralization Will Promote The Just And Efficient Conduct Of The Related Actions.

Transfer and centralization of the Related Actions for pretrial proceedings will also "promote the just and efficient conduct of such actions" under Section 1407(a). As stated, due to the overlapping factual and legal theories, as well as the potentially overlapping putative classes, the Related Actions will involve many of the same pretrial issues—including with respect to discovery, class certification and dispositive motions—and will benefit from centralized management and coordination. On the other hand, addressing these issues court-by-court will likely result in duplication of effort and wasted resources, while increasing the risk of inconsistent rulings. *See In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, 229 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (finding that centralization of cases filed nationwide would prevent inconsistent pretrial rulings); *see also Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (noting that one of the aims of Section 1407 is to "eliminate duplication in discovery."). Transfer and centralization for consolidated or coordinated pretrial proceedings is needed here to avoid inefficiencies and potential inconsistencies and to promote the just and efficient conduct of the Related Actions.

## II.     THE RELATED ACTIONS SHOULD BE TRANSFERRED TO AND CENTRALIZED IN THE NORTHERN DISTRICT OF GEORGIA.

The United States District Court for the Northern District of Georgia, Atlanta Division, is the most appropriate venue for transfer and centralization of the Related Actions and any tag-along actions because: (1) it is the district with the action that is the most advanced procedurally;

- 12 -

(2) it is a district court experienced in managing multidistrict litigation; and (3) it is conveniently located in a major metropolitan area with ready access from every region in the country.

## A. The Northern District Of Georgia Has The Most Advanced Action.

An important factor in the JPML's determination of the proper transferee court is which district has the most procedurally-advanced action. *See In re Hyundai & Kia Fuel Econ. Litig.*, 923 F.Supp.2d 1364, 1365 (J.P.M.L. 2013) (finding court presiding over the most procedurally-advanced action proper transferee district); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) (finding judge who presided over most procedurally-advanced action was "well suited to structure this litigation so as to minimize delay and avoid unnecessary duplication of discovery and motion practice"); *In re: Convergent Tel. Consumer Prot. Act Litig.*, 981 F. Supp. 2d 1385, 1387 (J.P.M.L. 2013) (same); *In re: Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011) (approving transfer to forum where the "first-filed and relatively most procedurally advanced action was pending").

While these decisions suggest that the court presiding over the first-filed action is best suited to serve as the transferee court, this is largely because the first-filed suit is typically the most procedurally advanced. Here, although the *Hall* case is the second-filed action, it is the only procedurally-advanced action of the Related Actions.[2] The rationale for transferring to a district with the most procedurally-advanced litigation is that the judge presiding over the most procedurally-advanced action is in the best position to facilitate the efficiencies contemplated by

---

[2] Although *McIntyre* was filed two months before *Hall*, the *McIntyre* action has been effectively stayed while the court considers TURSS' and Trans Union's motion to strike the class allegations against TURSS (and Trans Union's separate motion to dismiss). No Rule 16 conference has been held, nor has any discovery begun. Only one of the other six Related Actions, *Francis*, has advanced beyond the pleadings stage. However, discovery in that case was recently stayed. (*See supra* at 5.)

- 13 -

the JPML in ordering centralization, i.e., to structure the litigation so as to avoid duplication of discovery and motion practice. Because *Hall* is the only procedurally-advanced action, the *Hall* court is in the best position to achieve these efficiencies encouraged by the JPML. *See In re Smith & Nephew BHR & R3 Hip Implant Prod. Liab. Litig.*, 249 F. Supp. 3d 1348, 1352 (J.P.M.L. 2017) ("Further, as Judge Blake is presiding over one of the most procedurally-advanced actions, she is well situated to structure this litigation so as to minimize delay and avoid unnecessary duplication of discovery and motion practice."); *In re: Simply Orange Orange Juice Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1344, 1345–46 (J.P.M.L. 2012) ("While no action is particularly advanced procedurally, plaintiff's counsel in the Western District of Missouri appear to have significantly investigated and developed the factual issues underpinning their complaint.); *In re: Discover Card Payment Prot. Plan Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1341, 1343 (J.P.M.L. 2011) ("The Northern District of Illinois, where the first-filed and relatively most procedurally advanced action is pending, stands out as an appropriate transferee forum."); *In re Imagitas, Inc., Drivers' Privacy Prot. Act Litig.*, 486 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007) ("We are of the view that the Middle District of Florida is an appropriate transferee forum for this docket. The constituent action pending in the Middle District of Florida, which was the first action filed, is relatively more procedurally advanced than the other actions. By selecting Judge Timothy J. Corrigan to serve as transferee judge, we are assigning this docket to a jurist already familiar with the contours of the litigation and able to steer this matter on a prudent course.")

Again, *Hall* is the most advanced litigation of all the Related Actions. Indeed, it is the only one of the Related Actions that has advanced past the pleadings stage. There, representatives of both parties have been deposed, and multiple third-party subpoenas have been

- 14 -

issued and responded to. Moreover, the parties have engaged in extended ongoing negotiations regarding the nature and scope of large-scale data exports and productions by TURSS, and TURSS has produced electronic data, an exercise that will undoubtedly be needed in other Related Actions.

In *Hall*—as in all of the Related Actions—proof of the plaintiff's claim, as well as the ability to identify and certify the putative class, is driven by the availability (or unavailability) of an array of identifying, public record, and historical report data within TURSS's systems and databases. (*Hall*, ECF 21, at 7.) Accordingly, the plaintiff requested that TURSS identify and export data that plaintiff contends may be used to identify the putative class of persons about whom TURSS reported inaccurate public records due to flawed procedures. (*Hall*, ECF 21, at 7-8.) Because TURSS had never performed such an export before, it first needed to determine the feasibility of complying with the plaintiff's request. (*Hall*, ECF 21, at 7.) Initially, this required TURSS to design, test, and implement a custom process to perform an initial, sample data export relating to only one day of reports from one of the TURSS products at issue. (*Hall*, ECF 43, at 2.) This process was time consuming, and a complete data export sufficient for plaintiff's purposes would take an undefined amount of time. (*Id.*) Therefore, at the parties' request, the *Hall* court suspended indefinitely the deadline for the parties expert disclosures under Rule 26(a)(2), as well as the deadline for plaintiff to file a Rule 23 motion for class certification.

After receiving the initial one-day sample export, the plaintiff in *Hall* deposed a TURSS employee about that process, and then requested an additional data export. (*Hall*, ECF 67, at 1-2.) This additional requested export included an additional six days of data relating to the same product as the first export, as well as a single day of data relating to a second product. (*Id.*) Like the first request, the additional request for data required TURSS to design, implement, and test a

- 15 -

custom process for identifying and producing data. (*Id.* at 2.) Due to the complex, time-consuming nature of the iterative data export process, the *Hall* court recently conducted a status conference with the parties, and its later order recognized that the parties would likely need the court's assistance to work through the issues. (*Hall*, ECF 69.)

Because the ability to identify putative class members in the other Related Actions is similarly data-driven, the *Hall* court is already well-positioned to address the same discovery issues that will arise in all of the Related Actions. The parties—with the assistance of the court—are working through those thorny data-export issues in *Hall*. The key issue ultimately will be whether TURSS can identify and export data that the plaintiff believes will be sufficient to demonstrate that the putative class can be identified based on objective, data-based criteria. TURSS and the plaintiffs in all of the other Related Actions will need to engage in similar data-export discovery focused on the same issues, albeit based on slightly different class definitions. Although the data exported in *Hall* will not necessarily identify the putative classes in other cases, TURSS will need to employ the same or similar processes to determine the feasibility of identifying and exporting data in all of the Related Actions. To assist the parties, the *Hall* court is learning about the types of data maintained by TURSS, how such data can be searched and exported, and how much time is required for such efforts. Thus, the knowledge gained by the *Hall* court will be invaluable in addressing the inevitable and nearly identical discovery issues that will arise in all of the Related Actions.

Accordingly, familiarity with the issues that have already arisen in the *Hall* action, which will certainly appear in the other Related Actions, makes the *Hall* court best suited to address these common issues and serve as the transferee district. *See In re: NuvaRing Prod. Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008) (transferring cases to "jurist who is familiar with the

contours of this litigation by virtue of having presided over the most procedurally advanced action"); *In re Dollar Gen. Corp. Fair Labor Standards Act Litig.*, 346 F. Supp. 2d 1368, 1370 (J.P.M.L. 2004) (approving transfer and observing that "the judge presiding over the action . . . has gained familiarity with the issues involved in the litigation"). This procedural advancement and familiarity with the issues is unique to the *Hall* court, which weighs heavily in favor of transferring the Related Actions to the Northern District of Georgia.

## B. The Northern District Of Georgia Has Experienced Judges Capable Of Managing Multidistrict Litigation.

*Hall* is presently assigned to the Honorable J.P. Boulee and Magistrate Judge Alan J. Baverman. Judge Boulee currently has several complex cases on his docket. Judge Baverman has served as a Magistrate Judge since 2001. Further, the *Hall* court has already presided over a number of discovery and case management issues, including crucial, complex data-compilation issues that will be encompassed in all of the Related Actions. Accordingly, TURSS believes that the *Hall* court would capably manage the Related Actions and that assignment to Judge Boulee is appropriate.

## C. The Northern District Of Georgia Is Conveniently Located.

The JPML has also considered whether a district is "an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require." *In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005); *see also In re Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016). The Northern District of Georgia, Atlanta Division, easily meets this criterion. Atlanta is a major metropolitan area and travel hub, with a large international airport, an abundance of local travel and lodging options, and the business resources needed for complex litigation. Accordingly, this factor, too, weighs in favor of transferring the Related Actions to the Northern District of Georgia.

- 17 -

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the JPML transfer the

Related Actions to the Northern District of Georgia for the centralization of the actions for

coordinated or consolidated pretrial proceedings.

Dated: January 21, 2020                    Respectfully submitted,

                                           */s/  Michael O'Neil*

                                           Michael O'Neil
                                           Albert E. Hartmann
                                           REED SMITH LLP
                                           10 South Wacker Drive, 40th Floor
                                           Chicago, IL 60606
                                           T: 312-207-1000
                                           michael.oneil@reedsmith.com
                                           ahartmann@reedsmith.com

                                           -and-

                                           Terence N. Hawley
                                           REED SMITH LLP
                                           101 Second Street, Suite 1800
                                           San Franscisco, CA 94105-3659
                                           T: 415-543-8700
                                           thawley@reedsmith.com

                                           *Counsel for Defendants TransUnion Rental*
                                           *Screening Solutions, Inc. and Trans Union LLC*

- 18 -

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: RENTAL SCREENING
FCRA CLASS LITIGATION

MDL DOCKET NO. _____

## SCHEDULE OF ACTIONS

The docket sheets and complaints for each action are attached as Exhibits.

| No. | Caption | District Court | Civil Action Number | Judge |
|---|---|---|---|---|
| 1. | Chris Robinson and Jonathan Wright, on behalf of themselves and all others similarly situated, Plaintiffs, v. TransUnion Rental Screening Solutions, Inc., Defendant. | United States District Court for the Central District of California (Southern Division) | 8:19-cv-01994-JLS-KES | Hon. Josephine L. Staton |
| 2. | Michael Reid Lewis, individually and on behalf of those similarly situated, Plaintiff, v. TransUnion Rental Screening Solutions, Inc., Defendant | United States District Court for the Central District of California (Western Division) | 2:20-CV-00531 | Not yet assigned |
| 3. | William R. Hall, Jr., individually and as a representative of the classes, Plaintiff, v. TransUnion Rental Screening Solutions, Inc., Defendant. | United States District Court for the Northern District of Georgia (Atlanta) | 1:18-cv-05141-JPB-AJB | Hon. J. P. Boulee |

| 4. | Patricia McIntyre, on behalf of herself and all others similarly situated, Plaintiff, v. Trans Union LLC, and TransUnion Rental Screening Solutions, Inc., Defendants. | United States District Court for the Eastern District of Pennsylvania (Philadelphia) | 2:18-cv-03865-RBS | Hon. R. Barclay Surrick |
| --- | --- | --- | --- | --- |
| 5. | Karl Anthony Francis, Plaintiff, v. TransUnion Rental Screening Solutions, Inc., Defendant. | United States District Court for the Eastern District of Virginia (Alexandria Division) | 1:19-cv-1185 | Hon. T. S. Ellis, III |
| 6. | Kaila Hector and William Aird, on behalf of themselves and all others similarly situated, Plaintiff, v. TransUnion Rental Screening Solutions, Inc., Defendant. | United States District Court for the Eastern District of Virginia (Richmond Division) | 3:19-cv-790 | Hon. M. Hannah Lauck |

# UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## NOTICE OF PRESENTATION OR WAIVER OF ORAL ARGUMENT

MDL No. _____ & TITLE - IN RE: <u>RENTAL SCREENING FCRA CLASS LITIGATION</u>

**1.**  **Oral Argument** – Check ONE of the following boxes:

☑  The attorney designated below shall PRESENT ORAL ARGUMENT at the Panel hearing session on behalf of the designated party or parties. (**Note:** All attorneys presenting oral argument should be mindful of Panel Rule 11.1(d)(i), which states that:

> Absent Panel approval and for good cause shown, only those parties to actions who have filed a motion or written response to a motion or order shall be permitted to present oral argument.

Also note that Rule 11.1(e) requires counsel with like positions to confer prior to oral argument for the purpose of selecting a spokesperson to avoid duplication during oral argument.)

☐  The party or parties listed hereafter will WAIVE ORAL ARGUMENT pursuant to Rule 11.1(b)(i). (**Note:** A party waiving oral argument need not appear at the hearing session, through counsel or otherwise.)

☐  The party or parties listed hereafter will WAIVE ORAL ARGUMENT IF ALL OTHER PARTIES IN THIS MATTER WAIVE ORAL ARGUMENT; otherwise, the attorney designated below shall present oral argument at the Panel hearing session on behalf of the designated party or parties pursuant to Rule 11.1. (**Note:** In the event of a global waiver, the parties and their counsel need not attend the hearing session.)

**2.**  **Position on Centralization** – Check ONE of the following boxes:

☑  Support Centralization

☐  Oppose Centralization

☐  Other _____

**3.**  **Position on Transferee District.** If you SUPPORT Centralization or if you OPPOSE centralization but ALTERNATIVELY SUPPORT Centralization in a particular venue(s), if the Panel orders centralization over your objections, indicate your proposed transferee district(s) here:

<u>United States District Court for the Northern District of Georgia (Atlanta Division)</u>

4.  **Change of Position from Written Response** – If your position regarding Centralization or the choice of transferee district has changed from the position set forth in your motion or written response to the motion or order, check the following box: ☐

5.  **Parties Represented** – Indicate party name and state whether plaintiff or defendant. Attach list if more than one action:

    Trans Union LLC and Trans Union Rental Screening Solutions, Inc., Defendants.

6.  **Short Case Caption(s)** – Include District(s) and Civil Action No(s). Attach list if more than one action:

    See attached list.

7.  **Name and Address of Attorney Designated to Present Oral Argument**:

    Michael O'Neil
    Name

    Reed Smith LLP
    Law Firm

    Chicago                               IL
    City                                   State

    Telephone No.: 312-207-1000

    Email Address: michael.oneil@reedsmith.com

1/21/2020          Michael O'Neil

Date               Printed Name                    Authorized Signature

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: RENTAL SCREENING
FCRA CLASS LITIGATION

MDL DOCKET NO.____

**PROOF OF SERVICE**

The undersigned, an attorney, hereby certifies that on January 21, 2020, a copy of the

foregoing Motion, Brief, Schedule of Actions and this Certificate of Service were served upon

the following district courts via U.S. First Class mail postage prepaid:

**United States District Court Clerks**

Clerk of the Court
United States District Court
  for the District of Georgia
(Atlanta Division)
Richard B. Russell Federal Building
2211 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

Clerk of the Court
United States District Court
  for the Central District of California
(Southern Division)
Ronald Reagan Federal Building
 and U.S. Courthouse
411 West 4th Street, Room 1053
Santa Ana, CA 92701-4516

Clerk of the Court
United States District Court
  for the Central District of California
(Western Division)
Edward R. Roybal Federal Building
 and U.S. Courthouse
255 East Temple Street
Los Angeles, CA 90012-3332

Clerk of the Court
United States District Court
  for the Eastern District of Virginia
(Alexandria Division)
Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314

Clerk of the Court
United States District Court
  for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Clerk of the Court
United States District Court
  for the Eastern District of Virginia
(Richmond Division)
Spottswood W. Robinson III and Robert R.
 Merhige, Jr., Federal Courthouse
701 East Broad Street
Richmond, VA 23219

The undersigned, an attorney, hereby further certifies that on January 21, 2020, a copy of the foregoing Motion, Brief, Schedule of Actions, and this Certificate of Service were served on each person listed below via electronic mail:

## SERVICE LIST

Case Name: *Chris Robinson and Jonathan Wright, on behalf of themselves and all others similarly situated v. TransUnion Rental Screening Solutions, Inc.*
Central District of California
Case No: 8:19-cv-01994-JLS-KES

Benjamin Galdston
BERGER MONTAGUE, P.C.
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
T: (619) 489-0300
bgaldston@bm.net

E. Michelle Drake
Joseph C. Hashmall
BERGER MONTAGUE, P.C.
43 SE Main St, Suite 505
Minneapolis, MN 55414
T: (612) 594-5996
emdrake@bm.net
jhashmall@bm.net

James A. Francis
Lauren KW Brennan
FRANCIS MAILMAN SOUMILAS PC
1600 Market St, 2510
Philadelphia, PA 19103
T: (215) 735-8600
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Counsel for Plaintiff*

Michael O'Neil (Pro Hac Vice)
Albert E. Hartmann (Pro Hac Vice)
Maxwell J. Eichenberger (Pro Hac Vice)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: (312) 207-1000
michael.oneil@reedsmith.com
ahartmann@reedsmith.com

Raymond Y. Kim
Bryan D. Trader
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA, 90071
T: (213) 457-8000
btrader@reedsmith.com
rkim@reedsmith.com

*Counsel for Defendant TransUnion Rental Screening Solutions, Inc.*

Case Name: *Michael Reid Lewis, individually and on behalf of those similarly situated v. TransUnion Rental Screening Solutions, Inc.*,
United States District Court for the Central District of California
Case No: 2:20-CV-00531

- 2 -

Benjamin Galdston
BERGER MONTAGUE PC
12544 High Bluff Dr., Suite 340
San Diego, CA 92130
T: (619) 489-0300
bgaldston@bm.net

*Counsel for Plaintiff*

Raymond Y. Kim
Bryan D. Trader
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA, 90071
T: (213) 457-8000
btrader@reedsmith.com
rkim@reedsmith.com

*Counsel for Defendant TransUnion
Rental Screening Solutions, Inc.*

Case Name: *William R. Hall, Jr., individually and as a representative of the class v. TransUnion Rental
Screening Solutions, Inc.,*
Northern District of Georgia
Case No: 1:18-cv-05141-JPB-AJB

E. Michelle Drake
Joseph C. Hashmall
BERGER MONTAGUE, P.C.
43 SE Main St, Suite 505
Minneapolis, MN 55414
T: (612) 594-5996
emdrake@bm.net
jhashmall@bm.net

Gary B. Andrews, Jr.,
BLAKE ANDREWS LAW FIRM, LLC
1831 Timothy Dr.
Atlanta, GA 30329
blake@blakeandrewslaw.com

*Counsel for Plaintiff*

Robert B. Remar
Joshua P. Gunnemann
Cameron B. Roberts
ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street N.E.
Atlanta, GA 30303-1601
T: (404) 522-4700
rremar@rh-law.com
jgunnemann@rhlaw.com
croberts@rh-law.com

Michael O'Neil (Pro Hac Vice)
Albert E. Hartmann (Pro Hac Vice)
William S. Weltman (Pro Hac Vice)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
T: (312) 207-1000
michael.oneil@reedsmith.com
ahartmann@reedsmith.com
wweltman@reedsmith.com

*Counsel for Defendant
TransUnion Rental Screening Solutions, Inc.*

Case Name: *Patricia McIntyre, on behalf of herself and all others similarly situated v. TransUnion, LLC, and TransUnion Resident Screening Solutions, Inc.*
Eastern District of Pennsylvania
Case No: 2:18-cv-03865-RBS

James A. Francis
Lauren KW Brennan
John Soumilas
FRANCIS MAILMAN SOUMILAS PC
1600 Market St, 2510
Philadelphia, PA 19103
T: (215) 735-8600
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA 23601
T: (757) 930-3660
lenbennett@clalegal.com

*Counsel for Plaintiff*

Michael O'Neil (Pro Hac Vice)
Albert E. Hartmann (Pro Hac Vice)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: (312) 207-1000
michael.oneil@reedsmith.com
ahartmann@reedsmith.com

Michael C. Falk
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T: (215) 851-8210
mfalk@reedsmith.com

Daniel P. Wotherspoon
SAUL EWING ARNSTEIN & LEHR LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
T: (215) 972-7786
daniel.wotherspoon@saul.com

*Counsel for Defendants Trans Union LLC and TransUnion Rental Screening Solutions, Inc.*

Case Name: *Karl Anthony Francis v. TransUnion Rental Screening Solutions, LLC*
Eastern District of Virginia
Case No: 1:19-cv-1185

Kristi Cahoon Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY GUZZO PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
T: (703) 424-7570
kkelly@kellyguzzo.com

Travis A. Sabalewski
Alison R.W. Toepp
REED SMITH LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, Virginia 23219
T: (804) 344-3400
tsabalewski@reedsmith.com

- 4 -

aguzzo@kellyguzzo.com
casey@kellyguzzo.com

E. Michelle Drake
Joseph C. Hashmall
BERGER MONTAGUE, P.C.
43 SE Main St, Suite 505
Minneapolis, MN 55414
T: (612) 594-5996
emdrake@bm.net
jhashmall@bm.net

Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
T: (757) 930-3660
lenbennett@clalegal.com

*Counsel for Plaintiff*

atoepp@reedsmith.com

Michael O'Neil (Pro Hac Vice)
Albert E. Hartmann (Pro Hac Vice)
Kristen A. DeGrande (Pro Hac Vice)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: (312) 207-1000
michael.oneil@reedsmith.com
ahartmann@reedsmith.com
kdegrande@reedsmith.com

*Counsel for Defendant TransUnion Rental Screening Solutions, Inc.*

Case Name: *Kaila Hector and William Aird, on behalf of themselves and all others similarly situated v. TransUnion Rental Screening Solutions, Inc.*
Eastern District of Virginia
Case No: 3:19-cv-790

Leonard A. Bennett
Craig Carley Marchiando
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
T: (757) 930-3660
lenbennett@clalegal.com
craig@clalegal.com

Elizabeth W. Hanes
CONSUMER LITIGATION ASSOCIATES, P.C.
626 E. Broad Street, Suite 300
Richmond, VA 23219
T: (804) 905-9900
elizabeth@clalegal.com

E. Michelle Drake
Joseph C. Hashmall
BERGER MONTAGUE, P.C.
43 SE Main St, Suite 505
Minneapolis, MN 55414

Travis A. Sabalewski
Alison R.W. Toepp
REED SMITH LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, Virginia 23219
T: (804) 344-3400
F: (804) 344-3410
tsabalewski@reedsmith.com
atoepp@reedsmith.com

Michael O'Neil (Pro Hac Vice)
Albert E. Hartmann (Pro Hac Vice)
Kristen DeGrande (Pro Hac Vice)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: (312) 207-1000
michael.oneil@reedsmith.com
ahartmann@reedsmith.com
kdegrande@reedsmith.com

T: (612) 594-5999
emdrake@bm.net
jhashmall@bm.net

*Counsel for Defendant*
*TransUnion Rental Screening Solutions, Inc.*

Kristi Cahoon Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY GUZZO PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
T: (703) 424-7570
kkelly@kellyguzzo.com
aguzzo@kellyguzzo.com
casey@kellyguzzo.com

*Attorneys for Plaintiffs*

DATED: January 21, 2020                    */s/ Michael O'Neil*

Michael O'Neil
Albert E. Hartmann
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: 312-207-1000
michael.oneil@reedsmith.com
ahartmann@reedsmith.com

Terence N. Hawley
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
T: 415-543-8700
thawley@reedsmith.com

*Counsel for Defendants*
*Trans Union LLC and TransUnion Rental*
*Screening Solutions, Inc.*

# EXHIBIT 1

Current on Bloomberg Law as of Jan. 21, 2020 12:30:10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
CIVIL DOCKET FOR CASE #: 8:19-cv-01994-JLS-KES

# Chris Robinson v. TransUnion Rental Screening Solutions, Inc.

## DOCKET INFORMATION

Minimize

| | |
|---|---|
| Date Filed: | Oct 18, 2019 |
| Nature of suit: | 480 Consumer Credit |
| Assigned to: | Judge Josephine L. Staton |
| Cause: | 15:1681 Fair Credit Reporting Act |
| Jurisdiction: | Federal Question |
| Jury demand: | Plaintiff |
| Referred to: | Magistrate Judge Karen E. Scott |

## Parties and Attorneys

Expand All Minimize

**Plaintiff**                                  Chris Robinson
                                               Plaintiff

Representation

**Benjamin Galdston**              **E Michelle Drake**                 **James A Francis**
*Berger Montague*                  *Berger and Montague PC*             *Francis Mailman Soumilas PC*
12544 High Bluff Drive Suite 340   43 SE Main Street Suite 505          1600 Market Street Suite 2510
San Diego, CA 92130                Minneapolis, MN 55414                Philadelphia, PA 19103
(619) 489-0300                     (612) 594-5933                       (215) 735-8600
bgaldston@bm.net                   Fax: (215) 584-4470                  Fax: (215) 940-8000
LEAD ATTORNEY                      emdrake@bm.net                       jfrancis@consumerlawfirm.com
ATTORNEY TO BE NOTICED             PRO HAC VICE                         PRO HAC VICE
                                   ATTORNEY TO BE NOTICED               ATTORNEY TO BE NOTICED

**Joseph C Hashmall**              **Lauren KW Brennan**
*Berger and Montague PC*           *Francis Mailman Soumilas PC*
43 SE Main Street Suite 505        1600 Market Street Suite 2510
Minneapolis, MN 55414              Philadelphia, PA 19103
(612) 594-5996                     (215) 735-8600
Fax: (612) 584-4470                Fax: (215) 940-8000
jhashmall@bm.net                   lbrennan@consumerlawfirm.com
PRO HAC VICE                       PRO HAC VICE
ATTORNEY TO BE NOTICED             ATTORNEY TO BE NOTICED

**Plaintiff**                      Jonathan Wright
                                   on behalf of themselves and all others similarly situated
                                   Plaintiff

Representation

**Benjamin Galdston**              **E Michelle Drake**                 **James A Francis**

**Bloomberg Law®**

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

(See above for address)
PRO HAC VICE
ATTORNEY TO BE NOTICED

(See above for address)
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Joseph C Hashmall**
(See above for address)
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Lauren KW Brennan**
(See above for address)
PRO HAC VICE
ATTORNEY TO BE NOTICED

---

**Defendant**

**TransUnion Rental Screening Solutions, Inc.**
Defendant

Representation

**Albert E Hartmann**
*Reed Smith LLP*
10 South Wacker Drive 40th Floor
Chicago, IL 60606
(312) 207-2821
Fax: (312) 207-6400
ahartmann@reedsmith.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Maxwell J Eichenberger**
*Reed Smith LLP*
10 South Wacker Drive 40th Floor
Chicago, IL 60606
(312) 207-2861
Fax: (312) 207-6400
meichenberger@reedsmith.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Michael C O'Neil**
*Reed Smith LLP*
10 South Wacker Drive 40th Floor
Chicago, IL 60606
(312) 207-2879
Fax: (312) 207-6400
michael.oneil@reedsmith.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Raymond Yoon Ho Kim**
*Reed Smith LLP*
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071
(213) 457-8000
Fax: (213) 457-8080
rkim@reedsmith.com
ATTORNEY TO BE NOTICED

**Bryan David Trader**
*Reed Smith LLP*
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
(213) 457-8000
Fax: (213) 457-8080
btrader@reedsmith.com
ATTORNEY TO BE NOTICED

---

# Docket Entries

Print Entries Request Entries Reverse Entries
Numbers shown are court assigned numbers

| Entry | Filed | Description |
|---|---|---|
| 1 | Oct 18, 2019 | COMPLAINT with filing fee previously paid ($400.00 paid on 10/18/2019, receipt number 26KUUOS3), filed by Plaintiff Chris Robinson. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Exhibit Summons, # 3 Exhibit Notice of Interested Parties) (Attorney Benjamin Galdston added to party Chris Robinson(pty:pla))(Galdston, Benjamin) (Entered: 10/18/2019) |
| 2 | Oct 21, 2019 | NOTICE OF ASSIGNMENT to District Judge Josephine L. Staton and Magistrate Judge Karen E. Scott. (et) (Entered: 10/21/2019) |
| 3 | Oct 21, 2019 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (et) (Entered: 10/21/2019) |
| 4 | Oct 21, 2019 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant TransUnion Rental Screening Solutions, Inc. (et) (Entered: 10/21/2019) |
| 5 | Oct 21, 2019 | NOTICE OF DEFICIENCIES in Attorney Case Opening RE: Complaint (Attorney Civil Case Opening) 1 . The following error(s) was found: Attachments # 1 Civil Case Cover Sheet, Attachment # 2 Summons and Attachment # 3 Notice of Interested Parties should not have been attached to Docket Entry No.1 Each document should have been filed separately. You are not required to take any action to correct this deficiency unless the Court so directs. (et) (Entered: 10/21/2019) |

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

| 6 | Oct 22, 2019 | INITIAL STANDING ORDER FOR CASES ASSIGNED TO JUDGE JOSEPHINE L. STATON. (tg) (Entered: 10/22/2019) |
|---|---|---|
| 7 | Oct 29, 2019 | PROOF OF SERVICE Executed by Defendant Chris Robinson, upon Defendant TransUnion Rental Screening Solutions, Inc. served on 10/24/2019, answer due 11/14/2019. Service of the Summons and Complaint were executed upon Lai Saevang, Service Corp., Registered Agent for Service of Process for Defendant TransUnion Rental Screening Solutions, Inc. in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Galdston, Benjamin) (Entered: 10/29/2019) |
| 8 | Nov 7, 2019 | STIPULATION Extending Time to Answer the complaint as to TransUnion Rental Screening Solutions, Inc. answer now due 12/12/2019, re Complaint (Attorney Civil Case Opening), 1 filed by Defendant TransUnion Rental Screening Solutions, Inc..(Attorney Bryan David Trader added to party TransUnion Rental Screening Solutions, Inc.(pty:dft))(Trader, Bryan) (Entered: 11/07/2019) |
| 9 | Nov 7, 2019 | CORPORATE DISCLOSURE STATEMENT filed by Defendant TransUnion Rental Screening Solutions, Inc. identifying Trans Union LLC as Corporate Parent. (Trader, Bryan) (Entered: 11/07/2019) |
| 10 | Nov 12, 2019 | NOTICE OF LODGING filed re Stipulation Extending Time to Answer (30 days or less), 8 (Attachments: # 1 Proposed Order)(Trader, Bryan) (Entered: 11/12/2019) |
| 11 | Nov 12, 2019 | ORDER Re Stipulation to Extend Time to Respond to initial Complaint By Not More Than 30 Days (L.R. 8-3) 8 by Judge Josephine L. Staton that Defendant TransUnion Rental Screening Solutions Inc.s time to respond to Plaintiff Chris Robinsons Complaint is extended to 12/12/2019. (jp) (Entered: 11/12/2019) |
| 12 | Nov 14, 2019 | FIRST AMENDED COMPLAINT against DEFENDANT All Plaintiffs amending Complaint (Attorney Civil Case Opening), 1 , filed by Plaintiffs Chris Robinson(Galdston, Benjamin) (Entered: 11/14/2019) |
| 13 | Dec 4, 2019 | STIPULATION Extending Time to Answer the complaint as to TransUnion Rental Screening Solutions, Inc. answer now due 1/9/2020, re Amended Complaint/Petition 12 filed by Defendant TransUnion Rental Screening Solutions, Inc.. (Attachments: # 1 Proposed Order)(Trader, Bryan) (Entered: 12/04/2019) |
| 14 | Dec 5, 2019 | APPLICATION of Non-Resident Attorney E. Michelle Drake to Appear Pro Hac Vice on behalf of Plaintiff Chris Robinson (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24898402) filed by Plaintiff Chris Robinson. (Attachments: # 1 Proposed Order [Proposed] Order) (Galdston, Benjamin) (Entered: 12/05/2019) |
| 15 | Dec 5, 2019 | APPLICATION of Non-Resident Attorney Joseph C. Hashmall to Appear Pro Hac Vice on behalf of Plaintiff Chris Robinson (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24898536) filed by Plaintiff Chris Robinson. (Attachments: # 1 Proposed Order [Proposed] Order) (Galdston, Benjamin) (Entered: 12/05/2019) |
| 16 | Dec 5, 2019 | ORDER Re Stipulation to Extend Time to Respond to Plaintiffs' Amended Class Action Complaint 13 by Judge Josephine L. Staton that Defendant TransUnion Rental Screening Solutions Inc.'s time to respond to Plaintiffs Chris Robinson and Jonathan Wright's Amended Class Action Complaint is extended to 1/9/2020. (jp) (Entered: 12/05/2019) |
| 17 | Dec 11, 2019 | APPLICATION of Non-Resident Attorney Albert E Hartmann. to Appear Pro Hac Vice on behalf of Defendant TransUnion Rental Screening Solutions, Inc. (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24934411) filed by Defendant TransUnion Rental Screening Solutions, Inc.. (Attachments: # 1 Proposed Order) (Trader, Bryan) (Entered: 12/11/2019) |
| 18 | Dec 11, 2019 | APPLICATION of Non-Resident Attorney Michael O'Neil to Appear Pro Hac Vice on behalf of Defendant TransUnion Rental Screening Solutions, Inc. (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24934510) filed by Defendant TransUnion Rental Screening Solutions, Inc.. (Attachments: # 1 Proposed Order) (Trader, Bryan) (Entered: 12/11/2019) |
| 19 | Dec 12, 2019 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney Michael O'Neil to Appear Pro Hac Vice on behalf of Defendant TransUnion Rental Screening Solutions, Inc. (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24934510) 18 , APPLICATION of Non-Resident Attorney Albert E Hartmann. to Appear Pro Hac Vice on behalf of Defendant TransUnion Rental Screening Solutions, Inc. (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24934411) 17 . The following error(s) was/were found: Local Rule 5-4.3.4 Application not hand-signed. Other error(s) with document(s): Please note that electronic, image or stamp signatures are not allowed. (lt) (Entered: 12/12/2019) |

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Case 1:18-cv-05141-JPB-AJB Document 73 Filed 03/24/20 Page 35 of 199
Case 8:19-cv-01994-JLS-JDE Document 5-3 Filed 01/23/20 Page 35 of 38
Chris Robinson v. TransUnion Rental Screening Solutions, Inc., Docket No. 8_19-cv-01994 (C.D. Cal. Oct 18, 2019), Court Docket

| 20 | Dec 16, 2019 | ORDER by Judge Josephine L. Staton: granting 14 Non-Resident Attorney E. Michelle Drake APPLICATION to Appear Pro Hac Vice on behalf of Chris Robinson, designating Benjamin Galdston as local counsel. (lom) (Entered: 12/16/2019) |
|----|-------------|-----|
| 21 | Dec 16, 2019 | ORDER by Judge Josephine L. Staton: granting 15 Non-Resident Attorney Joseph C. Hashmall APPLICATION to Appear Pro Hac Vice on behalf of Chris Robinson, designating Benjamin Galdston as local counsel. (lom) (Entered: 12/16/2019) |
| 22 | Dec 16, 2019 | ORDER by Judge Josephine L. Staton: granting 17 Non-Resident Attorney Albert E Hartmann APPLICATION to Appear Pro Hac Vice on behalf of Bryan David Trader, designating TransUnion Rental Screening Solutions, Inc. as local counsel. (lom) (Entered: 12/16/2019) |
| 23 | Dec 16, 2019 | ORDER by Judge Josephine L. Staton: granting 18 Non-Resident Attorney Michael O'Neil APPLICATION to Appear Pro Hac Vice on behalf of TransUnion Rental Screening Solutions, Inc., designating Bryan Trader as local counsel. (lom) (Entered: 12/16/2019) |
| 24 | Jan 2, 2020 | APPLICATION of Non-Resident Attorney James A. Francis to Appear Pro Hac Vice on behalf of Plaintiffs Chris Robinson, Jonathan Wright (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-25044118) filed by Plaintiff Chris Robinson, Jonathan Wright. (Attachments: # 1 Proposed Order) (Galdston, Benjamin) (Entered: 01/02/2020) |
| 25 | Jan 2, 2020 | APPLICATION of Non-Resident Attorney Lauren KW Brennan to Appear Pro Hac Vice on behalf of Plaintiffs Chris Robinson, Jonathan Wright (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-25044299) filed by Plaintiff Chris Robinson, Jonathan Wright. (Attachments: # 1 Proposed Order) (Galdston, Benjamin) (Entered: 01/02/2020) |
| 26 | Jan 3, 2020 | ORDER by Judge Josephine L. Staton: granting 24 Non-Resident Attorney James A Francis APPLICATION to Appear Pro Hac Vice on behalf of Plaintiffs Chris Robinson and Jonathan Wright, designating Benjamin Galdston as local counsel. (bm) (Entered: 01/03/2020) |
| 27 | Jan 3, 2020 | ORDER by Judge Josephine L. Staton: granting 25 Non-Resident Attorney Lauren K W Brennan APPLICATION to Appear Pro Hac Vice on behalf of Plaintiffs Chris Robinson and Jonathan Wright, designating Benjamin Galdston as local counsel. (bm) (Entered: 01/03/2020) |
| 28 | Jan 6, 2020 | Joint STIPULATION for Extension of Time to File Second Amended Class Action Complaint and Defendant's Response to Same filed by Defendant TransUnion Rental Screening Solutions, Inc.. (Attachments: # 1 Proposed Order)(O'Neil, Michael) (Entered: 01/06/2020) |
| 29 | Jan 7, 2020 | APPLICATION of Non-Resident Attorney Maxwell J. Eichenberger to Appear Pro Hac Vice on behalf of Defendant TransUnion Rental Screening Solutions, Inc. (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-25075033) filed by Defendant TransUnion Rental Screening Solutions, Inc.. (Attachments: # 1 Proposed Order) (Trader, Bryan) (Entered: 01/07/2020) |
| 30 | Jan 9, 2020 | ORDER by Judge Josephine L. Staton: granting 29 Non-Resident Attorney Maxwell J Eichenberger APPLICATION to Appear Pro Hac Vice on behalf of Defendant TransUnion Rental Screening Solutions, Inc., designating Bryan D Trader as local counsel. (jp) (Entered: 01/09/2020) |
| 31 | Jan 13, 2020 | ORDER Setting Deadlines for Plaintiffs to File Second Amended Class Action Complaint and for Defendant to Respond to Same 28 by Judge Josephine L. Staton that Plaintiffs Chris Robinson and Jonathan Wright shall file their Second Amended Complaint by 1/30/2020, and Defendant TransUnion Rental Screening Solutions Inc.'s deadline to file a responsive pleading is extended to 2/20/2020. (jp) (Entered: 01/14/2020) |

Case 4:19-cv-05141-NBB-AJB Document 573 Filed 01/24/20 Page 36 of 199
Case Pending No. 78 Document 1-5 Filed 01/24/20 Page 36 of 199
Chris Robinson v. TransUnion Rental Screening Solutions, Inc., Docket No. 8_19-cv-01994 (C.D. Cal. Oct 18, 2019), Court Docket

# General Information

**Court**
United States District Court for the Central District of California;
United States District Court for the Central District of California

**Federal Nature of Suit**
Consumer Credit[480]

**Docket Number**
8:19-cv-01994

Benjamin Galdston, SBN 211114
BERGER MONTAGUE PC
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
T. 619.489.0300
bgaldston@bm.net

*Attorneys for Plaintiffs*
*Additional counsel listed on signature page*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Orange County Division

| | |
|---|---|
| CHRIS ROBINSON and JONATHAN WRIGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSUNION RENTAL SCREENING SOLUTIONS, INC.,<br><br>Defendant. | Case No. 8:19-cv-01994-JLS-KES<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

COME NOW, Chris Robinson and Jonathan Wright ("Plaintiffs") and state as follows:

### INTRODUCTION

1.      This is an action for damages and injunctive relief brought against Defendant TransUnion Rental Screening Solutions, Inc. ("Defendant" or "TURSS") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the California Investigative Consumer Reporting Agencies Act, CAL. CIV. CODE § 1786 *et seq.* ("ICRAA").

2.     The rights of consumers to inspect and correct consumer information sold about them are at the heart of the FCRA and the California state law. Defendant deprives consumers of these rights by willfully failing to comply with the laws, refusing to adopt procedures to assure maximum possible accuracy with respect to the inclusion of criminal record information on the reports it sells about consumers, including by failing to obtain and use all of the publicly available personal identifying information, and failing to include the final disposition(s) of such records.

3.     Defendant compounds these errors by systematically misrepresenting the sources from which it obtains such public records, claiming in disclosures to consumers that it obtains the records directly from courthouses, when in fact it obtains these records from private vendors. Defendant thus fails to provide consumers with all of the information in their files, including the true sources from which that information is obtained, upon request as required by law, prejudicing consumers' ability to correct errors that may stem from a vendor's records.

4.     Defendant's practices harm consumers seeking residential leases by prejudicing their landlords with inaccurate, adverse information and by depriving those consumers of valuable congressionally-mandated information.

5.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

6.     Defendant falsely reported to Plaintiffs' potential landlords that Plaintiffs had been charged and convicted of criminal offenses and, as a result, Plaintiffs were denied rental opportunities.

7.     With respect to both Plaintiffs, the convictions reported belonged to another individual with a similar name. Defendant's reporting cost Plaintiffs their

1  chance to rent the properties of their choice, caused them serious distress and

2  embarrassment, and in the case of Plaintiff Robinson, caused financial loss,

3  including forfeiture of a $1,650 deposit.

4      8.    Many publicly available criminal records lack meaningful personal

5  identifying information about the offender. Many such records only contain the

6  offender's name, and do not contain any other identifiers, such as date of birth, age,

7  address, or Social Security Number.

8      9.    Even when publicly available criminal records contain such personal

9  identifying information, Defendant does not use it.

10     10.   Relying on such public records, Defendant matched Plaintiff Robinson

11  (who has a very common first and last name) with a criminal record that did not

12  belong to him. Given the paucity of information in the underlying public records,

13  the only personal identifier Defendant could have used to get a match is Plaintiff

14  Robinson's name.

15     11.   With respect to Plaintiff Wright, Defendant failed to use the full date of

16  birth of the true criminal, which is available in the public record and completely

17  different from Plaintiff Wright's, to exclude the mis-matched criminal record from

18  its report about Plaintiff Wright.

19     12.   Defendant's matching procedures are not reasonable procedures to

20  ensure the maximum possible accuracy of the records it reports. Defendant's failure

21  to employ reasonable procedures resulted in Defendant's reports being inaccurate.

22  Accordingly, Plaintiffs bring claims against Defendant under the FCRA and ICRAA.

23                    **PARTIES AND JURISDICTION**

24     13.   Plaintiffs are natural persons and "consumers" as protected and

25  governed by the FCRA and ICRAA.

26     14.   Plaintiff Robinson is a resident of Orange County, California.

27     15.   Plaintiff Wright is a resident of San Marcos, California.

-3-

16.     Defendant TransUnion Rental Screening Solutions, Inc. provides consumer reports for rental screening purposes. Defendant sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective landlords. Defendant is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

17.     Among other things, Defendant provides background checks and credit reports to landlords for their use in deciding whether to rent to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

18.     Defendant is a Delaware corporation headquartered in Colorado.

19.     The Court has personal jurisdiction over Defendant.   Defendant conducts substantial business in this District, including issuing background checks and credit reports on residents of this Division, including Plaintiff Robinson.

20.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p and CAL. CIV. CODE § 410.10.

## FACTUAL ALLEGATIONS
*Defendant's Acquisition and Use of Criminal Record Information for Background Reporting*

21.     For many years, Defendant has purchased records of criminal cases ("criminal record information") from one or more private sources known as "vendors," rather than retrieving the actual underlying court records, for purposes of creating and selling tenant screening reports to prospective landlords and rental property managers.

22.     The tenant screening reports that Defendant sells to landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) because they are used and expected to

-4-

be used for multiple purposes governed by 15 U.S.C. § 1681b and the criminal record information included within bears on the, reputation, personal characteristics, and mode of living of the subjects of the reports.

23. Therefore, Defendant is required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer reports it prepares relates. 15 U.S.C. § 1681e(b).

24. Similarly, Defendant's tenant screening reports as "investigative consumer reports" within the meaning of CAL. CIV. CODE 1786.2 because the information contained therein bears upon consumers' character, general reputation, personal characteristics, and mode of living.

25. Therefore, Defendant is required by the ICRAA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. CAL. CIV. CODE § 1786.20(b).

26. However, Defendant does not follow such procedures, but instead fails to obtain sufficient data to provide accurate information on the reports it prepares and sells. Defendant thus regularly and illegally includes criminal record information on reports which does not pertain to the individual who is the subject of the report. Defendant also regularly and illegally issues reports containing so little information about the offenses associated with the consumers that the reports cannot be considered accurate under the FCRA and ICRAA.

27. Defendant's practices and procedures regarding the reporting of criminal record information, including the failure to obtain, use, and report sufficient identifying information and information about the record at issue, cause widespread harm to consumers and to interstate commerce as a whole.

28. This phenomenon is the result of Defendant's intentional business decisions. The criminal record information Defendant obtains from its vendor(s) is

merely a summary which does not include all of the information or the most up to date information available at the courthouses or government offices where the records themselves are housed in conjunction with the functioning of those entities.

29. Defendant knows that its vendor(s) make mistakes in the condensed, summary eviction information that it purchases for background reporting purposes, and that such information routinely does not contain basic personal identifying information such as date of birth, Social Security Number, or middle name, and that such information routinely does not include an accurate description of the charge and/or disposition.

30. Purchasing distilled, incomplete civil public records information was the impetus for regulatory investigations of its corporate parent and partner, Trans Union, LLC and other consumer reporting agencies, and dozens of FCRA class action lawsuits throughout the United States, which ultimately resulted in a nationwide settlement. *Clark v. Trans Union, LLC*, No. 3:15-cv-00391-MHL, ECF No. 272 (E.D. Va. Aug. 29, 2018).

31. For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that consumer reporting agencies ("CRAs") did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

---

[1] CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

32.     Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

33.     Despite the fact that it is fully aware of the problems associated with incomplete information purchased from vendors, Defendant has not stopped acquiring and profiting from incomplete and inaccurate information.

34.     TURSS markets its services to landlords by noting that it can provide "accurate credit, criminal and eviction histories on renters." It purports to offer "more accurate matching" using "advanced matching logic to match your rental applicants to our report histories."[3]

35.     Defendant further claims that its background screening products provide "[b]road coverage and more precise matching capabilities provide comprehensive, targeted and filtered screening results."[4]

*Defendant's Failure to Fully Disclose Information to Consumers*

36.     Additionally, and despite the clear mandate of FCRA section 1681g(a)(1)-(2) and ICRAA section 1786.28, Defendant never identifies on reports

---

[2] *Id.* at 2.1.2.

[3] *Tenant Screening | TransUnion SmartMove | Tenant Background Check*, https://www.transunion.com/product/smartmove (last visited Oct. 2, 2019).

[4] https://www.transunion.com/product/background-data-solutions (last visited Oct. 2, 2019).

1  or discloses to consumers the source(s) from which it obtains the criminal record
2  information it includes on its reports to third parties.

3  37.    The FCRA mandates that upon request, consumer reporting agencies
4  such as Defendant must "clearly and accurately disclose to the consumer" who
5  requests his or her file "the sources" that supplied any "information" to the CRA
6  about that consumer. 15 U.S.C. § 1681g(a)(2).

7  38.    The ICRAA requires that investigative consumer reporting agencies
8  which include matters of public record on their reports "shall specify in any report
9  containing public record information the source from which that information was
10 obtained…." CAL. CIV. CODE § 1786.28(a).

11 39.    Identification of the true source of a CRA's information is vital to
12 correcting errors and to informing consumers about who is furnishing important
13 information about them.

14 40.    Defendant does not obtain criminal records information directly from
15 public sources.

16 41.    Much of the criminal records information Defendant obtains comes
17 from private vendors.

18 42.    Defendant conceals the identities of its source(s) for criminal record
19 information, which are private vendors, including other consumer reporting
20 agencies, that supply Defendant with incomplete information on a bulk basis.

21 43.    Defendant is more interested in maintaining the appearance that it
22 obtains actual public records from true government sources and in protecting its low-
23 cost private sources of public record data than in disclosing to consumers vital
24 information that Congress required CRAs to disclose in FCRA section 1681g(a)(2),
25 and which California state law requires them to provide pursuant to ICRAA section
26 1786.28(a).

-8-

44.     Defendant fails, as a matter of common policy and procedure, to provide consumers who request file disclosures with all information Defendant maintains about the requesting consumer, including never disclosing to consumers the source of the criminal record information collected and reported about them.

45.     Defendant's practices not only violate the FCRA and ICRAA as a matter of law, the practices exact serious consequences on rental housing applicants and interstate commerce. Consumers are prejudiced in their ability to obtain leased housing and are deprived of complete information regarding the nature and source(s) of the information Defendant maintains and sells about them.

*The Experience of Plaintiff Chris Robinson*

46.     In June 2018, Plaintiff Robinson applied to rent a condo at Laguna Woods Village, a residential community for active adults over the age of 55. Excited about the amenities, conveniences, and facilities, Plaintiff Robinson quickly moved to apply and put down a $1,650 deposit.

47.     On or around June 23, 2018, Laguna Woods Village (or an agent working on its behalf) conducted a background check on Plaintiff Robinson by ordering a tenant background search from Defendant.

48.     In response, Defendant furnished a consumer report to Laguna Woods Village that indicated Plaintiff Robinson had a criminal history, including a conviction for illegal dumping, i.e., littering.

49.     As a result of the criminal record contained in the consumer report attributed to him, Plaintiff Robinson was denied the opportunity to rent the condo and lost the $1,650 deposit.

50.     After Plaintiff Robinson was denied the opportunity to rent the condo, he obtained a copy of the report Defendant prepared about him, and was shocked to see that it contained a criminal conviction for a person named "Christopher A. Robinson" whose height was "6'1," age of thirty-three years old, and who had

1     committed the offense in Texas.

2     51.    Plaintiff Robinson does not have a middle name and has never lived in

3     Texas.  Additionally, Plaintiff Robinson's height is 5'9" and he was seventy-five

4     years old at the time he was denied housing.

5     52.    Based on the fact that Plaintiff Robinson does not have a middle name

6     and is over forty years older than the person who committed this offense, it should

7     have been immediately obvious to Defendant that the criminal offender in the

8     reported criminal case was misattributed to Plaintiff Robinson.  Defendant also could

9     have cross-checked Plaintiff Robinson's height, date of birth and residence.

10    53.    Plaintiff Robinson disputed these results with Defendant, and after a

11    reinvestigation, Defendant created a revised report which removed the conviction

12    which did not belong to Plaintiff Robinson.  However, Plaintiff Robinson had

13    already lost the opportunity to rent his preferred housing, and despite a request, he

14    was unable to receive a refund of his application fee.

15    54.    The report that Defendant prepared about Plaintiff Robinson did not

16    identify the vendor from whom Defendant received the reported criminal record

17    information.  This omission made it impossible to fix the problem at its source -

18    Plaintiff Robinson does not and cannot know if the vendor is supplying similarly

19    incomplete information to other consumer reporting agencies.

20                    *The Experience of Plaintiff Jonathan Wright*

21    55.    On or about April 3, 2019, Plaintiff Jonathan Wright applied to rent an

22    apartment at Bella Vista at Warner Ridge ("Bella Vista"), an apartment complex in

23    San Diego, California.  Plaintiff Wright provided the accurate spelling of his name,

24    complete date of birth, full social security number, and current address in connection

25    with his application.

26    56.    Plaintiff Wright has never lived in or near Sacramento, California, and

27    has no criminal record.

28

-10-

57.     In connection with his application, Bella Vista obtained a tenant screening report from Defendant on or about April 3, 2019. Bella Vista provided Defendant with Plaintiff Wright's full date of birth, full social security number, and address, and Defendant provided Bella Vista with a consumer report purportedly about Plaintiff Wright for a fee.

58.     The April 3, 2019 report Defendant prepared and sold to Bella Vista about Plaintiff Wright contained a criminal record which was inaccurate in numerous respects.

59.     The criminal record Defendant attributed to Plaintiff Wright was a "CRIMINAL/TRAFFIC" offense, with Case No. 14F04623, allegedly obtained from the "CA Sacramento Superior Court." The report does not contain any details about the nature of the charges, nor does it contain any disposition information – it simply shows a case filing date of July 9, 2014.

60.     Defendant's April 3, 2019 report represents that this offense pertains to an individual named "Jonathan C. Wright," and suggests that no additional personal identifying information is available in the public record, by stating "N/A" in the fields on the report for "DOB," "Age," "SSN," and "Residence."

61.     In reality, the publicly available records for Case No. 14F04623 in the Superior Court of Sacramento, CA include substantial personal identifying information. Most importantly, they identify the criminal as "**Johnathon** Calvin Wright," different first and middle names from Plaintiff Wright's, and a different first name than the offender name contained on Defendant's April 12, 2019 report.

62.     Furthermore, the public record of Case No. 14F04623 contains the true criminal's full date of birth, which is completely different from Plaintiff Wright's.

63.     Additionally, these records include the details of the nature of the charges, which were for felony kidnapping, felony criminal threats, and misdemeanor resisting arrest. Furthermore, the records show that the charges were

-11-

disposed of on May 26, 2017, and were no longer pending.

64. Defendant failed to obtain sufficient information, available on the public record, to accurately attribute this record, or even to provide basic information such as the nature of the charges and the existence of a disposition.

65. Defendant obtained its information regarding Case No. 14F04623 from a private vendor.

66. The April 3, 2019 report does not identify the private vendor from which Defendant obtained the criminal record information contained therein.

67. Pursuant to its agreement with Bella Vista, and solely as a result of the inclusion of the inaccurate criminal record on the report, Defendant recommended that Bella Vista deny Plaintiff Wright's rental application.

68. Bella Vista in fact denied Plaintiff Wright's rental application as a result of Defendant's inaccurate and derogatory reporting.

69. Plaintiff Wright subsequently made a request to Defendant for a copy of his complete consumer file.

70. Plaintiff Wright thereafter received a file disclosure from Defendant, dated April 12, 2019.

71. The file disclosure did not accurately identify the source from which Defendant obtained the inaccurate criminal record included on its report to Bella Vista. Instead, it stated that the record "was collected from public record sources by TransUnion Rental Screening Solutions or a company TURSS hired to collect such information." This statement misrepresents the nature of Defendant's practices by suggesting that records are obtained on an individualized basis, rather than the reality, which is that Defendant obtains criminal records on a bulk basis from private vendors, including other consumer reporting agencies. It also fails to identify the specific source from which Plaintiff Wright's records were obtained.

72. Because Plaintiff Wright will seek housing in the future, and because

-12-

of the ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiff Wright will suffer the same injury with respect to future rental applications.

*Facts Demonstrating That Defendant Willfully Failed*
*To Comply With The FCRA*

73.    If Defendant had reasonable procedures to ensure maximum possible accuracy, it would have determined that the criminal records it reported did not belong to Plaintiffs.

74.    Based on the paucity of information available in Defendant's reporting of the public records it misattributed to Plaintiff Robinson, it is apparent that the only personal identifier Defendant could have relied on is Plaintiff Robinson's name. On its face, matching where the only personal identifier used is the name is unreasonable.    But, Defendant added insult to injury by ignoring the obvious mismatch between the offender, who had a middle name and different date of birth, and Plaintiff Robinson, who does not have a middle name.

75.    With respect to Plaintiff Wright, Defendant failed to obtain and/or use the date of birth of the true offender, which is available in the public record and is completely different from Plaintiff's Wright's date of birth.

76.    If Defendant had conducted its searches to require a match of the middle name or date of birth, it would have avoided the false positives. If Defendant required that the middle names or dates of birth on the records it reported matched one another it would have avoided false positives.    If Defendant had looked for additional data on the offenders whose records were matched to Plaintiffs, it could have avoided false positives.

77.    Defendant makes it appear as if its matching criteria are more stringent than they are in actuality by putting Plaintiffs' personally identifying information above every record on the report, including the records that do not belong to them. For example, on page 1 of the report about Plaintiff Robinson, it lists Plaintiff

-13-

1   Robinson's actual date of birth and address in the upper right corner of the page, but

2   the remainder of the page is devoted to a record that is not Plaintiff Robinson's and

3   that was not associated with that address or date of birth. This tactic is misleading,

4   as it makes it appear to the reader as though the information in the public criminal

5   record matches Plaintiff Robinson's date of birth and address when in reality it was

6   matched to neither personal identifier.

7       78.    Other tenant screening agencies have faced governmental scrutiny for

8   substantially similar activities. *See, e.g., FTC v. Realpage, Inc.*, No 3:18-cv-2737

9   (FTC settlement with tenant screening agency which failed to comply with 15 U.S.C.

10  § 1681e(b) because it used loose matching criteria to link potential tenants with

11  criminal records).

12      79.    In addition to employing matching criteria that are obviously flawed,

13  Defendant also fails to fully and accurately report the criminal records it includes in

14  its reports, including so little information about the underlying criminal record itself

15  as to make the reports misleading. For example, Defendant's report on Plaintiff

16  Wright not only includes a misattributed record, it also fails to include even basic

17  information about what the plea was, what the disposition was, or what fine or

18  sentence was imposed. Including this kind of vague innuendo about supposed

19  criminal activity is wholly inconsistent with the Fair Credit Reporting Act's

20  requirement of maximum possible accuracy.

21      80.    Finally, Defendant fails to identify the vendors from which it obtained

22  the records included on Plaintiffs' reports, both on the reports themselves and in

23  Defendant's file disclosures to consumers.

24      81.    In addition to the conduct set forth above, Defendant's willful conduct

25  is further reflected by, *inter alia*, the following:

26      a. The FCRA was enacted in 1970; Defendant has had 49 years to become

27          compliant;

-14-

b. Defendant and its parent company have been repeatedly sued for misreporting public record information;

c. Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

d. Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, caselaw, and the plain language of the FCRA;

e. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

f. Defendant knew that matching individuals to criminal records using limited information would result in false positives. However, it persisted in doing so; and

g. Defendant's violations of the FCRA were repeated and systematic.

82. At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## CLASS ACTION ALLEGATIONS

83. Plaintiffs bring this action on behalf of the following Classes:

(a) For Defendant's violations of Section 1681g of the FCRA (the "FCRA Disclosure Class"):

All persons residing in the United States and its Territories who, during

-15-

the period beginning five (5) years prior to the filing of the original complaint and continuing through the date of the resolution of this case, requested a copy of their consumer file from Defendant, to whom Defendant provided a response which included one or more items of criminal record information obtained from a third party vendor, and which did not identify the third party vendor source.

(b)     For Defendant's violations of Section 1681e(b) of the FCRA (the "Inaccurate Matching Class"):

All natural persons residing in the United States and its Territories who, during the period beginning five (5) years prior to the filing of the original complaint and continuing through the resolution of this case, were the subjects of a consumer report that Defendant prepared and delivered to a third party which (i) contained one or more items of criminal record information, (ii) Defendant's information about the criminal record does not include date of birth, social security number, or street-level address information that matches both the offender and the consumer, and (iii) the name of the offender on the report does not fully match the name of the subject of the report, meaning it does not match the first name, the middle name, and the last name of the subject of the report.

(c)     For Defendant's violations of Section 1786.20(b) of the ICRAA (the "California Inaccurate Matching Subclass"):

All members of the Inaccurate Matching Class residing in California at the time that they were subjects of a consumer report that Defendant prepared and delivered to a third party.

(d)     For Defendant's violations of Section 1786.28 of the ICRAA ("the ICRAA Disclosure Class"):

All natural persons residing within the State of California who, during the period beginning five (5) years prior to the filing of the original complaint and continuing through the date of the resolution of this case, were the subject of a consumer report prepared by Defendant which included one or more items of criminal record information obtained

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

from a third party vendor, and which did not identify the third party vendor source.

84. Plaintiffs seek certification of all Classes pursuant to Fed. R. Civ. P. 23(b)(3) and certification of the ICRAA Disclosure Class and California Inaccurate Matching Class pursuant to Fed. R. Civ. P. 23(b)(2).

85. The Classes are so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Defendant, Plaintiffs aver upon information and belief that the Classes number in the thousands.

86. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual class members. The principal questions concern whether Defendant willfully and/or negligently violated the FCRA by failing to identify its private sources of criminal record information and, by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' files with respect to criminal record information.

87. Plaintiffs' claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

88. Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs are committed to vigorously litigating this matter. Further, Plaintiffs have secured counsel who are very experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

89. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing

-17-

the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

90.     Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the ICRAA Disclosure Class and California Inaccurate Matching Class.

91.     Whether Defendant violated the FCRA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

92.     A class action is a superior method for the fair and efficient adjudication of this controversy.  Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims.  The identities of the class members may be derived from Defendant's records and publicly available records.

## COUNT I
### 15 U.S.C. § 1681e(b)
### (Plaintiffs Robinson and Wright – Individually and on behalf of the Inaccurate Matching Class

93.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

94.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiffs and the proposed Inaccurate Matching Class by selling criminal record information without obtaining sufficient personal identifying information to adequately attribute the records, and without obtaining sufficient information to adequately identify the nature of the criminal records and their dispositions.

-18-

95.    The foregoing violations were negligent and/or willful.  Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiffs under 15 U.S.C. § 1681e(b).  *See* ¶¶ 70-78, *inter alia*, above.

96.    As a result of Defendant's conduct, Plaintiffs suffered damages including but not limited to: denial of a rental opportunity, forfeiture of deposit funds, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

97.    Plaintiffs and members of the Inaccurate Matching Class are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
### CAL. CIV. CODE § 1786.20
### (Plaintiffs Robinson and Wright – Individually and on behalf of the California Inaccurate Matching Class)

98.    Plaintiffs incorporate the paragraphs above.

99.    Defendant is an investigative consumer reporting agency as defined by the ICRAA, and Defendant was required to adhere to the requirements of the ICRAA.

100.    The ICRAA required Defendant to follow reasonable procedures to assure maximum possible accuracy of the information it reported. CAL. CIV. CODE § 1786.20(b).

101.    Defendant violated this provision by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiffs.  Specifically, Defendant misidentified Plaintiffs as criminals based only on inadequate procedures for obtaining criminal record information and matching it to consumers.

102.    Because Plaintiffs will seek housing in the future, and because of the

-19-

ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiffs will suffer the same injury with respect to future rental applications.

103.  Accordingly, Plaintiffs and the California Inaccurate Matching Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**COUNT III**
**15 U.S.C. § 1681g(a)(2)**
**(Plaintiff Wright – Individually and on behalf of**
**the FCRA Disclosure Class)**

104.  Plaintiff Wright incorporates the paragraphs above.

105.  Defendant violated 15 U.S.C. § 1681g(a)(2) by failing to provide consumers throughout the United States, such as Plaintiff Wright, upon request, with all information in the consumers' files, including the sources of such information.

106.  The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff Wright and members of the proposed FCRA Disclosure Class under 15 U.S.C. § 1681g(a)(2). *See* ¶¶ 27-43, *inter alia*, above.

107.  As a result of Defendant's conduct, Plaintiff Wright and members of the FCRA Disclosure Class suffered damages including but not limited to: denial of statutorily-mandated disclosure of information.

108.  Plaintiff Wright and members of the FCRA Disclosure Class are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV**
**CAL. CIV. CODE § 1786.28**
**(Plaintiffs Robinson and Wright – Individually and on behalf of**
**the ICRAA Disclosure Class)**

109.  Plaintiffs incorporate the paragraphs above.

110.  The ICRAA required Defendant to include the specific sources of

-20-

information reported any time it included public records on a report to a third party. Cal. Civ. Code 1786.28.

111. Defendant violated this provision by failing to include the specific source(s) of the criminal record information it sold about Plaintiffs and members of the proposed ICRAA Disclosure Class.

112. Because Plaintiffs will seek housing in the future, and because of the ubiquity of pre-rental background checks, there is a real and immediate threat that he will suffer the same injury with respect to future rental applications.

113. Accordingly, Plaintiffs and the ICRAA Disclosure Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**COUNT V**
**Cal. Bus. & Prof. Code § 17200**
**(Plaintiffs Robinson and Wright individually and on behalf of the ICRAA Disclosure Class and California Inaccurate Matching Class)**

114. Plaintiffs incorporate the paragraphs above.

115. Defendant was required to adhere to the requirements of the California Unfair Competition Law ("UCL").

116. Defendant's inaccurate reporting and inaccurate disclosures constituted unlawful, unfair, and fraudulent business practices.

117. Defendant's practices were unlawful because they violate the FCRA and/or the ICRAA.

118. Defendant's practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to match them to criminal records based on insufficient criteria.

119. Defendant's practices were fraudulent because the report recipients were deceived and/or were likely to be deceived by Defendant's inaccurate representations that Plaintiffs were likely criminals.

120. The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

121. Because Plaintiffs will seek housing in the future, and because of the ubiquity of pre-rental background checks, there is a real and immediate threat that Plaintiffs will suffer the same injury with respect to future rental applications.

122. Plaintiffs and the ICRAA Disclosure and California Inaccurate Matching Classes are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief as follows:

A. Awarding actual damages, as provided by the FCRA;

B. Awarding statutory and punitive damages as provided by the FCRA;

C. Awarding reasonable attorneys' fees and costs, as provided by the FCRA and the ICRAA;

D. For injunctive relief enjoining Defendant from pursuing the practices complained of above as provided by the ICRAA; and,

D. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiffs demand a trial by jury for all claims so triable.

BERGER MONTAGUE PC

/s/

Date:

Benjamin Galdston

E. Michelle Drake*
Joseph C. Hashmall*
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414

-22-

T. 612.594.5999
F. 612.584.4470
emdrake@bm.net
jhashmall@bm.net

Devin H. Fok, SBN 256599
DHF LAW P.C.
234 E. Colorado Blvd. 8th Floor
Pasadena, CA 91101
T: (888) 651-6411
F: (818) 484-2023
devin@devinfoklaw.com

James A. Francis *
John Soumilas *
Lauren KW Brennan *
FRANCIS MAILMAN
SOUMILAS PC
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Kristi C. Kelly*
KELLY GUZZO PLC
3925 Chain Bridge Rd., Suite 202
Fairfax, VA 22030
T. 703.424.7570
kkelly@kellyguzzo.com

*application for admission *pro hac vice* forthcoming

ATTORNEYS FOR PLAINTIFFS

-23-

# EXHIBIT 2

se Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

ise Number: 19STCV43951

CHAEL REID LEWIS VS TRANSUNION RENTAL SCREENING SOLUTIONS, INC.

ing Courthouse: Spring Street Courthouse

ing Date: 12/06/2019
ise Type: Other Complaint (non-tort/non-complex) (General Jurisdiction)
atus: Pending

ck here to access document images for this case
his link fails, you may go to the Case Document Images site and search using the case number displayed on this page

# JTURE HEARINGS

se Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

/10/2020 at 10:00 AM in Department 9 at 312 North Spring Street, Los Angeles, CA 90012
tial Status Conference

# ARTY INFORMATION

se Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

ALDSTON BENJAMIN - Attorney for Plaintiff

.WIS MICHAEL REID - Plaintiff

RANSUNION RENTAL SCREENING SOLUTIONS INC. - Defendant

# OCUMENTS FILED

se Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

## ocuments Filed (Filing dates listed in descending order)

/08/2020 Proof of Service by Mail
ed by Michael Reid Lewis (Plaintiff)

/03/2020 Proof of Personal Service
ed by Michael Reid Lewis (Plaintiff)

/03/2020 Proof of Service by Mail
ed by Michael Reid Lewis (Plaintiff)

/02/2020 Certificate of Mailing for ((Court Order re: setting Initial Status Conference) of 01/02/2020, initial status conference order)
ed by Clerk

/02/2020 Minute Order ( (Court Order re: setting Initial Status Conference))
ed by Clerk

/02/2020 Initial Status Conference Order
ed by Clerk

/17/2019 Certificate of Mailing for ((Court Order re: Notice of Related Cases) of 12/17/2019)
ed by Clerk

/17/2019 Minute Order ( (Court Order re: Notice of Related Cases))
ed by Clerk

/06/2019 Notice of Case Assignment - Unlimited Civil Case
ed by Clerk

/06/2019 Summons (on Complaint)
ed by Clerk

/06/2019 Civil Case Cover Sheet
ed by Michael Reid Lewis (Plaintiff)

/06/2019 Complaint
ed by Michael Reid Lewis (Plaintiff)

## ROCEEDINGS HELD

ise Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### oceedings Held (Proceeding dates listed in descending order)

/02/2020 at 12:02 PM in Department 9, Yvette M. Palazuelos, Presiding
iurt Order

/17/2019 at 09:57 AM in Department 9, Yvette M. Palazuelos, Presiding
iurt Order

## EGISTER OF ACTIONS

ise Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### egister of Actions (Listed in descending order)

/08/2020 Proof of Service by Mail
ed by Michael Reid Lewis (Plaintiff)

/03/2020 Proof of Personal Service
ed by Michael Reid Lewis (Plaintiff)

/03/2020 Proof of Service by Mail
ed by Michael Reid Lewis (Plaintiff)

/02/2020 at 12:02 PM in Department 9, Yvette M. Palazuelos, Presiding
iurt Order

/02/2020 Minute Order ( (Court Order re: setting Initial Status Conference))
ed by Clerk

/02/2020 Initial Status Conference Order
ed by Clerk

/02/2020 Certificate of Mailing for ((Court Order re: setting Initial Status Conference) of 01/02/2020, initial status conference order)
ed by Clerk

/17/2019 at 09:57 AM in Department 9, Yvette M. Palazuelos, Presiding
iurt Order

/17/2019 Minute Order ( (Court Order re: Notice of Related Cases))
ed by Clerk

/17/2019 Certificate of Mailing for ((Court Order re: Notice of Related Cases) of 12/17/2019)
ed by Clerk

/06/2019 Civil Case Cover Sheet
ed by Michael Reid Lewis (Plaintiff)

/06/2019 Complaint
ed by Michael Reid Lewis (Plaintiff)

/06/2019 Notice of Related Case
ed by Michael Reid Lewis (Plaintiff)

/06/2019 Notice of Case Assignment - Unlimited Civil Case
ed by Clerk

/06/2019 Summons (on Complaint)
ed by Clerk

Benjamin Galdston (SBN 211114)
BERGER MONTAGUE PC
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300
bgaldston@bm.net

*Attorneys for Plaintiffs*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 06 2019

Sherri R. Carter, Executive Officer/Clerk of Court
By _____, Deputy
Steven Drew

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF LOS ANGELES
### UNLIMITED CIVIL

| | |
|---|---|
| MICHAEL REID LEWIS, individually and on behalf of those similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> TRANSUNION RENTAL SCREENING SOLUTIONS, INC., <br><br> Defendant. | Case No. **19STCV43951** <br><br> **CLASS ACTION COMPLAINT** <br><br> (1) Failure to Establish Reasonable Procedures to Ensure Maximum Possible Accuracy, 15 U.S.C. § 1681e(b); <br> (2) Failure to Identify Sources of Information on Report, 15 U.S.C. § 1681g; <br> (3) Failure to Establish Reasonable Procedures to Assure Maximum Possible Accuracy, Cal. Civ. Code § 1786.20; <br> (4) Failure to Identify Sources of Information on Reports, Cal. Civ. Code § 1786.28; <br> (5) Fraudulent & Unfair Practices, Cal. Bus. & Prof. Code § 17200 <br><br> **DEMAND FOR JURY TRIAL** |

1    COMES NOW, Michael Reid Lewis ("Plaintiff"), on behalf of himself and the classes set

2 forth below and states as follows:

3                              **INTRODUCTION**

4    1.     This is a class action for damages and injunctive relief brought against Defendant

5 TransUnion Rental Screening Solutions, Inc., ("Defendant" or "TU Rental") pursuant to the Fair

6 Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), the California Investigative Consumer

7 Reporting Agencies Act ("ICRAA") Cal. Civ. Code § 1786.20, *et seq.*, and the California Unfair

8 Competition Law, ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq.*

9    2.     Defendant is a consumer reporting agency that compiles and maintains files on

10 consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes

11 these consumer reports to landlords who use the reports to make decisions regarding whether to rent

12 to certain consumers.

13    3.     Defendant falsely reported to Plaintiff's potential landlord that Plaintiff had been

14 charged and convicted of four criminal offenses. In fact, the convictions Defendant reported belonged

15 to individual(s) with a similar name to Plaintiff, but none of the reported convictions belonged to

16 Plaintiff.

17    4.     Defendant's reporting cost Plaintiff his chance to rent the property of his choice,

18 caused him serious distress and embarrassment, and caused him financial loss.

19    5.     Many online criminal records lack meaningful personal identifying information about

20 the offender. Many such records only contain the offender's name, and do not contain any other

21 identifiers, such as date of birth, age, address, or Social Security Number.

22    6.     Relying on such public records, Defendant matched Plaintiff (who has very common

23 first and last names) with records that did not belong to him. Given the paucity of information in the

24 underlying online public records, the only personal identifier Defendant could have used is the

25 Plaintiff's name. Unbelievably, the people to whom Plaintiff was matched not only have different

26 names than Plaintiff, they also have different names than one another, making it readily apparent that

27 the records reported could not possibly belong to a single person, much less to Plaintiff.

28                       1

7. Defendant's matching procedures are not reasonable procedures to ensure the maximum possible accuracy of the records it reports. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

8. Furthermore, upon request, Defendant does not accurately identify the sources of the records it reports, causing confusion for class members who wrongly assume that there is a public record somewhere that has been attributed to them.

9. On behalf of himself and several classes of similarly situated individuals, Plaintiff brings claims pursuant to the FCRA, ICRAA and UCL.

## PARTIES AND JURISDICTION

10. Individual and representative Plaintiff Michael Reid Lewis is a resident of San Pedro, California.

11. Plaintiff is a natural person and a "consumer" as protected and governed by the FCRA and ICRAA.

12. Defendant TransUnion Rental Screening Solutions, Inc. provides consumer reports for rental screening purposes. Defendant sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective landlords. Defendant is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

13. Among other things, Defendant provides background checks and credit reports to landlords for their use in deciding whether to rent to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

14. Defendant is a Delaware corporation headquartered in Colorado.

15. The Court has personal jurisdiction over Defendant. Defendant conducts substantial business in this County, including issuing background checks and credit reports on residents of this County, including Plaintiff.

16. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p and Cal.

2

1 | Civ. Code § 410.10.

2 | 17. Venue is proper in the County of Los Angeles as Plaintiff resides in this County.

3 | **FACTUAL ALLEGATIONS RELATING TO PLAINTIFF**

4 | 18. In June 2019, Plaintiff and his wife were seeking new housing. Having located a
5 | property that they wanted to rent in Pine Mountain Club, California, they quickly moved to apply.
6 | Plaintiff paid a fee to their broker for the rental application and associated background check.

7 | 19. Plaintiff and his wife were surprised to receive an email on June 14, 2019, which stated
8 | their application was being denied "based in whole, or in part, on the information in your Screening
9 | Report provided by TransUnion, the Credit Reporting Agency."

10 | 20. Plaintiff obtained a copy of the report Defendant prepared about him, which is attached
11 | as Exhibit A, and was shocked to see that it contained criminal convictions from areas of California
12 | where he had never lived, specifically Glenn County, Orange County, Sacramento and Contra Costa
13 | County. Plaintiff was never convicted of any of the offenses listed on the report, and none of the
14 | reported records actually related to him.

15 | 21. In fact, in a brief call to some of the courthouses where some of the associated records
16 | were kept, Plaintiff was able to discover that the records related to other individual(s). Notably,
17 | Michael Lewis is an exceedingly common name.

18 | 22. Importantly, at least one of these individual(s) did not share Plaintiff's middle name,
19 | which is Reid, and one of them had a suffix in their name that Plaintiff does not. For example, the
20 | Sacramento record relates to someone named Michael Rachmon Lewis, and the Glenn County record
21 | relates to a Michael R. Lewis, Junior.

22 | 23. Based on the fact that the middle names on the records reported by Defendant did not
23 | match Plaintiff's middle name, it should have been immediately obvious to Defendant that the
24 | criminal offenders in the reported criminal cases were not Plaintiff.

25 | 24. Plaintiff disputed these results with Defendant, and after a reinvestigation, Defendant
26 | created a revised report which removed all of the convictions. However, Plaintiff had already lost
27 | the opportunity to rent his preferred housing, and despite a request, he was unable to receive a refund

28 | 3

CLASS ACTION COMPLAINT
Case No.

1 | of his application fee.

2 |     25.    Because Plaintiff will seek housing in the future, and because of the ubiquity of pre-
3 | rental background checks, there is a real and immediate threat that Plaintiff will suffer the same injury
4 | with respect to future rental applications.

5 |     26.    The report that Defendant prepared about Plaintiff did not identify the vendor from
6 | whom Defendant received the reported criminal record information. This omission made it
7 | impossible to fix the problem at its source - Plaintiff does not and cannot know if the vendor is
8 | supplying similarly incomplete information to other consumer reporting agencies.

9 |     27.    On July 31, 2019, Plaintiff, through counsel, sent Defendant a request for his full file
10 | pursuant to 15 U.S.C § 1681g. Plaintiff received Defendant's response on August 9, 2019.

11 |     28.    On that response, Defendant lists as its "sources of data" the four courts where the
12 | erroneously matched convictions occurred. This response was inaccurate, as Defendant failed to
13 | disclose the third-party vendor from whom it received the information.

14 |
15 | ### FACTS DEMONSTRATING THAT DEFENDANT WILLFULLY FAILED TO COMPLY WITH THE FCRA

16 |     29.    If Defendant had reasonable procedures to ensure maximum possible accuracy, it
17 | would have determined that the offenses it reported did not belong to Plaintiff.

18 |     30.    Based on the paucity of information available in the public records Defendant reported
19 | about Plaintiff, it is apparent that the only personal identifier Defendant could have relied on is
20 | Plaintiff's name. On its face, matching where the only personal identifier used is the name is
21 | unreasonable. But, Defendant added insult to injury by not even requiring that the middle names of
22 | the offenders whose records Defendant misattributed to Plaintiff matched Plaintiff's middle name, or
23 | that they even matched one another.

24 |     31.    If Defendant had conducted its searches using Plaintiff's full middle name, it would
25 | have avoided the false positives. If Defendant required that the middle names on the records it
26 | reported matched one another, it would have avoided false positives. If Defendant had looked for
27 | additional data on the offenders whose records were matched to Plaintiff, it could have avoided false

28 |                                            **4**

1 positives.

2        32.     Defendant makes it appear as if its matching criteria are more stringent than they are
3 in actuality by putting Plaintiff's personally identifying information immediately above every record
4 on the report, including the records that do not belong to him and do not match his personally
5 identifying information.  For example, on page 4 of the report, Defendant's report lists Plaintiff's
6 actual date of birth and address in the upper right corner of the page, but the remainder of the page is
7 devoted to a record that is not Plaintiff's, and that was not associated with that address or date of
8 birth.  This tactic is misleading, as it makes it appear to the reader as though the information in the
9 public criminal record matches Plaintiff's date of birth and address, when in reality it was matched
10 to neither personal identifier.

11        33.     Other tenant screening agencies have faced governmental scrutiny for substantially
12 similar activities.  *See, e.g., FTC v. Realpage, Inc.*, No. 3:18-cv-2737 (N.D. Tex.) (FTC settlement
13 with tenant screening agency which failed to comply with 15 U.S.C. § 1681e(b) because it used loose
14 matching criteria to link potential tenants with criminal records).

15        34.     In addition to employing matching criteria that are obviously flawed, Defendant also
16 fails to fully and accurately report the criminal records it includes in its reports, including so little
17 information about the underlying criminal record itself as to make the reports vague innuendos of
18 wrongdoing, devoid of substance or detail.  This renders the reports misleading and inaccurate
19 because the reports suggest that very little information is available from the public record, when in
20 reality there is plenty of information in the underlying records, Defendant just simply does not report
21 the available information.  Specifically:

22        a.   The Glenn County record erroneously included on pages 4-5 of Exhibit A fails to include
23          basic information that is available from the court's website, including the disposition, the
24          disposition date or the case type.  It also fails to correctly and accurately list all of the
25          charges.

26        b.   The Contra Costa County record erroneously included on pages 6-7 of Exhibit A fails to
27          include basic information, including any information whatsoever about what the charge

28                      5

CLASS ACTION COMPLAINT
Case No.

1           was, what the disposition was, and when, how and whether the case was resolved.

2       c.  The Orange County record erroneously included on pages 8-9 of Exhibit A fails to include

3           basic information that is available from the court's website, including any information

4           whatsoever about the charges and their disposition.

5       d.  The Sacramento County record erroneously included on pages 10-11 of Exhibit A fails to

6           include basic information that is available from the court's website, including the

7           defendant's middle name (which does not match Plaintiff's middle name) or any

8           information whatsoever about the charges and their disposition.

9  Including this kind of vague innuendo about supposed criminal activity is wholly inconsistent with

10  the Fair Credit Reporting Act's requirement of maximum possible accuracy.

11       35.    Defendant also consistently fails to comply with its obligation under 15 U.S.C. 1681g

12  to disclose its third-party vendor sources. Rather, it discloses the public record sources from which

13  those vendors received the information, making it appear as though Defendant went directly to the

14  source. This, combined with Defendant's inclusion of a variety of personal identifiers on each page

15  containing a misattributed public record, makes it appear to consumers that the problem is with the

16  public record itself. In reality, the problem is not that the public records inaccurately attribute crimes

17  to Plaintiff and class members, but the paucity of the information Defendant obtains from its vendors.

18       36.    Defendant's failure to accurately disclose the source of its criminal records

19  information makes it difficult for individuals trying to clear their names, such as Plaintiff, because

20  they are wrongly led to believe that they cannot know if the flaw is in the public record itself (such

21  as in a case of identity theft), instead of that the flaw is with what a third party vendor retrieved (as

22  the incompleteness likely is here) or if the flaw is in Defendant's own matching criteria (as it also is

23  here).

24       37.    In addition to the conduct set forth above, Defendant's willful conduct is further

25  reflected by, inter alia, the following:

26       a.  The FCRA was enacted in 1970; Defendant has had 49 years to become compliant;

27       b.  Defendant and its parent company have been repeatedly sued for misreporting public

28                           6

1  record information.

2    c. Defendant is a corporation with access to legal advice through its own general counsel's

3  office and outside litigation counsel. Yet, there is no contemporaneous evidence that it

4  determined that its conduct was lawful;

5    d. Defendant knew or had reason to know that its conduct was inconsistent with FTC

6  guidance, case law, and the plain language of the FCRA;

7    e. Defendant voluntarily ran a risk of violating the law substantially greater than the risk

8  associated with a reading that was merely careless;

9    f. Defendant knew that matching individuals to criminal records using limited information

10  would result in false positives. However, it persisted in doing so;

11    g. Defendant's violations of the FCRA were repeated and systematic.

12    38.    At all times relevant hereto, Defendant's conduct was willful and carried out in

13  knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was

14  intentionally accomplished through its intended procedures; these procedures have continued despite

15  the fact that other consumer reporting agencies have been subject to court decisions and consumer

16  complaints critical of similar conduct; and Defendant will continue to engage in this conduct because

17  it believes there is greater economic value in selling over-inclusive consumer reports than in

18  producing accurate reports.

19  **CLASS ACTION ALLEGATIONS**

20    39.    Plaintiff brings this action on behalf of the following Classes:

21  (a)    For Defendant's violations of section 1681g of the FCRA (the "FCRA Disclosure Class"):

22  All persons residing in the United States and its Territories who, during the period
23  beginning five (5) years prior to the filing of this Complaint and continuing through
    the date of the resolution of this case, requested a copy of their consumer file from
24  Defendant, to whom Defendant provided a response which included one or more
    items of criminal record information obtained from a third party vendor, and which
25  did not identify the third party vendor source.

26  (b)    For Defendant's violations of section 1681e(b) of the FCRA (the "Inaccurate Matching

27

28  7

CLASS ACTION COMPLAINT<br>Case No.

1  Class"):

2      All natural persons residing in the United States and its Territories who, during the
       period beginning five (5) years prior to the filing of the original complaint and
3      continuing through the resolution of this case, were the subjects of a consumer
       report that Defendant prepared and delivered to a third party which (i) contained
4      one or more items of criminal record information, (ii) Defendant's information
       about the criminal record does not include date of birth, social security number, or
5      street-level address information that matches both the offender and the consumer,
       and (iii) the name of the offender on the report does not fully match the name of the
6      subject of the report, meaning it does not match the first name, the middle name,
7      and the last name of the subject of the report.

8  (c)  Also for Defendant's violations of section 1681e(b) of the FCRA (the "Dispute Sub-Class"):

9      All members of the Inaccurate Matching Class who filed a dispute with Defendant
10     about the accuracy of their report.

11 (d)  For Defendant's violations of Section 1786.20(b) of the ICRAA (the "California Inaccurate

12 Matching Class"):

13     All members of the Inaccurate Matching Class residing in California at the time
       that they were subjects of a consumer report that Defendant prepared and delivered
14     to a third party.

15 (e)  For Defendant's violations of section 1786.28 of the ICRAA ("the ICRAA Disclosure Class"):

16     All natural persons residing within the State of California who, during the period
       beginning five (5) years prior to the filing of this Complaint and continuing
17     through the date of the resolution of this case, were the subject of a consumer
18     report prepared by Defendant which included one or more items of criminal record
       information obtained from a third party vendor, and which did not identify the
19     third party vendor source.

20     40.    Class certification is appropriate under Cal. Civ. Code § 382.

21     41.    Numerosity:  The classes are so numerous that joinder of all class members is

22 impracticable. Given the volume of Defendant's business, there are hundreds or thousands of class

23 members.

24     42.    Typicality: Plaintiff's claims are typical of the members of the classes. It is typical

25 for Defendant to match consumers to criminal records using name alone, and to produce inaccurate

26 and inconsistent file disclosures. The FCRA violations suffered by Plaintiff are typical of those

27

28                                          8

1 | suffered by other class members, and Defendant treated Plaintiff consistently with other class
2 | members in accordance with its standard policies and practices.

3 |     43.     Adequacy: Plaintiff will fairly and adequately protect the interests of the classes
4 | because he and his experienced counsel are free of any conflicts of interest and are prepared to
5 | vigorously litigate this action on behalf of the class.

6 |     44.     Commonality: This case presents common questions of law and fact, including but
7 | not limited to:

8 |     a.  Whether Defendant violated the FCRA by failing to follow reasonable procedures to
9 |     ensure maximum possible accuracy in reporting criminal convictions;

10 |     b.  Whether Defendant violated the FCRA by failing accurately identify its sources in
11 |     response to valid requests;

12 |     c.  Whether Defendant violated the ICCRA by failing to follow reasonable procedures to
13 |     ensure maximum possible accuracy in reporting criminal convictions;

14 |     d.  Whether Defendant violated the UCL by failing to follow reasonable procedures to ensure
15 |     maximum possible accuracy in reporting criminal convictions;

16 |     e.  Whether Defendant's violations were willful;

17 |     f.  The proper measure of damages; and

18 |     g.  The proper injunctive relief.

19 |     45.     Class certification is appropriate under Cal. Civ. Code § 382 because, *inter alia*,
20 | questions of law and fact common to the classes predominate over any questions affecting only
21 | individual members of the classes, and because a class action is superior to other available methods
22 | for the fair and efficient adjudication of this litigation. Defendant's conduct described in this
23 | Complaint stems from common and uniform policies and practices, resulting in common violations
24 | of the FCRA. Members of the classes do not have an interest in pursuing separate actions against
25 | Defendant, as the amount of each class member's individual claim is small compared to the expense
26 | and burden of individual prosecution. Class certification also will obviate the need for unduly
27 | duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.

28 | 9

1    Moreover, management of this action as a class action will not present any likely difficulties. In the

2    interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all

3    class members' claims in a single forum.

4        46.      In view of the complexities of the issues and the expenses of litigation, the separate

5    claims of individual class members are insufficient in amount to support separate actions.

6        47.      Yet, the amount which may be recovered by individual class members will be large

7    enough in relation to the expense and effort of administering the action to justify a class action. The

8    administration of this action can be handled by class counsel or a third-party administrator, and the

9    costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

10       48.      Plaintiff intends to send notice to all members of the classes to the extent required by

11    Cal. Civ. Code § 382. The names and addresses of the class members are available from Defendant's

12    records.

**COUNT I**
**15 U.S.C. § 1681e(b)**

13

**On behalf of Plaintiff, the Inaccurate Matching Class and the Dispute Sub-Class**

14

15       49.      Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at

16    length herein.

17       50.      Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable

18    procedures to assure maximum possible accuracy in the preparation of the consumer reports it

19    furnished regarding Plaintiff and the Inaccurate Matching Class and Dispute Sub-Class members.

20       51.      The foregoing violations were negligent and/or willful. Defendant acted in knowing

21    or reckless disregard of its obligations and the rights of Plaintiff and other Inaccurate Matching Class

22    and Dispute Sub-Class members under 15 U.S.C. § 1681e(b). *See* ¶¶ 28-37.

23       52.      As a result of Defendant's conduct, Plaintiff and Inaccurate Matching Class and

24    Dispute Sub-Class members suffered actual damages including but not limited to: denial of rental

25    opportunities, damage to reputation, embarrassment, humiliation and other mental and emotional

26    distress.

27       53.      Plaintiff and Inaccurate Matching Class and Dispute Sub-Class members are entitled

28

CLASS ACTION COMPLAINT
Case No.

1 to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from

2 Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT II
### 15 U.S.C. § 1681g
### On Behalf of Plaintiff and the FCRA Disclosure Class

5     54.     Plaintiff incorporates the paragraphs above.

6     55.     Defendant failed to fully identify sources of the information on Plaintiff's report,

7 despite Plaintiff's valid request pursuant to §1681g.

8     56.     Defendant acted in negligent, deliberate and reckless disregard of its obligations and

9 the rights of Plaintiff and the FCRA Disclosure Class members under 15 U.S.C. § 1681g. *See* ¶¶ 28-

10 37.

11     57.     Plaintiff and FCRA Disclosure Class members are entitled to recover actual damages

12 and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount

13 to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT III
### Cal. Civ. Code § 1786.20
### California Investigative Consumer Reporting Agencies Act
### On Behalf of Plaintiff and the California Inaccurate Matching Class

17     58.     Plaintiff incorporates the paragraphs above.

18     59.     Defendant is an investigative consumer reporting agency as defined by the ICRAA,

19 and Defendant was required to adhere to the requirements of the ICRAA.

20     60.     The ICRAA required Defendant to follow reasonable procedures to assure maximum

21 possible accuracy of the information it reported. Cal. Civ. Code § 1786.20(b).

22     61.     Defendant violated this provision by failing to establish or to follow reasonable

23 procedures to assure maximum possible accuracy in the preparation of the consumer reports it

24 furnished regarding Plaintiff and the California Inaccurate Matching Class. Specifically, Defendant

25 misidentified Plaintiff as a criminal based only on limited information. Defendant could and should

26 have determined that Plaintiff was not a criminal by comparing Plaintiff's middle name with those

27 included in the criminal record.

28

11

CLASS ACTION COMPLAINT
Case No.

1     62.    Because Plaintiff will seek housing in the future, and because of the ubiquity of pre-

2  rental background checks, there is a real and immediate threat that Plaintiff will suffer the same injury

3  with respect to future rental applications.

4     63.    Plaintiff and the California Inaccurate Matching Class are entitled to injunctive relief

5  and to the recovery of attorneys' fees and costs.

**COUNT IV**
**Cal. Civ. Code § 1786.28**
**California Investigative Consumer Reporting Agencies Act**
**Asserted on behalf of Plaintiff and the ICRAA Disclosure Class**

9     64.    Plaintiff incorporates the paragraphs above.

10    65.    The ICRAA required Defendant to include the specific sources of information

11  reported any time it included public records on a report to a third party. Cal. Civ. Code 1786.28.

12    66.    Defendant violated this provision by failing to include the specific source(s) of the

13  criminal record information it sold about Plaintiff and members of the proposed ICRAA Disclosure

14  Class.

15    67.    Because Plaintiff will seek housing in the future, and because of the ubiquity of pre-

16  rental background checks, there is a real and immediate threat that he will suffer the same injury with

17  respect to future rental applications.

18    68.    Accordingly, Plaintiff and the ICRAA Disclosure Class are entitled to injunctive relief

19  and to the recovery of attorneys' fees and costs.

**COUNT V**
**Cal. Bus. & Prof. Code § 17200**
**Unlawful, Unfair, or Fraudulent Conduct**
**Asserted on behalf of Plaintiff and the California Inaccurate Matching Class**

23    69.    Plaintiff incorporates the paragraphs above.

24    70.    Defendant was required to adhere to the requirements of the UCL.

25    71.    By asserting that Plaintiff was a criminal, Defendants diminished Plaintiff's housing

26  opportunities.

27    72.    Defendant's inaccurate reporting constituted unlawful, unfair, and fraudulent business

28

12

1  practices.

2      73.     Defendant's practices were unlawful because they violate the FCRA and/or the

3  ICRAA.

4      74.     Defendant's practices were unfair because it is unethical, immoral, unscrupulous,

5  oppressive, and substantially injurious to consumers to match them to criminal records based on

6  insufficient criteria.

7      75.     Defendant's practices were fraudulent because the report recipients were deceived

8  and/or were likely to be deceived by Defendant's inaccurate representations that Plaintiff was likely

9  a criminal.

10      76.     The harm caused by these business practices vastly outweighs any legitimate utility

11  they possible could have.

12      77.     Because Plaintiff will seek housing in the future, and because of the ubiquity of pre-

13  rental background checks, there is a real and immediate threat that Plaintiff will suffer the same injury

14  with respect to future rental applications.

15      78.     Plaintiff and the California Inaccurate Matching Class are entitled to injunctive relief

16  and to the recovery of attorneys' fees and costs.

17  **PRAYER FOR RELIEF**

18  WHEREFORE, Plaintiff, on behalf of himself and the classes, seek the following relief:

19  a.  Determining that this action may proceed as a class action;

20  b.  Designating Plaintiff as the class representative for the classes;

21  c.  Designating Plaintiff's counsel as counsel for the classes;

22  d.  Issuing proper notice to the classes at Defendant's expense;

23  e.  Declaring that Defendant violated the FCRA, ICRAA and UCL;

24  f.  Declaring that Defendant acted negligently, or willfully and in deliberate or reckless

25     disregard of the rights of Plaintiff and the classes under the FCRA;

26  g.  Awarding actual and/or statutory damages as provided by the FCRA;

27  h.  Awarding punitive damages;

28                        13

1     i.   Granting injunctive relief;

2     j.   Awarding reasonable attorneys' fees and costs and expenses;

3     k.   Granting other and further relief, in law or equity, as this Court may deem appropriate and

4        just.

### JURY DEMAND

Pursuant to Section 16, Article I of the California Constitution and Cal. Code of Civ. Pro. §

631, Plaintiff and the classes demand a trial by jury.

BERGER MONTAGUE PC

Date: November 22, 2019

Benjamin Galdston

*Attorney for Plaintiff*

14

CLASS ACTION COMPLAINT

# EXHIBIT A



## Application #1000006314115

| Applicant | Recommendation | Open Bankruptcy | Credit Score | Applicant Role | Status | Reports |
|---|---|---|---|---|---|---|
| | **Accept** View Details | 0 Open Bankruptcies within the past 6 months | 581 | Primary Renter | Completed (06.04.19 05:43 PM) | ● 🐾 ● |

### Criminal Records by state | Michael   Lewis   DOB ███1972 SSN | XXX-XX-3776
████ San Pedro California ████

### Summary: 4 Records Found in 1 States

California (4)

| | Record | First Name | Middle Name | Last Name | DOB | SSN | Dataset |
|---|---|---|---|---|---|---|---|
| | 1 | MICHAEL | R | LEWIS | | No SSN Returned | CAGL2 |
| | 2 | MICHAEL | R | LEWIS | | No SSN Returned | CACC3 |
| | 3 | MICHAEL | R | LEWIS | | No SSN Returned | CAOR2 |
| | 4 | MICHAEL | R | LEWIS | | No SSN Returned | CASA2 |

### Eviction Report

Michael Lewis (XXX XX 3776),   DOB : ███1972

San Pedro California ████

**State Report**

Application No #1000006314115
Created On Date : 6/4/2019 9 43 50 PM

| State | # of Records | Action/Report |
|---|---|---|
| AK, AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, IL, IN, KS, KY, LA, MA, MD, ME, MI, MN, MO, MS, MT, NC, ND, NE, NH, NJ, NM, NV, NY, OH, OK, OR, PA, PR, RI SC, SD, TN, TX, UT, VA, VI, VT, WA, WI, WV, WY | 0 | No Records Found |



Customer Support 1- 866-755-0961



## Credit Report

6/23/2019 12:36 PM

**Name:** Michael Lewis

**Address:** San Pedro, CA

**SSN Message: SSN Match (confirmed by bureau)**

# Michael R Lewis

**Addresses**

| Current Address | Current Address | Current Address |
|---|---|---|
| Los Angeles CA | Los Angeles CA | Sparks NV |
| Reported: 06/06 | Reported: 03/02 | |

Address Discrepancy: **The provided address does not match those in the consumers file.**

## Fraud Indicators

**Description**

Current address mismatch - Input does not match file.

## Profile Summary

**Record Counts**

| Tradelines: | Collections: | Public Records: | Inquiries: |
|---|---|---|---|
| 1 | 0 | 0 | 1 |

**Derogatory Items**

| Negative Tradelines: | Tradelines with any historical negatives: | Occurrence of any historical negatives: |
|---|---|---|
| 1 | 0 | 0 |

**Tradeline Summary**

| | Count | High Credit | Credit Limit | Balance | Past Due | Payment | Available |
|---|---|---|---|---|---|---|---|
| Revolving | 0 | N/A | N/A | N/A | N/A | N/A | N/A |
| Installment | 1 | N/A | N/A | N/A | N/A | N/A | N/A |
| Mortgage | 0 | N/A | N/A | N/A | N/A | N/A | N/A |
| Open | 0 | N/A | N/A | N/A | N/A | N/A | N/A |
| Closed w Bal | - | N/A | N/A | $3,254 | $3,254 | $389 | N/A |
| Total | 1 | $0 | $0 | $3,254 | $3,254 | $389 | N/A |

# ResidentScore

| ResidentScore | Score Factors |
|---|---|
| **581** | Not enough revolving debt experience<br>Too few bank revolving accounts<br>Not enough retail debt experience<br>Too few bankcard accounts<br>Inquiries impacted the credit score |

# Tradelines

### Tradelines Total

| Count | Balance Total | Total Credit Limit | Total Past Due |
|---|---|---|---|
| **1** | **$3,254** | **N/A** | **$3,254** |

### Trades

## THE CALIF CU

| Industry: | Credit Union and Finance other than personal | Opened: | 02/02 | Balance: | $3,254 |
|---|---|---|---|---|---|
| Loan Type: | Automobile | Verified: | 04/17 | Past Due: | $3,254 |
| Loan Terms: | Installment 060 Monthly | Closed: | 10/13 | Credit Limit: | N/A |
| Account Type: | Joint account | Paid: | | Payment Amount: | $389 |

| Status: | 09: Charged off as Bad Debt |
|---|---|
| Remarks: | Profit and loss writeoff |
| Notes: | Automated account |

### Payment History
No payment history reported

# Inquiries

| Date | Name | Kind of Business |
|---|---|---|
| 07/18/2017 | CCB | Miscellaneous |

# ℰ Criminal Report

6/14/2019 4:11 PM



Date of Birth: ▇▇▇ 1972
Address: ▇▇▇
San Pedro, CA ▇▇▇

Name: Michael Lewis

# MICHAEL R LEWIS JR

Dataset:     CA Glenn County Superior Court
DOB:         N/A
Age:         N/A
SSN:         N/A
Residence:   N/A

   No aliases found

### PHYSICAL DETAILS
   Sex: U

### PERSON PHYSICAL FEATURES
No physical features listed

---

| Incident(s): | Booking(s): | Arrest(s): |
|:---:|:---:|:---:|
| 0 | 0 | 0 |
| Court Action(s): | Sentencing(s): | Supervision(s): |
| 1 | 0 | 0 |

Activity Type: CRIMINAL/TRAFFIC        Court Record Id: ST160935

### ORGANIZATION JURISDICTION
Jurisdiction Description: CA GLENN COUNTY SUPERIOR COURT

Charge Sequence Id: 1
Charge Description: DESIGNATED SPEED/EXCESS OF 10 MPH/MORE
### CHARGE CLASSIFICATION

Charge Degree: INFRACTION (T)

Charge Filing Date: 2013-05-13

**CHARGE STATUTE**

Statute Code Id: 22406(A-F)


Charge Sequence Id: 2

Charge Description: NOT ELIGIBLE FOR TRAFFIC SCHOOL

Charge Filing Date: 2013-05-13

**CHARGE STATUTE**

Statute Code Id: NO-TVS


Charge Sequence Id: 3

Charge Description: PROOF FINANCIAL RESPONS. NON-ALCOHOL

**CHARGE CLASSIFICATION**

Charge Degree: INFRACTION (T)

Charge Filing Date: 2013-05-13

**CHARGE STATUTE**

Statute Code Id: 16028(A) C

Appealed From Lower Court: false


Activity Date: 2013-05-13

# ℰ Criminal Report

6/14/2019 4:12 PM

Date of Birth: █████1972
Address: ███████
San Pedro, CA █████

Name: Michael Lewis

# MICHAEL R LEWIS

| | |
|---|---|
| Dataset: | CA Contra Costa Courts |
| DOB: | N/A |
| Age: | N/A |
| SSN: | N/A |
| Residence: | N/A |

### No aliases found

### PHYSICAL DETAILS
Sex: U

### PERSON PHYSICAL FEATURES
No physical features listed

---

| Incident(s): | Booking(s): | Arrest(s): |
|:---:|:---:|:---:|
| 0 | 0 | 0 |
| **Court Action(s):** | **Sentencing(s):** | **Supervision(s):** |
| 1 | 0 | 0 |

---

Activity Type: **CRIMINAL/TRAFFIC**          Court Record Id: **373574**

### ORGANIZATION JURISDICTION
Jurisdiction Description: **WALNUT GREEK**

Charge Sequence Id: 1
Charge Count: 1
Charge Filing Date: **2016-10-05**

Appealed From Lower Court: false

Activity Date: 2016-10-05

## ⅋ Criminal Report

6/14/2019 4:12 PM

Date of Birth: [REDACTED] 1972
Address: [REDACTED]
San Pedro, CA [REDACTED]



Name: Michael Lewis

# MICHAEL R LEWIS

Dataset: **CA Orange Superior Court**
DOB: **N/A**
Age: **N/A**
SSN: **N/A**
Residence: **N/A**

No aliases found

**PHYSICAL DETAILS**
Sex: U

**PERSON PHYSICAL FEATURES**
No physical features listed

---

| Incident(s): | Booking(s): | Arrest(s): |
|:---:|:---:|:---:|
| 0 | 0 | 0 |
| Court Action(s): | Sentencing(s): | Supervision(s): |
| 1 | 0 | 0 |

---

Activity Type: **CRIMINAL/TRAFFIC**          Court Record Id: **CMZ220215**

Charge Sequence Id: **1**
Charge Description: **CITATION**
**CHARGE DISPOSITION**
Charge Disposition Date: **2014-04-17**
Charge Filing Date: **2014-03-05**
Appealed From Lower Court: **false**

**Activity Date:** 2014-03-05

ॐ Criminal Report

6/14/2019 4:12 PM

Date of Birth: ███ 1972
Address ███
San Pedro, CA ███

Name: Michael Lewis

# MICHAEL R LEWIS

**Dataset:** CA Sacramento Superior Court
**DOB:** N/A
**Age:** N/A
**SSN:** N/A
**Residence:** N/A

No aliases found

**PHYSICAL DETAILS**
Sex: U

**PERSON PHYSICAL FEATURES**
No physical features listed

---

| Incident(s): | Booking(s): | Arrest(s): |
|:---:|:---:|:---:|
| 0 | 0 | 0 |
| **Court Action(s):** | **Sentencing(s):** | **Supervision(s):** |
| 1 | 0 | 0 |

---

**Activity Type:** CRIMINAL/TRAFFIC      **Court Record Id:** 14T01255

**ORGANIZATION JURISDICTION**
Jurisdiction Description: CA SACRAMENTO SUPERIOR COURT

Charge Sequence Id: 1
Charge Filing Date: 2014-03-21
Appealed From Lower Court: false

Activity Date: 2014-03-21

  **Background Data Solutions**

Application Summary

Michael Reid Lewis
XX/XX/1972                                                               Status: ●

Application #:       B47099529E808
Created On:          08/09/2019 14:38:11
Rental Property State: ZZ

### Most Wanted

| Search | State | # of Records | Action/Status |
|--------|-------|--------------|---------------|
| Instant | Most Wanted List | 0 | 0 Records Found |

### Sex Offender

| Search | State | # of Records | Action/Status |
|--------|-------|--------------|---------------|
| Instant | National Sex Offender | 0 | 0 Records Found |

### Federal

| Search | State | # of Records | Action/Status |
|--------|-------|--------------|---------------|
| Instant | Potential OFAC Match | 0 | 0 Records Found |

### Criminal

| Search | State | # of Records | Action/Status |
|--------|-------|--------------|---------------|
| Instant | Illinois, Indiana, Michigan, Ohio, Iowa, Kansas, Minnesota, Missouri, Nebraska, North Dakota, Wisconsin, New Jersey, New York, Pennsylvania, Connecticut, Maine, New Hampshire, Rhode Island, Vermont, Alabama, Mississippi, Tennessee, District of Columbia, Florida, Georgia, Kentucky, Maryland, North Carolina, South Carolina, Virginia, Arkansas, Louisiana, Oklahoma, Texas, Arizona, Colorado, Idaho, Montana, Nevada, New Mexico, Utah, Alaska, California, Hawaii, Oregon, Washington, West Virginia | 0 | 0 Records Found |



Customer Support 1-800-568-5665   |   © 2006-2009 TransUnion LLC, All Rights Reserved. Use of this site is restricted to authorized users only.



TransUnion. | Background Data Solutions

## Eviction

| Search | State | # of Records | Action/Status |
|--------|-------|--------------|---------------|
| Instant | Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virgin Islands, Virginia, Washington, West Virginia, Wisconsin, Wyoming | 0 | 0 Records Found |

# EXHIBIT 3

Current on Bloomberg Law as of Jan. 21, 2020 12:23:14

**U.S. District Court**
**Northern District of Georgia (Atlanta)**
**CIVIL DOCKET FOR CASE #: 1:18-cv-05141-JPB-AJB**

# Hall v. TransUnion Rental Screening Solutions, Inc.

## DOCKET INFORMATION

Minimize

| | |
|---|---|
| Date Filed: | Nov 7, 2018 |
| Nature of suit: | 480 Consumer Credit |
| Assigned to: | Judge J. P. Boulee |
| Cause: | 15:1681 Fair Credit Reporting Act |
| Jurisdiction: | Federal Question |
| Jury demand: | Plaintiff |
| Referred to: | Magistrate Judge Alan J. Baverman |

# Parties and Attorneys

Expand All  Minimize

**Plaintiff**

Representation

**William R. Hall, Jr.**
individually and as a representative of the classes
Plaintiff

**E. Michelle Drake**
*Berger & Montague, P.C. -MN*
Suite 505
43 SE Main Street
Minneapolis, MN 55414
(612) 594-5999
Fax: (612) 584-4470
emdrake@bm.net
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Joseph C. Hashmall**
*Berger & Montague, P.C. -MN*
Suite 505
43 SE Main Street
Minneapolis, MN 55414
(612) 594-5999
Fax: (612) 584-4470
jhashmall@bm.net
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Gary B. Andrews , Jr.**
*Blake Andrews Law Firm, LLC*
1831 Timothy Dr.
Atlanta, GA 30329
(770) 828-6225
blake@blakeandrewslaw.com
ATTORNEY TO BE NOTICED

**Defendant**

Representation

**TransUnion Rental Screening Solutions, Inc.**
Defendant

**Albert E. Hartmann**
*DLA Piper LLP (US)-IL*
Suite 1900
203 North Lasalle Street
Chicago, IL 60601
(312) 207-1000
Fax: (312) 630-7317
ahartmann@reedsmith.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Joshua Paul Gunnemann**
*Rogers & Hardin, LLP*
2700 International Tower, Peachtree Center
229 Peachtree St., N.E.
Atlanta, GA 30303-1601
(404) 522-4700
jgunnemann@rh-law.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Michael O'Neil**
*Reed Smith LLP -IL*
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-1000
michael.oneil@reedsmith.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

| William S. Weltman | Cameron Blaine Roberts | Robert B. Remar |
|---|---|---|
| *Reed Smith LLP -IL* | *Rogers & Hardin, LLP* | *Rogers & Hardin, LLP* |
| 10 South Wacker Drive | 2700 International Tower, Peachtree Center | 2700 International Tower, Peachtree Center |
| 40th Floor | 229 Peachtree St., N.E. | 229 Peachtree St., N.E. |
| Chicago, IL 60606 | Atlanta, GA 30303-1601 | Atlanta, GA 30303-1601 |
| (312) 207-6551 | (404) 420-4638 | (404) 522-4700 |
| wweltman@reedsmith.com | croberts@rh-law.com | rbr@rh-law.com |
| LEAD ATTORNEY | ATTORNEY TO BE NOTICED | ATTORNEY TO BE NOTICED |
| ATTORNEY TO BE NOTICED | | |

# Docket Entries

Print Entries  Request Entries  Reverse Entries
Numbers shown are court assigned numbers

| Entry | Filed | Description |
|---|---|---|
| 1 | Nov 7, 2018 | COMPLAINT with Jury Demand filed by William R. Hall, Jr. (Filing fee $400, receipt number 113E-8259800) (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A, # 3 Exhibit B)(bnw) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 11/09/2018) |
| 2 | Nov 8, 2018 | Electronic Summons Issued as to TransUnion Rental Screening Solutions, Inc. (bnw) (Entered: 11/09/2018) |
| 3 | Nov 12, 2018 | Certificate of Interested Persons by William R. Hall, Jr. (Drake, E.) (Entered: 11/12/2018) |
| | Nov 14, 2018 | Clerks Notation re 3 Certificate of Interested Persons Reviewed and approved by Magistrate Judge Alan J. Baverman on 11/14/2018. (ecb) (Entered: 11/14/2018) |
| 4 | Nov 14, 2018 | ORDER REASSIGNING CASE. Case reassigned to Judge William M Ray, II for all further proceedings. Judge Charles A. Pannell, Jr. no longer assigned to case. NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 1:18-cv-05141-WMR-AJB. Please make note of this change in order to facilitate the docketing of pleadings in this case. Signed by Judge Charles A. Pannell, Jr. on 11/14/2018. (tcc) (Entered: 11/14/2018) |
| 5 | Nov 21, 2018 | NOTICE of Appearance by Gary B. Andrews, Jr on behalf of William R. Hall, Jr (Andrews, Gary) (Entered: 11/21/2018) |
| 6 | Nov 21, 2018 | APPLICATION for Admission of Joseph Hashmall Pro Hac Vice (Application fee $ 150, receipt number 113E-8287303) with Brief In Support by William R. Hall, Jr. (Andrews, Gary) (Entered: 11/21/2018) |
| 7 | Nov 28, 2018 | Consent MOTION for Extension of Time to File Answer by TransUnion Rental Screening Solutions, Inc.. (Remar, Robert) (Entered: 11/28/2018) |
| 8 | Nov 28, 2018 | Certificate of Interested Persons and Corporate Disclosure Statement by TransUnion Rental Screening Solutions, Inc. identifying Corporate Parent TransUnion LLC, Corporate Parent TransUnion Intermediate Holdings, Inc. and Corporate Parent TransUnion for TransUnion Rental Screening Solutions, Inc.. (Remar, Robert) (Entered: 11/28/2018) |
| 9 | Nov 29, 2018 | ORDER granting the parties' 7 Consent Motion for Extension of Time, to and including January 4, 2019, for Defendant to respond to 1 Plaintiff's Complaint. Signed by Magistrate Judge Alan J. Baverman on 11/29/18. (ddm) (Entered: 11/29/2018) |
| | Nov 29, 2018 | Clerks Notation re 8 Certificate of Interested Persons, Reviewed and approved by Magistrate Judge Alan J. Baverman on 11/29/2018.(ecb) (Entered: 11/29/2018) |
| 10 | Nov 29, 2018 | APPLICATION for Admission of Michael O'Neil Pro Hac Vice (Application fee $ 150, receipt number 113E-8299591)by TransUnion Rental Screening Solutions, Inc.. (Remar, Robert) (Entered: 11/29/2018) |
| 11 | Nov 29, 2018 | APPLICATION for Admission of Albert E. Hartmann Pro Hac Vice (Application fee $ 150, receipt number 113E-8299637)by TransUnion Rental Screening Solutions, Inc.. (Remar, |

| | | Robert) (Entered: 11/29/2018) |
|---|---|---|
| | Nov 29, 2018 | Clerks Notation re 8 Certificate of Interested Persons, 3 Certificate of Interested Persons - OK with WMRI (sll) (Entered: 11/29/2018) |
| 12 | Nov 30, 2018 | NOTICE of Appearance by Cameron Blaine Roberts on behalf of TransUnion Rental Screening Solutions, Inc. (Roberts, Cameron) (Entered: 11/30/2018) |
| | Nov 30, 2018 | APPROVAL by Clerks Office re: 6 APPLICATION for Admission of Joseph Hashmall Pro Hac Vice (Application fee $ 150, receipt number 113E-8287303). Attorney Joseph C. Hashmall added appearing on behalf of William R. Hall, Jr. (pmb) (Entered: 11/30/2018) |
| 13 | Dec 3, 2018 | ORDER granting 6 Application for Admission Pro Hac Vice filed by Joseph Hashmall. Signed by Judge William M Ray, II on 12/3/18. (ddm) (Entered: 12/03/2018) |
| 14 | Dec 12, 2018 | STATUS REPORT [Joint LR 23.1(C) Statement] by William R. Hall, Jr. (Hashmall, Joseph) (Entered: 12/12/2018) |
| | Dec 13, 2018 | APPROVAL by Clerks Office re: 11 APPLICATION for Admission of Albert E. Hartmann Pro Hac Vice (Application fee $ 150, receipt number 113E-8299637). Attorney Albert E. Hartmann added appearing on behalf of TransUnion Rental Screening Solutions, Inc. (pmb) (Entered: 12/13/2018) |
| | Dec 13, 2018 | APPROVAL by Clerks Office re: 10 APPLICATION for Admission of Michael O'Neil Pro Hac Vice (Application fee $ 150, receipt number 113E-8299591). Attorney Michael O'Neil added appearing on behalf of TransUnion Rental Screening Solutions, Inc. (pmb) (Entered: 12/13/2018) |
| 15 | Dec 13, 2018 | ORDER granting 10 Application for Admission Pro Hac Vice filed by Michael O'Neil. Signed by Judge William M Ray, II on 12/13/18. (ddm) (Entered: 12/13/2018) |
| 16 | Dec 13, 2018 | ORDER granting 11 Application for Admission Pro Hac Vice filed by Albert E. Hartmann. Signed by Judge William M Ray, II on 12/13/18. (ddm) (Entered: 12/13/2018) |
| | Dec 13, 2018 | Clerk's Certificate of Mailing to Michael O'Neill re 15 Order and to Albert E. Hartmann re 16 Order. (ddm) (Entered: 12/13/2018) |
| 17 | Dec 31, 2018 | Mail Returned as Undeliverable. Mail sent to Albert E. Hartmann re 16 Order returned via USPS. (ddm) (Entered: 01/02/2019) |
| 18 | Jan 4, 2019 | ANSWER to 1 COMPLAINT by TransUnion Rental Screening Solutions, Inc.. Discovery ends on 6/3/2019.(Remar, Robert) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 01/04/2019) |
| 19 | Jan 17, 2019 | Consent MOTION to Continue LR 23.1(B) Class Certification Deadline by William R. Hall, Jr. (Attachments: # 1 Text of Proposed Order)(Drake, E.) (Entered: 01/17/2019) |
| 20 | Jan 25, 2019 | ORDER granting 19 Motion to Suspend the Class Certification Motion Deadline. The 2/5/19 deadline is SUSPENDED; and The parties shall propose an alternate deadline for the filing of a class certification motion in their Joint Preliminary Report and Discovery Plan, due on or before February 4, 2019. Signed by Magistrate Judge Alan J. Baverman on 1/25/19. (jpa) (Entered: 01/25/2019) |
| 21 | Feb 1, 2019 | JOINT PRELIMINARY REPORT AND DISCOVERY PLAN filed by William R. Hall, Jr. (Drake, E.) (Entered: 02/01/2019) |
| 22 | Feb 4, 2019 | SCHEDULING ORDER: re: 21 Joint Preliminary Report and Discovery Plan. Signed by Magistrate Judge Alan J. Baverman on 2/4/19. (jpa) (Entered: 02/04/2019) |
| 23 | Feb 4, 2019 | Initial Disclosures by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 02/04/2019) |
| 24 | Feb 4, 2019 | CERTIFICATE OF SERVICE of Discovery by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 02/04/2019) |
| 25 | Feb 4, 2019 | CERTIFICATE OF SERVICE of Initial Disclosures by TransUnion Rental Screening Solutions, Inc..(Remar, Robert) (Entered: 02/04/2019) |
| 26 | Mar 6, 2019 | CERTIFICATE OF SERVICE of Discovery Materials by TransUnion Rental Screening Solutions, Inc..(Remar, Robert) (Entered: 03/06/2019) |
| 27 | Mar 7, 2019 | APPLICATION for Admission of William S. Weltman Pro Hac Vice (Application fee $ 150, |

|    |               | receipt number 113E-8496878)by TransUnion Rental Screening Solutions, Inc. (Remar, Robert) (Entered: 03/07/2019) |
|----|---------------|---|
|    | Mar 14, 2019  | APPROVAL by Clerks Office re: 27 APPLICATION for Admission of William S. Weltman Pro Hac Vice (Application fee $ 150, receipt number 113E-8496878). Attorney William S. Weltman added appearing on behalf of TransUnion Rental Screening Solutions, Inc. (pmb) (Entered: 03/14/2019) |
| 28 | Mar 27, 2019  | CERTIFICATE OF SERVICE of Plf's Requests for Admission, Set II & Notice of Deposition pursuant to FRCP 30(b)(6) by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 03/27/2019) |
| 29 | Apr 10, 2019  | ORDER granting 27 Application for Admission Pro Hac Vice for William S. Weltman. Signed by Judge William M Ray, II on 4/10/19. (rlb) (Entered: 04/10/2019) |
|    | Apr 10, 2019  | Clerk's Certificate of Mailing re 29 Order on Application for Admission PHV for William S. Weltman. (rlb) (Entered: 04/10/2019) |
| 30 | Apr 11, 2019  | Consent MOTION for Protective Order by TransUnion Rental Screening Solutions, Inc.. (Remar, Robert) (Entered: 04/11/2019) |
| 31 | Apr 12, 2019  | STIPULATED CONFIDENTIALITY ORDER. Signed by Magistrate Judge Alan J. Baverman on 4/12/19. (bnw) (Entered: 04/13/2019) |
| 32 | Apr 26, 2019  | CERTIFICATE OF SERVICE of Discovery Materials by TransUnion Rental Screening Solutions, Inc..(Roberts, Cameron) (Entered: 04/26/2019) |
| 33 | May 13, 2019  | CERTIFICATE OF SERVICE of Discovery Materials by TransUnion Rental Screening Solutions, Inc..(Roberts, Cameron) (Entered: 05/13/2019) |
|    | June 18, 2019 | Case Reassigned to Judge Jean-Paul Boulee. Judge William M Ray, II no longer assigned to case. NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 1:18-CV-5141-JPB-AJB. Please make note of this change in order to facilitate the docketing of pleadings in this case. (rlb) (Entered: 06/18/2019) |
| 34 | June 20, 2019 | CERTIFICATE OF SERVICE of Plf's Amended 30(b)(6) Notice of Deposition by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 06/20/2019) |
| 35 | July 8, 2019  | CERTIFICATE OF SERVICE of Plf.'s Am. 30(b)(6) Notice of Deposition by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 07/08/2019) |
| 36 | July 16, 2019 | Consent MOTION for Extension of Time Schedule re: 22 Scheduling Order, 21 Joint Preliminary Report and Discovery Plan by William R. Hall, Jr. (Attachments: # 1 Text of Proposed Order)(Drake, E.) (Entered: 07/16/2019) |
| 37 | July 25, 2019 | ORDER granting 36 Plaintiff's Consent Motion to Extend the Schedule in this Matters. The deadline for discovery and to file motions to compel is extended until December 3, 2019 The deadline for Plaintiff to designate experts is extended until September 17, 2019. The deadline for Defendant to designate experts is extended until October 29, 2019. The deadline for Plaintiff to file a motion for class certification is January 3, 2020. Signed by Magistrate Judge Alan J. Baverman on 7/25/19. (ddm) (Entered: 07/25/2019) |
| 38 | July 29, 2019 | CERTIFICATE OF SERVICE of Plf's 30(b)(1) Notice of Deposition, Subpoenas (2) by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 07/29/2019) |
| 39 | July 31, 2019 | CERTIFICATE OF SERVICE of Plf's 30(b)(6) Notice of Deposition by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 07/31/2019) |
| 40 | Aug 15, 2019  | CERTIFICATE OF SERVICE of Am. Notice of Deposition by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 08/15/2019) |
| 41 | Sept 3, 2019  | CERTIFICATE OF SERVICE of Plf.'s Interrogs. to Def., Set III by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 09/03/2019) |
| 42 | Sept 6, 2019  | CERTIFICATE OF SERVICE of Plf's RFPs to Def, Set II by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 09/06/2019) |
| 43 | Sept 13, 2019 | Consent MOTION to Continue [to Suspend Expert Deadlines] by William R. Hall, Jr. (Attachments: # 1 Text of Proposed Order)(Drake, E.) (Entered: 09/13/2019) |
| 44 | Sept 16, 2019 | ORDER Suspending Expert Disclosure Deadlines. The parties are to file a joint status report on |

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

or before October 1, 2019, that proposes new dates for the designation deadlines. All other deadlines and provisions set forth in the Order filed as ECF No. 37 remain in effect. Signed by Magistrate Judge Alan J. Baverman on 9/16/19. (ddm) (Entered: 09/16/2019)

| 45 | Sept 16, 2019 | CERTIFICATE OF SERVICE of Plf's RFPs, Set III by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 09/16/2019) |
|---|---|---|
| 46 | Sept 17, 2019 | CERTIFICATE OF SERVICE of Plaintiff Subpoena for Production to Broward County by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 09/17/2019) |
| 47 | Sept 19, 2019 | CERTIFICATE OF SERVICE of Plf's RFPs, Set IV, Interrogs. Set IV, 2d 30(b)(6) NOD, 30(b)(1) NOD, 2d 30(b)(6) NOD to TransUnion, and RFI by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 09/19/2019) |
| 48 | Oct 1, 2019 | STATUS REPORT (Joint) regarding Deadlines for Expert Discovery by TransUnion Rental Screening Solutions, Inc.. (Hartmann, Albert) (Entered: 10/01/2019) |
| 49 | Oct 1, 2019 | Consent MOTION for Extension of Time to Provide Expert Disclosure Proposal re: 48 Status Report, 44 Order on Motion to Continue, by William R. Hall, Jr. (Attachments: # 1 Text of Proposed Order)(Drake, E.) (Entered: 10/01/2019) |
| 50 | Oct 3, 2019 | CERTIFICATE OF SERVICE (Local Rule 5.4) by TransUnion Rental Screening Solutions, Inc..(Roberts, Cameron) (Entered: 10/03/2019) |
| 51 | Oct 7, 2019 | ORDER granting the parties' 49 Consent Motion for Extension of Time to Provide a Proposal for Expert Disclosure. The parties shall file another joint status report by November 1, 2019. All other deadlines remain in effect. Signed by Magistrate Judge Alan J. Baverman on 10/7/19. (ddm) (Entered: 10/07/2019) |
| 52 | Oct 7, 2019 | CERTIFICATE OF SERVICE of Discovery Materials by TransUnion Rental Screening Solutions, Inc..(Remar, Robert) (Entered: 10/07/2019) |
| 53 | Oct 15, 2019 | CERTIFICATE OF SERVICE Local Rule 5.4 by TransUnion Rental Screening Solutions, Inc..(Remar, Robert) (Entered: 10/15/2019) |
| 54 | Oct 16, 2019 | CERTIFICATE OF SERVICE of Plf's Am. 30(b)(1) and 30(b)(6) NODs by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 10/16/2019) |
| 55 | Oct 21, 2019 | CERTIFICATE OF SERVICE of Discovery Materials by TransUnion Rental Screening Solutions, Inc..(Roberts, Cameron) (Entered: 10/21/2019) |
| 56 | Oct 23, 2019 | Consent MOTION for Leave to File First Amended Complaint by William R. Hall, Jr. (Attachments: # 1 Exhibit A - First Amended Complaint (Redacted), # 2 Text of Proposed Order)(Drake, E.) (Entered: 10/23/2019) |
| 57 | Oct 23, 2019 | SEALED NOTICE Of Filing Exhibit A to Consent Mot. to File FAC - First Amended Complaint (Unredacted Version) by William R. Hall, Jr re 56 Consent MOTION for Leave to File First Amended Complaint (Drake, E.) Modified on 10/31/2019 to edit text(tmf). (Entered: 10/23/2019) |
| 58 | Oct 23, 2019 | Consent MOTION for Leave to File Matters Under Seal re: 57 Notice of Filing, by William R. Hall, Jr. (Attachments: # 1 Text of Proposed Order)(Drake, E.) (Entered: 10/23/2019) |
| 59 | Oct 28, 2019 | CERTIFICATE OF SERVICE (Local Rule 5.4) by TransUnion Rental Screening Solutions, Inc..(Remar, Robert) (Entered: 10/28/2019) |
| 60 | Oct 31, 2019 | ORDER: The Court hereby GRANTS Plaintiff's motion to amend the complaint, [Doc. 56 ]. Plaintiff SHALL file the First Amended Complaint, as attached to the Consent Motion, within three (3) days of this Order and it will thereafter become the operative complaint in this matter. Plaintiff's Consent Motion to file the Unredacted First Amended Complaint Under Seal is GRANTED. When Plaintiff files the First Amended Complaint, he mayfile a redacted version publicly and an unredacted version under seal without filing a second motion to seal. Signed by Magistrate Judge Alan J. Baverman on 10/31/2019. (tmf) (Entered: 10/31/2019) |
| 61 | Nov 1, 2019 | Consent MOTION for Extension of Time expert discovery re: 48 Status Report, 49 Consent MOTION for Extension of Time to Provide Expert Disclosure Proposal re: 48 Status Report, 44 Order on Motion to Continue, , 51 Order on Motion for Extension of Time, and Joint Status Report by William R. Hall, Jr. (Attachments: # 1 Text of Proposed Order)(Drake, E.) (Entered: 11/01/2019) |
| 62 | Nov 4, 2019 | First AMENDED COMPLAINT [Redacted] against TransUnion Rental Screening Solutions, Inc.with Jury Demand filed by William R. Hall, Jr. (Attachments: # 1 Exhibit A, # 2 Exhibit |

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

|    |             | B)(Drake, E.) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 11/04/2019) |
|----|-------------|----|
| 63 | Nov 4, 2019 | Notice of Court Ordered Sealed Filing of First Amended Complaint [Unredacted] by William R. Hall, Jr re: 60 Order on Motion for Leave to File,,, Order on Motion for Leave to File Matters Under Seal,, 62 Amended Complaint, 57 Notice of Filing, (Drake, E.) (Entered: 11/04/2019) |
| 64 | Nov 8, 2019 | ORDER on the Joint Status Report and Motion Regarding Deadlines for Expert Discovery. The deadlines for expert discovery shall be temporarily suspended and the Parties shall file a report on the status of their meet-and-confer efforts within 14 days. All other deadlines and provisions set forth in the Court's July 25, 2019 Order, [Doc. 37], remain in effect. Signed by Magistrate Judge Alan J. Baverman on 11/8/19. (ddm) (Entered: 11/08/2019) |
| 65 | Nov 13, 2019 | CERTIFICATE OF SERVICE of Plf's Discovery Responses, Set I by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 11/13/2019) |
| 66 | Nov 18, 2019 | ANSWER to 62 Amended Complaint by TransUnion Rental Screening Solutions, Inc..(Remar, Robert) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 11/18/2019) |
| 67 | Nov 22, 2019 | Joint MOTION for Extension of Time to Provide Expert Disclosure & Class Certification Deadlines re: 64 Order on Motion for Extension of Time, by William R. Hall, Jr. (Attachments: # 1 Text of Proposed Order)(Hashmall, Joseph) (Entered: 11/22/2019) |
| 68 | Nov 27, 2019 | CERTIFICATE OF SERVICE of Plf's Discovery Responses, Set II by William R. Hall, Jr.(Hashmall, Joseph) (Entered: 11/27/2019) |
|    | Dec 3, 2019 | ORDER setting a hearing on the parties joint motion for extension of time to provide expert disclosure and class certification deadlines. [Doc. 67]. TELECONFERENCE set for 12/6/19 at 4:00PM before Chief Magistrate Judge Alan J. Baverman. The Court will email teleconference instructions to the attorneys of record. Signed by Chief Magistrate Judge Alan J. Baverman on 12/03/2019. (cmb) (Entered: 12/03/2019) |
|    | Dec 4, 2019 | AMENDED ORDER SETTING HEARING - IT IS HEREBY ORDERED that the hearing previously scheduled for 12/06/19 at 4PM will now take place on 12/13/19 at 2PM. Teleconference instructions have already been sent to the attorneys of record. Signed by Chief Magistrate Judge Alan J. Baverman on 12/04/2019. (cmb) (Entered: 12/04/2019) |
|    | Dec 10, 2019 | Submission of 67 Joint MOTION for Extension of Time to Provide Expert Disclosure & Class Certification Deadlines, to Magistrate Judge Alan J. Baverman. (ddm) (Entered: 12/10/2019) |
| 69 | Dec 13, 2019 | ORDER suspending Plaintiff's deadline to move for class certification. By January 31, 2020, the parties shall either file a proposed schedule for the remaining pretrial deadlines, including the disclosure of experts and any motions for class certification, or contact the Court in order to schedule a hearing to discuss and potentially resolve any outstanding issues. All other deadlines and provisions set forth in the Order filed as ECF No. 37 remain in effect. Signed by Magistrate Judge Alan J. Baverman on 12/13/19. (ddm) (Entered: 12/16/2019) |
| 70 | Dec 13, 2019 | Minute Entry for proceedings held before Magistrate Judge Alan J. Baverman: Discovery Hearing held on 12/13/2019. Motion for Extension of Time 67 is GRANTED IN PART & DENIED IN PART Plaintiff's deadline to move for class certification is suspended. By January 31st, 2020, the Parties shall either file a proposed schedule for the remaining pre-trial deadlines, including the disclosure of experts and any motions for class certification, or contact the Court in order to schedule a hearing to discuss and potentially resolve any outstanding issues. All other deadlines and provisions set forth in the Order filed as ECF No. 37 remain in effect. (Tape #FTR)(ddm) (Entered: 12/16/2019) |

# General Information

| | |
|---|---|
| **Court** | United States District Court for the Northern District of Georgia; United States District Court for the Northern District of Georgia |
| **Federal Nature of Suit** | Consumer Credit[480] |
| **Docket Number** | 1:18-cv-05141 |

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| William R. Hall, Jr., individually and as a representative of the class, | Case No. 1:18-cv-05141-JPB-AJB |
| Plaintiff, | |
| | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| v. | |
| TransUnion Rental Screening Solutions, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMES NOW, William R. Hall, Jr. ("Plaintiff"), on behalf of himself and the class set forth below and states as follows:

### INTRODUCTION

1.      This is a class action for damages, costs and attorneys' fees brought against Defendant TransUnion Rental Screening Solutions, Inc., ("Defendant" or "TU Rental") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3. Defendant falsely reported to Plaintiff's potential landlord that Plaintiff had been convicted of a serious sexual offense. In fact, the conviction reported belonged to an entirely different individual with a similar name to Plaintiff. The individual who was actually convicted of the sexual offense was born more than 30 years before Plaintiff, has a different name than Plaintiff, and has a vastly different physical description from Plaintiff.

4. Defendant's reporting cost Plaintiff his chance to rent the property of his choice, caused him serious distress and embarrassment, and caused him financial loss.

5. ███████████████████████████████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
█████████████████████████████

6. Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of its records. Its failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

2

7.     On behalf of himself and a class of similarly situated individuals, Plaintiff brings claims pursuant to § 1681e(b) of the FCRA.

## PARTIES AND JURISDICTION

8.     Individual and representative Plaintiff William R. Hall, Jr., is a resident of Canton, Georgia.

9.     Plaintiff is a natural person and a "consumer" as protected and governed by the FCRA.

10.     Defendant TransUnion Rental Screening Solutions, Inc. provides consumer reports for rental screening purposes.  Defendant sells background reports containing, *inter alia*, information about consumers' criminal backgrounds to prospective landlords.  Defendant is a consumer reporting agency as contemplated by the FCRA, 15 U.S.C. § 1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

11.     Among other things, Defendant provides background checks and credit reports to landlords for their use in deciding whether to rent to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

12.     Defendant is a Delaware corporation headquartered in Colorado.

3

13.     The Court has personal jurisdiction over Defendant.     Defendant conducts substantial business in this District, including issuing background checks and credit reports on residents of this District, including Plaintiff's report.

14.     This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in the District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

### FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

16.     In early 2018, Plaintiff was hired as the manager of an auto dealership in Newnan, Georgia, to start work in August 2018.  Because his new job was over an hour away from the home he owns with his family in Canton, Georgia, Plaintiff sought to rent a property in Newnan to use during the work week.

17.     Plaintiff has a preference for renting newly-constructed property.  In looking for such properties in Newnan, he found only one that met his needs, owned by non-party Gabriel Calderon.  Ms. Calderon arranged for her daughter to show Plaintiff the property, and Plaintiff sought to rent the property for $1500 a month.

18.     On July 6, 2018, Ms. Calderon obtained a report from Defendant about

4

Plaintiff. This report is attached as Exhibit A.

19.     On that report, Defendant indicated that Plaintiff had been subject to one criminal "court action:" a charge of "CRIM SEX COND W/MINOR(1ST)" in Aiken County, South Carolina. (Ex. A at 5.)

20.     Defendant's reporting was false. Plaintiff has no criminal record – and certainly has never been convicted of a sexual offense.

21.     After receiving Defendant's report, Ms. Calderon cut off contact with Plaintiff and refused to rent to him.

22.     Defendant also sent a copy of the report to Plaintiff. The report was received by mail and opened by Plaintiff's wife, causing Plaintiff considerable embarrassment and confusion.

23.     In approximately five minutes on the internet, Plaintiff was able to pinpoint the flaw in Defendant's reporting: Defendant was reporting the conviction of another individual named William R. Hall, who had been born in 1936, convicted in 1994, and who is likely deceased. (*See* Ex. B.)

24.     The other William Hall, besides having the same first and last name, has virtually no other links with Plaintiff. In addition to being born over 30 years after the other William Hall, Plaintiff is William Hall, *Jr.*, while the other William Hall is not. Further, Defendant reported a number of physical characteristics of the

5

other William Hall, including a height of 5'8", a weight of 150 pounds, hazel eyes, grey hair and an olive complexion. None of these descriptors fits Plaintiff, and simply consulting Plaintiff's driver's license would confirm this.

25.     Plaintiff was mortified that his potential landlord now thought he was a sex offender. He was further mortified when he considered that his potential landlord had arranged for their young daughter to give him a tour of the property.

26.     In his new position as the general manager of an auto dealership, Plaintiff will be the face of the business, including appearing in advertising. Plaintiff is very concerned that the false perception that he is a sex offender will damage his effectiveness in his new job. Newnan, Georgia, is a small community, and Plaintiff has a real concern that false rumors, initiated by Defendant's erroneous reporting, could damage his standing in the community.

27.     Having been denied the ability to rent his desired property, Plaintiff faced limited time to find a new rental before his employment began. He ended up renting a unit which is less desirable to him, because it is not new construction, which costs considerably more ($2100 per month), and which is further from his work.

28.     ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

6

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

████████████████████████ .

## FACTS DEMONSTRATING THAT DEFENDANT WILLFULLY FAILED TO USE REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY

29.     If Defendant had reasonable procedures to ensure maximum possible accuracy, it would have determined that the sexual offense it reported did not belong to Plaintiff.

30.     If Plaintiff was able to find the source of Defendant's error in five minutes on a court's website, Defendant should have been able to avoid that error in the first instance.

31.     ████████████████████████████████

████████████████████ . If it had, it would have avoided its error.

32.     ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

7

████████████████████████████████████████████.

33. ████████████████████████████████████████████████████

████████████████████████████.

34. If Defendant had even carefully considered the name, it would have discovered that Plaintiff was not a match: Plaintiff is William R. Hall, **Jr.**, and the convicted William R. Hall is not. It is also likely that Plaintiff and the convicted William R. Hall do not have the same middle name, only the same middle initial.

35. Defendant also ran a search which found that Plaintiff was not on any sex offender registry, a finding that contradicts Defendant's own reporting. (Ex. A at 34.) This contradiction, however, did not cause Defendant to reevaluate its erroneous reporting.

36. Other tenant screening agencies have faced governmental scrutiny for substantially similar activities. *See, e.g.*, *FTC v. Realpage, Inc.*, No 3:18-cv-2737 (FTC settlement with tenant screening agency which failed to comply with 15 U.S.C. § 1681e(b) because it used loose matching criteria to link potential tenants with criminal records).

## GENERAL FACTS REGARDING DEFENDANT'S WILLFULNESS

37. In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, *inter alia*, the following:

a. The FCRA was enacted in 1970; Defendant has had 48 years to become compliant;

b. Defendant and its parent company have been repeatedly sued for misreporting public record information.[1]

c. Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

d. Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, caselaw, and the plain language of the FCRA;

e. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

f. Defendant knew that matching individuals to criminal records using limited information would result in false positives. However, it

---

[1] *Anderson v. Trans Union LLC*, No. 3:16-cv-588 (E.D. Va.); *Clark v Trans Union LLC*, No. 3:15-cv-391 (E.D. Va.); *Walsh v. Trans Union, LLC*, No. 6:18-cv-00166, (M.D. Fla.).

persisted in doing so;

g.  Defendant's violations of the FCRA were repeated and systematic.

38.    At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings his Claim as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Class, defined as:

All individuals on whom Defendant provided a consumer report to a third party where the report:
1) Includes a criminal record;
2) Defendant received information about the "age" of the offender associated with the criminal record from its criminal records provider(s);
3) The date of birth information Defendant has on file for the consumer is inconsistent with the "age" data regarding the offender associated with the criminal record.

The Class begins with reports issued on November 7, 2016 and ends

10

on the date the class list is prepared.

40.     Class certification is appropriate under Fed. R. Civ. P. 23(a).

41.     <u>Numerosity</u>:  The Class is so numerous that joinder of all class members is impracticable.  Given the volume of Defendant's business, there are hundreds or thousands of class members.

42.     <u>Typicality</u>: Plaintiff's claims are typical of the members of the Class. It is typical for Defendant to match consumers to criminal records using name alone, and to produce inaccurate and inconsistent file disclosures.  The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

43.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Class.

44.     <u>Commonality</u>: This case presents common questions of law and fact, including but not limited to:

>    a. Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal convictions;

b. Whether Defendant's violations of the FCRA were willful; and

c. The proper measure of damages.

45. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because, *inter alia*, questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

46. In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

47.     Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.  The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

48.     Plaintiff intends to send notice to all members of the Class to the extent required by Rule 23(c)(2).  The names and addresses of the class members are available from Defendant's records.

## CLAIM FOR RELIEF
### 15 U.S.C. § 1681e(b)
### On behalf of Plaintiff and the Class

49.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

50.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the class members. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

13

51. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681e(b).

52. As a result of Defendant's conduct, Plaintiff and class members suffered actual damages including but not limited to: denial of rental opportunities, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

53. Plaintiff and class members are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial as to all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, seek the following relief:

> a. Determining that this action may proceed as a class action under Rule 23;

b. Designating Plaintiff as the class representative for the Class;

c. Designating Plaintiff's counsel as counsel for the Class;

d. Issuing proper notice to the Class at Defendant's expense;

e. Declaring that Defendant committed multiple, separate violations of the FCRA;

f. Declaring that Defendant acted negligently, or willfully and in deliberate or reckless disregard of the rights of Plaintiff and the Class under the FCRA;

g. Awarding actual and/or statutory damages as provided by the FCRA;

h. Awarding punitive damages;

i. Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA; and

j. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

Date: November 4, 2019

Respectfully submitted,

/s/E. Michelle Drake
E. Michelle Drake (Bar No. 229202)
Joseph C. Hashmall (*pro hac vice*)
BERGER MONTAGUE PC
43 SE Main Street, Suite 505

15

Minneapolis, MN 55414
Tel. 612.594.5999
Fax. 612.584.4470
Email: emdrake@bm.net
jhashmall@bm.net

Gary B. Andrews, Jr., SBN 019375
Blake Andrews Law Firm, LLC
1831 Timothy Dr.
Atlanta, GA 30329
Tel: (770) 828-6225
Email: blake@blakeandrewslaw.com

*Counsel for Plaintiff*

# EXHIBIT 4

Current on Bloomberg Law as of 2020-01-21 12:32:33

United States District Court
Eastern District of Pennsylvania (Philadelphia)
CIVIL DOCKET FOR CASE #: 2:18-cv-03865-RBS

# MCINTYRE v. TRANSUNION, LLC et al

## DOCKET INFORMATION
Minimize

| | |
|---|---|
| Date Filed: | Sep 10, 2018 |
| Nature of suit: | 480 Other Statutes: Consumer Credit |
| Assigned to: | HONORABLE R. BARCLAY SURRICK |
| Cause: | 15:1681 Fair Credit Reporting Act |
| Jurisdiction: | Federal Question |
| Jury demand: | Plaintiff |

# Parties and Attorneys

Expand All Minimize

**Plaintiff**

**PATRICIA MCINTYRE**
on behalf of herself and all others similarly situated
Plaintiff

Representation

**JAMES A. FRANCIS**
*FRANCIS MAILMAN SOUMILAS, P.C.*
1600 MARKET ST SUITE 2510
PHILADELPHIA, PA 19103
(215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
ATTORNEY TO BE NOTICED

**LAUREN KW BRENNAN**
*FRANCIS MAILMAN SOUMILAS, P.C.*
1600 MARKET ST SUITE 2510
PHILADELPHIA, PA 19103
(215) 735-8600
Fax: (215) 940-8000
lbrennan@consumerlawfirm.com
ATTORNEY TO BE NOTICED

**LEONARD A. BENNETT**
*CONSUMER LITIGATION ASSOCIATES PC*
763 J CLYDE MORRIS BLVD STE 1-A
NEWPORT NEWS, VA 23601
(757) 930-3660
lenbennett@clalegal.com
ATTORNEY TO BE NOTICED

**JOHN SOUMILAS**
*FRANCIS MAILMAN SOUMILAS, P.C.*
1600 MARKET STREET, SUITE 2510
PHILADELPHIA, PA 19103
(215) 735-8600
Fax: (215) 940-8000
jsoumilas@consumerlawfirm.com
ATTORNEY TO BE NOTICED

**Defendant**

**TRANSUNION, LLC**
Defendant

Representation

**MICHAEL C. FALK**
*REED SMITH LLP*
Three Logan Square
1717 Arch Street, Suite 3100

**ALBERT E. HARTMANN**
*REED SMITH LLP*
10 SOUTH WACKER DRIVE, 40TH FLOOR
CHICAGO, IL 60606

**DANIEL P. WOTHERSPOON**
*SAUL EWING ARNSTEIN & LEHR LLP*
38TH FLOOR
PHILADELPHIA, PA 19102

**Bloomberg Law®**    © 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Case 1:18-cv-05141-JPB-AJB Document 73 Filed 01/24/20 Page 119 of 199
Case Pending No. 78 Document 1-3 Filed 09/24/20 Page 3 of 36
MCINTYRE v. TRANSUNION, LLC et al, Docket No. 2_18-cv-03885 (E.D. Pa. Sep 10, 2018), Court Docket

PHILADELPHIA, PA 19103
(215) 851-8222
Fax: (215) 851-1420
mfalk@reedsmith.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

(312) 207-1000
ahartmann@reedsmith.com
ATTORNEY TO BE NOTICED

(215) 972-7786
daniel.wotherspoon@saul.com
CENTRE SQUARE WEST, 1500 MARKET ST.
 ATTORNEY TO BE NOTICED

**MICHAEL O'NEIL**
*REED SMITH LLP*
10 SOUTH WACKER DRIVE
40TH FLOOR
CHICAGO, IL 60606
(312) 207-1000
michael.oneil@reedsmith.com
 ATTORNEY TO BE
NOTICED

---

**Defendant**

**TRANSUNION RESIDENT SCREENING SOLUTIONS, INC.**
Defendant

Representation

**MICHAEL C. FALK**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**ALBERT E. HARTMANN**
(See above for address)
ATTORNEY TO BE NOTICED

**DANIEL P. WOTHERSPOON**
(See above for address)
ATTORNEY TO BE NOTICED

**MICHAEL O'NEIL**
(See above for address)
ATTORNEY TO BE NOTICED

---

# Docket Entries

Print Entries Request Entries Reverse Entries
Numbers shown are court assigned numbers

| Entry | Filed | Description |
|---|---|---|
| 1 | Sep 10, 2018 | COMPLAINT against TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC ( Filing fee $ 400 receipt number 0313-13035179.), filed by PATRICIA MCINTYRE. (Attachments: # 1 Civil Cover Sheet, # 2 Case Management Track Form, # 3 Designation Form)(SOUMILAS, JOHN) (Entered: 09/10/2018) |
| | Sep 10, 2018 | Summons Issued as to TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC. Two Forwarded To: Counsel on 9/10/18 (jwl, ) (Entered: 09/10/2018) |
| | Sep 10, 2018 | DEMAND for Trial by Jury by PATRICIA MCINTYRE. (jwl, ) (Entered: 09/10/2018) |
| 2 | Sep 20, 2018 | NOTICE of Appearance by LAUREN KW BRENNAN on behalf of PATRICIA MCINTYRE (BRENNAN, LAUREN) (Entered: 09/20/2018) |
| 3 | Sep 20, 2018 | NOTICE of Appearance by JAMES A. FRANCIS on behalf of PATRICIA MCINTYRE (FRANCIS, JAMES) (Entered: 09/20/2018) |
| 4 | Sep 27, 2018 | NOTICE of Appearance by MICHAEL C. FALK on behalf of TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC with Certificate of Service(FALK, MICHAEL) (Entered: 09/27/2018) |
| 5 | Sep 27, 2018 | NOTICE of Appearance by DANIEL P. WOTHERSPOON on behalf of TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC with Certificate of Service(WOTHERSPOON, DANIEL) (Entered: 09/27/2018) |

**Bloomberg Law®**

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

| 6 | Sep 27, 2018 | Disclosure Statement Form pursuant to FRCP 7.1 including TransUnion with Certificate of Service by TRANSUNION, LLC.(FALK, MICHAEL) (Entered: 09/27/2018) |
| 7 | Sep 27, 2018 | Disclosure Statement Form pursuant to FRCP 7.1 including TransUnion with Certificate of Service by TRANSUNION RESIDENT SCREENING SOLUTIONS, INC..(FALK, MICHAEL) (Entered: 09/27/2018) |
| 8 | Sep 28, 2018 | MOTION for Pro Hac Vice of Albert E. Hartmann filed by TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC.Certificate of Service.**(FILED IN ERROR, INCORRECT EVENT SELECTED, ATTY TO REFILE)**(WOTHERSPOON, DANIEL) Modified on 9/28/2018 (tjd). (Entered: 09/28/2018) |
| 9 | Sep 28, 2018 | MOTION for Pro Hac Vice of Michael O'Neil ( Filing fee $ 40 receipt number 0313-13077312.) filed by TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC.Certificate of Service.(WOTHERSPOON, DANIEL) (Entered: 09/28/2018) |
| 10 | Sep 28, 2018 | MOTION for Pro Hac Vice of Albert E. Hartmann ( Filing fee $ 40 receipt number 0313-13077347.) filed by TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC.Certificate of Servcie.(WOTHERSPOON, DANIEL) (Entered: 09/28/2018) |
| 11 | Sep 28, 2018 | AFFIDAVIT of Service by Michael Lauterbach c/o Dennis Richman's Services re: served Summons & Complaint upon TransUnion, LLC c/o Prentice Hall Corp. by Personal Service on 9/14/2018 (SOUMILAS, JOHN) (Entered: 09/28/2018) |
| 12 | Sep 28, 2018 | AFFIDAVIT of Service by William Alexader c/o Dennis Richman's Services re: served Summons & Complaint upon TransUnion Rental Screening Solutions, Inc. c/o Corp. Service Company by Personal Service on 9/18/2018 (SOUMILAS, JOHN) (Entered: 09/28/2018) |
| 13 | Sep 28, 2018 | STIPULATION AND ORDER THAT TRANSUNION RESIDENT SCREENING SOLUTIONS, INC. AND TRANSUNION, LLC SHALL HAVE AN ADDITIONAL 28 DAYS FROM THE DATE TRANS UNTION'S RESPONSE IS DUE, UNTIL 11/2/2018, TO RESPOND TO PLFF'S CLASS ACTION COMPLAINT, ETC. SIGNED BY HONORABLE R. BARCLAY SURRICK ON 9/28/18. 10/1/18 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 10/01/2018) |
| 15 | Sep 28, 2018 | ORDER THAT APPLICATION OF MICHAEL O'NEIL, ESQ., TO PRACTICE IN THIS COURT PURSUANT TO L.R.C.P. 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE R. BARCLAY SURRICK ON 9/28/18. 10/1/18 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 10/01/2018) |
| 16 | Sep 28, 2018 | ORDER THAT APPLICATION OF ALBERT E. HARTMANN, ESQ., TO PRACTICE IN THIS COURT PURSUANT TO L.R.C.P. 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE R. BARCLAY SURRICK ON 9/28/18. (ECF FORM MAILED TO COUNSEL ON 10/1/18) 10/1/18 ENTERED AND COPIES MAILED AND E-MAILED.(kw, ) (Entered: 10/01/2018) |
| 14 | Oct 1, 2018 | MOTION for Pro Hac Vice of Leonard A. Bennett ( Filing fee $ 40 receipt number 0313-13080589.) filed by PATRICIA MCINTYRE.Certificate of Service.(FRANCIS, JAMES) (Entered: 10/01/2018) |
| 17 | Oct 2, 2018 | ORDER THAT APPLICATION OF LEONARD A. BENNETT, ESQ., TO PRACTICE IN THIS COURT PURSUANT TO L.R.C.P. 83.5.2(b) IS GRANTED. SIGNED BY HONORABLE R. BARCLAY SURRICK ON 10/1/18.10/3/18 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 10/03/2018) |
| 18 | Nov 2, 2018 | MOTION to Dismiss COUNT II OF PLAINTIFFS CLASS ACTION COMPLAINT filed by TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order)(O'NEIL, MICHAEL) (Entered: 11/02/2018) |
| 19 | Nov 2, 2018 | MOTION to Strike 1 Complaint (Attorney), THE CLASS ALLEGATIONS OF COUNTS I AND III filed by TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., TRANSUNION, LLC.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Exhibit A, # 3 Text of Proposed Order)(O'NEIL, MICHAEL) (Entered: 11/02/2018) |
| 20 | Nov 13, 2018 | STIPULATION AND ORDER THAT PLAINTIFF'S RESPONSES TO DEFENDANTS' MOTION WILL BE DUE 12/7/2018. SIGNED BY HONORABLE R. BARCLAY SURRICK ON 11/9/18. 11/13/18 ENTERED AND COPIES E-MAILED.(ti, ) (Entered: 11/13/2018) |
| 21 | Dec 7, 2018 | RESPONSE in Opposition re 18 MOTION to Dismiss COUNT II OF PLAINTIFFS CLASS ACTION COMPLAINT filed by PATRICIA MCINTYRE. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(SOUMILAS, JOHN) (Entered: 12/07/2018) |

| 22 | Dec 7, 2018 | RESPONSE in Opposition re 19 MOTION to Strike 1 Complaint (Attorney), THE CLASS ALLEGATIONS OF COUNTS I AND III filed by PATRICIA MCINTYRE. (Attachments: # 1 Memorandum, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(SOUMILAS, JOHN) (Entered: 12/07/2018) |

# General Information

| | |
|---|---|
| **Court** | United States District Court for the Eastern District of Pennsylvania; United States District Court for the Eastern District of Pennsylvania |
| **Federal Nature of Suit** | Consumer Credit[480] |
| **Docket Number** | 2:18-cv-03865 |

James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: (215) 735-8600
F: (215) 980-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA MCINTYRE, on behalf of herself and all others similarly situated, | |
| *Plaintiff,* | Civil Matter No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| TRANSUNION, LLC, and TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., | **TRIAL BY JURY DEMANDED** |
| *Defendants.* | |

## I.     PRELIMINARY STATEMENT

1.      This is a consumer class action brought pursuant to the Fair Credit Reporting Act,

15 U.S.C. §§ 1681-1681x ("FCRA") seeking relief for Defendants' widespread violations thereof.

2.      Despite the public availability of court records that conclusively demonstrate that

eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for

tenants, Defendant TransUnion Resident Screening Solutions, Inc. routinely fails to obtain up-to-

date information pertaining to the disposition of those cases and publishes harmful, misleading,

and inaccurate tenant screening consumer reports to landlords and property managers in violation of FCRA section 1681e(b).

3.      Both Defendants also systemically violate FCRA section 1681g(a) by failing to provide complete disclosures of all information they maintain about consumers and the sources of that information upon consumers' request.

4.      Defendants' practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate, adverse information and depriving those consumers of valuable congressionally-mandated information.

## II.      JURISDICTION *and* VENUE

5.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

6.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.      PARTIES

7.      Plaintiff Patricia McIntyre is an adult individual who resides in Philadelphia, Pennsylvania. At all times pertinent hereto, Plaintiff was a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

8.      Defendant TransUnion, LLC ("TransUnion") regularly conducts business in the Commonwealth of Pennsylvania and has a place of business in Chester, Pennsylvania.

9.      Defendant TransUnion Resident Screening Solutions, Inc. ("TURSS") is a wholly-owned TransUnion subsidiary that regularly conducts business in the Commonwealth of Pennsylvania and has a place of business in Colorado.

10.      At all times pertinent hereto, Defendants were "persons" and "consumer reporting agencies" (singular, "CRA") within the meanings of 15 U.S.C. §§ 1681a(b), (f).

11. Defendants function as a single, unified CRA, having integrated their ownership, operations, data storage, technical support, information technology services, marketing, quality assurance, auditing, compliance, consumer contact personnel, and oversight efforts.

## IV.    FACTUAL ALLEGATIONS

*Defendants' Acquisition and Use of Eviction Information for Credit Reporting*

12. For many years, Defendants have purchased public records information pertaining to residential eviction litigation ("eviction information") from one or more private vendors instead of retrieving the actual underlying court records themselves—or even more manageable digital representations—for purposes of creating and selling tenant screening reports to landlords and rental property managers.

13. The tenant screening reports that Defendants sell to landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) because they are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the eviction information included within bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of the subjects of the reports.

14. Therefore, Defendants are required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer reports they prepare relates. 15 U.S.C. § 1681e(b).

15. However, Defendants do not follow such procedures, but rather fail to obtain updates to eviction information, regularly and illegally reporting eviction information pertaining to cases and judgments that have been dismissed, withdrawn, satisfied, or have resulted in a judgment for the tenant.

16.     Defendants' practices and procedures regarding the reporting of eviction information, specifically the failure to report the most up-to-date status of eviction cases, causes widespread harm to consumers and interstate commerce as a whole.

17.     This phenomenon is the result of Defendants' intentional business decisions. The eviction information Defendants purchase is merely a summary prepared by its vendors that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

18.     Defendants know that their vendors make mistakes in the condensed, summary eviction information that it purchases for credit reporting purposes and that the information routinely does not include the most up-to-date status of the actual cases.

19.     Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of TransUnion and other CRAs, and dozens of FCRA class action lawsuits throughout the United States, including in this District.[1]

20.     For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such

---

[1]     *See, e.g., Lustig v. TransUnion, LLC*, Case No. 2:17-CV-01175-GAM (E.D. Pa.) (filed Mar. 16, 2017); *Matthews v. TransUnion, LLC,* Case No. No. 2:17-cv-01825-JS (E.D. Pa.) (filed Apr. 21, 2017).

weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[2]

21.     Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[3]

22.     Other regulators, including the New York Attorney General, initiated investigations of the "Big Three," a group of national CRAs that includes TransUnion, Experian Information Solutions, Inc., and Equifax Information Services, LLC, in part due to similar problems with the accuracy and currency of publics records information in credit reports.

23.     The Big Three ultimately entered into an agreement[4] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

24.     As of July 1, 2017, pursuant to the requirements of the agreement and the NCAP, the Big Three ceased including civil judgment information that did not meet certain minimum

---

[2]     CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

[3]     *Id*. at 2.1.2.

[4]     SETTLEMENT AGREEMENT, *In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC*, http://www.ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf (last viewed July 9, 2018).

standards in credit reports. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the Big Three.[5]

25.　Earlier this year, TransUnion entered into a national class action settlement of public records-related FCRA claims, which was preliminarily approved on March 23, 2018[6] and finally approved on August 29, 2018.[7]

26.　At all times relevant to these allegations, Defendants were aware of the CFPB's and state attorneys' general investigations into TransUnion's public records practices, the NCAP, the various public records class actions pending throughout the United States, and their obligations under the FCRA.

27.　However, Defendants, fully aware of the problems associated with the incomplete and inaccurate information purchased from vendors, have not stopped acquiring, using, and profiting from inaccurate and out-of-date eviction information.

28.　TransUnion, through TURSS, markets eviction information services to landlords by noting that they can provide "Credit reports, criminal background checks, income estimate, and eviction records from TransUnion." It purports to offer "Superior accuracy using advanced matching technology on all tenant screening reports."[8]

---

[5]　*See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed July 9, 2018).

[6]　*Clark v. TransUnion, LLC*, Case No. 3:15-cv-00391-MHL, Doc. 248 (E.D. Va. Mar. 23, 2018).

[7]　*Clark*, Case No. 3:15-cv-00391-MHL, Doc. 272 (E.D. Va. Aug. 29, 2018).

[8]　*Tenant Screening | TransUnion SmartMove | Tenant Background Check*, https://www.mysmartmove.com (last visited July 9, 2018).

29.      On its website, TURSS asks potential landlords if there is ". . . anything more painful than evicting a tenant?"[9] and promises that the "Eviction Report" portion of its products will help them "predict future behavior by knowing your tenant's past history."[10]

30.      According to TURSS, the Eviction Report "include court records on every file" and "TransUnion eviction reports come from a variety of sources including public court records, and are enhanced with data reported directly to TransUnion."[11]

31.      The reports include: "Tenant judgment for possession and money[;] Unlawful detainers[;] Tenant judgments for rent[;] Failure to pay rent[; and] Writs and warrants of eviction[.]"[12]

*Defendants' Failure to Fully Disclosure Information to Consumers*

32.      Additionally, and despite the clear mandate of FCRA sections 1681g(a)(1)-(2) and binding Third Circuit precedent, Defendants never disclose to consumers the true source of the eviction information that they collect and report to third parties.

33.      The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

34.      In furtherance of that goal, the FCRA mandates that CRAs provide consumers with access to the information sold about them to third parties. *See* 15 U.S.C. §§ 168lg(a).

---

[9]      TRANSUNION RESIDENTIAL SCREENING SOLUTIONS, INC., *Eviction Check | Tenant Eviction Search | TransUnion SmartMove*,
https://www.mysmartmove.com/SmartMove/eviction-check.page (last visited July 9, 2018).

[10]      *Id.*

[11]      *Id.*

[12]      *Id.*

35. The FCRA requires CRAs to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances. *See* 15 U.S.C. § 168lg(a).

36. When used in connection with information on any consumer the FCRA uses the term "file" to means "all of the information on that consumer recorded and retained by a consumer reporting agency *regardless of how the information is stored*." *See* 15 U.S.C. § 168la(g) (emphasis added).

37. "File" "denotes all information . . . that *might* be furnished, or *has been* furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711-12 (*citing Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007)) (emphasis added).

38. CRAs may not attempt to circumvent their duties to disclose imposed by the FCRA by way of corporate or technological chicanery. 15 U.S.C. § 1681x; *see also Cortez*, 617 F.3d at 711 ("We do not believe that Congress intended to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report.").

39. Examples of such prohibited attempts include:

*Circumvention through reorganization by data type.* XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603(p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

8

*Circumvention by a newly formed entity.* Smith Co. is a new entrant in the marketplace for consumer reports that bear on a consumer's credit worthiness, standing and capacity. Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co. Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith Public Records Co. assembles and maintains public record information on consumers nationwide. Neither Smith Co. nor its affiliated organizations comply with FCRA obligations of consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. Smith Co.'s conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

12 C.F.R. part 1022.140(b)(1), (3).

40.     Further, CRAs must "clearly and accurately disclose to the consumer" who requests

his or her credit file "the sources" that supplied any "information" to the CRA about that consumer.

15 U.S.C. § 1681g(a)(2).

41.     Disclosure of the true source of a CRA's information is vital to correcting errors

and to informing consumers about who is furnishing important credit information about them.

42.     Defendants conceal that their sources for eviction information are private vendors

that supply incomplete information that can be inaccurate or not up-to-date.

43.     Defendants are more interested in maintaining the appearance that they obtain

actual public records from true government sources and in protecting their low-cost private sources

of public record data than in disclosing to consumers vital information that Congress required

CRAs to disclose in FCRA section 1681g(a)(2). *See also* ¶ 30, *supra* (TURSS advertises with

reference to "court records").

44.     Defendants fail, as a matter of common policy and procedure, to provide consumers

who request file disclosures with all information Defendants maintain about the requesting

consumer, including never disclosing to consumers the source of the eviction information collected

and reported about them.

9

45.     Defendants' practices not only violate the FCRA as a matter of law, the practices exact serious consequences on rental housing applicants and interstate commerce. Consumers who have obtained the dismissal, withdrawal of an eviction matter, satisfied an eviction judgment, or prevailed in an eviction matter are prejudiced in their ability to obtain leased housing and are deprived of complete information regarding the nature and source(s) of the information Defendants maintain and sell about them.

### *Plaintiff's Experience*

46.     At all times relevant to Plaintiff's allegations, full case dockets and digital representations of all documents filed in landlord tenant actions in the Philadelphia Municipal Court, including, but not limited to complaints, judgments, vacaturs, withdrawals, and satisfactions of judgment, were available online at no charge.[13]

### *Defendants' Provide Eviction Information from Plaintiff's File the First Time*

47.     On or about August 18, 2016, Plaintiff applied to rent an apartment at Duffield House, an apartment complex in Philadelphia, Pennsylvania. A Duffield House representative, one Noreen Lyons, obtained a tenant screening report from TURSS about Plaintiff for a fee which, upon information and belief, was passed along to Plaintiff.

48.     Under the heading "Eviction Results," the August 18, 2016 TURSS report included seven inaccurate and out-of-date entries of eviction information.

---

[13]     PHILADELPHIA MUNICIPAL COURT ELECTRONIC FILING SYSTEM, https://fjdclaims.phila.gov/phmuni/login.do# (last visited August 20, 2018).

10

49.     The first inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 1. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 5/16/2011 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MP60906646 | Plaintiff: | Kinsale Partners L P |
| File Number | 1104275672 | Judgment Amount: | $1,290 |

50.     This information was inaccurate and out-of-date because the judgment entered against Plaintiff in case LT-11-04-27-5672 on May 6, 2011 was *satisfied* on August 3, 2011, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

51.     The TURSS report contained no reference to the August 3, 2011 satisfaction.

52.     As of the date of the report, August 18, 2016, Defendant had failed to update the status of the May 6, 2011 judgment for more than five years.

53.     The second inaccurate and out-of-date entry, which referenced the same case, appeared, in relevant part, as follows:

| 2. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 4/27/2011 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MP50928569 | Plaintiff: | Kinsale Partners L P |
| File Number | 1104275672 | Judgment Amount: | $1,058 |

54.     This information was inaccurate and out-of-date because the complaint filed against Plaintiff on April 27, 2011 was a nullity, having merged with the May 6, 2011 judgment in that case, which was *satisfied* on August 3, 2011. *See* ¶¶ 50-51, *supra*.

55.     Moreover, no judgment was entered on April 27, 2011 as the entry's reference to a "Judgment Amount" indicated. Rather, a complaint was filed.

56.     The third inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 3. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 11/5/2010 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MP42527173 | Plaintiff: | Kinsale Partners Lp |
| File Number | 1010084331 | Judgment Amount: | $2,396 |

57.     This information was inaccurate and out-of-date because the judgment entered

against Plaintiff in case LT-10-10-08-4331 on November 5, 2010 was *satisfied* on April 6, 2011,

when an entry reflecting that updated disposition was filed on the publicly-available case docket.

58.     The TURSS report contained no reference to the April 6, 2011 satisfaction.

59.     As of the date of the report, August 18, 2016, Defendant had failed to update the

status of the November 5, 2010 judgment for nearly five and a half years.

60.     The fourth inaccurate and out-of-date entry, which referenced the same case,

appeared, in relevant part, as follows:

| 4. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 10/8/2010 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MP39228667 | Plaintiff: | Kinsale Partners Lp |
| File Number | 1010084331 | Judgment Amount: | $1,791 |

61.     This information was inaccurate and out-of-date because the complaint filed against

Plaintiff on October 8, 2010 was a nullity, having merged with the November 5, 2010 judgment in

that case, which was *satisfied* on April 6, 2011. *See* ¶¶ 57-58, *supra*.

62.     Moreover, no judgment was entered on October 8, 2010 as the entry's reference to

a "Judgment Amount" indicated. Rather, a complaint was filed.

63.     The fifth inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 5. Mcintyre, Patricia | Dataset: Pennsylvania Evictions(PAEVN) |
|---|---|
| Address: 3902 City Ave #B1223 Philadelphia Pa 19131 | Action Date: 10/5/2012 |
| County: Philadelphia County Muni Court | Case Type: Civil New Filing |
| Record ID: MP80537285 | Plaintiff: Bldg Philadelphia Lp |
| File Number 1210053884 | Judgment Amount: $3,712 |

64.     This information was inaccurate and out-of-date because the complaint filed against

Plaintiff in case LT-12-10-05-3884 on October 5, 2012 was a nullity, having merged with the

judgment entered in that case on November 6, 2012, which was *satisfied* on May 14, 2015. *See*

¶¶ 72-73, *infra*.

65.     Moreover, no judgment was entered on October 5, 2012 as the entry's reference to

a "Judgment Amount" indicated. Rather, a complaint was filed.

66.     The sixth inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 6. Mcintyre, Patricia | Dataset: Pennsylvania Evictions(PAEVN) |
|---|---|
| Address: 3902 City Ave #B1223 Philadelphia Pa 19131 | Action Date: 1/18/2012 |
| County: Philadelphia County Muni Court | Case Type: Civil New Filing |
| Record ID: MP65555473 | Plaintiff: Bldg Philadelphia Lp |
| File Number 1201185230 | Judgment Amount: $3,211 |

67.     This information was inaccurate and out-of-date because the complaint filed against

Plaintiff in case LT-12-01-18-5230 on January 18, 2012 was *withdrawn* on February 17, 2012,

when an entry reflecting that updated disposition was filed on the publicly-available case docket.

68.     The TURSS report contained no reference to the February 17, 2012 withdrawal.

69.     Moreover, no judgment was entered on January 18, 2012 as the entry's reference

to a "Judgment Amount" indicated. Rather, a complaint was filed.

13

70. As of the date of the report, August 18, 2016, Defendant had failed to update the status of the January 18, 2012 filing for approximately four and a half years.

71. The seventh inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 7. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3902 City Ave #B1223 Philadelphia Pa 19131 | Action Date: | 11/6/2012 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MP84746151 | Plaintiff: | Bldg Philadelphia Lp |
| File Number | 1210053884 | Judgment Amount: | $5,728 |

72. This information was inaccurate and out-of-date because the judgment entered against Plaintiff in case LT-12-10-05-3884 on November 6, 2012 was *satisfied* on May 14, 2015, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

73. The TURSS report contained no reference to the May 14, 2015 satisfaction.

74. As of the date of the report, August 18, 2016, Defendant had failed to update the status of the November 6, 2012 judgment for more than a year.

75. As a result of the inaccuracies, Plaintiff's application was denied.

*Defendants Provide Eviction Information from Plaintiff's File a Second Time*

76. On or about July 27, 2017, Plaintiff applied to rent an apartment at Alden Park, an apartment complex in Philadelphia, Pennsylvania and TURSS provided eviction information about Plaintiff to RentGrow, Inc., d/b/a Yardi Resident Screening ("RentGrow") upon request of one Lisa Legere and for a fee which, upon information and belief, was passed along to Plaintiff.

77. The information TURSS provided to RentGrow on July 27, 2017 included eleven inaccurate and out-of-date entries of eviction information.

14

78.    The first inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 1. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3701 Conshohocken Av #31 921 Philadelphia PA 19131 | Action Date: | 12/6/2016 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MY59115837 | Plaintiff: | Duffield House Assoc |
| File Number | 1612063568 | Judgment Amount: | $1,366 |

79.    This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-16-12-06-3568 on December 6, 2016 was a nullity, having merged with the judgment entered on February 15, 2017, which was *vacated* on May 18, 2017 when an entry reflecting that updated disposition was filed on the publicly-available case docket.

80.    The TURSS report contained no reference to the May 18, 2017 vacatur.

81.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the December 6, 2016 filing for more than two months.

82.    The second inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 2. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 4/6/2011 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MY59264240 | Plaintiff: | Kinsale Partners Lp |
| File Number | 1010084331 | Judgment Amount: | $2,396 |

83.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-10-10-08-4311 on April 6, 2011, let alone one for $2,396. Rather, the entry regarding Plaintiff's *satisfaction* of the November 5, 2010 judgment was filed on the publicly-available case docket that day. *See* ¶ 57, *supra*.

84.     The TURSS report contained no reference to the April 6, 2011 satisfaction, instead inaccurately casting it as an *additional* judgment entered against Plaintiff, doubling the negative impact of the inaccurate information.

85.     As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 5, 2010 judgment for more than six years.

86.     The third inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the May 16, 2011 judgment in case LT-11-04-27-5672, which Plaintiff *satisfied* on August 3, 2011. *See* ¶¶ 49-50, *supra*.

87.     Relatedly, the fourth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the April 27, 2011 filing of case LT-11-04-27-5672, which was *satisfied* on August 3, 2011. *See* ¶¶ 53-55, *supra*.

88.     The TURSS report contained no reference to the August 3, 2011 satisfaction.

89.     As of the date of the report, July 27, 2017, Defendant had failed to update the status of the May 16, 2011 judgment for more than six years.

90.     The fifth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the November 5, 2010 judgment in case LT-10-10-08-4331, was Plaintiff *satisfied* on April 6, 2011. *See* ¶¶ 56-57, *supra*.

91.     Relatedly, the sixth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the October 8, 2010 filing of case LT-10-10-08-4331, the November 5, 2010 judgment in which Plaintiff *satisfied* on April 6, 2011. *See* ¶¶ 60-62, *supra*.

92.     The TURSS report contained no reference to the April 6, 2011 satisfaction.

93.     As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 5, 2010 judgment for nearly six and a half years.

16

94.    The seventh inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 7.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 8/3/2011 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MY59749883 | Plaintiff: | Kinsale Partners Lp |
| File Number | 1104275672 | Judgment Amount: | $1,290 |

95.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-11-04-27-5672 on August 3, 2011, let alone one for $1,290. Rather, the entry regarding Plaintiff's *satisfaction* of the May 16, 2011 judgment was filed on the publicly-available case docket that day. *See* ¶ 50, *supra*.

96.    The TURSS report contained no reference to the August 3, 2011 satisfaction, instead inaccurately casting it as an *additional* judgment entered against Plaintiff, doubling the negative impact of the inaccurate information.

97.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the May 16, 2011 judgment for nearly six years.

98.    The eighth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the October 5, 2012 filing of case LT-12-10-05-3884, the November 6, 2012 judgment in which Plaintiff *satisfied* on May 14, 2015. *See* ¶ 72, *supra*.

99.    The TURSS report contained no reference to the May 14, 2015 satisfaction.

100.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 6, 2012 judgment for more than two years.

101.    The ninth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the January 18, 2012 filing of case LT-12-01-18-5230, which case was *withdrawn* on February 17, 2012. *See* ¶ 67, *supra*.

102. The TURSS report contained no reference to the February 17, 2012 withdrawal.

103. Moreover, no judgment was entered on January 18, 2012 as the entry's reference to a "Judgment Amount" indicated. Rather, a complaint was filed.

104. As of the date of the report, July 27, 2017, Defendant had failed to update the status of the January 18, 2012 filing for approximately five and a half years.

105. The tenth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the November 6, 2012 judgment in case LT-12-10-05-3884 which case *satisfied* on May 14, 2015. *See* ¶ 72, *supra*.

106. Relatedly, the eleventh inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 11. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3902 City Ave #B1223 Philadelphia PA 19131 | Action Date: | 5/14/2015 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MY69476513 | Plaintiff: | Bldg Philadelphia Lp |
| File Number | 1210053884 | Judgment Amount: | $5,728 |

107. This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-12-10-05-3884 on May 14, 2015, let alone one for $5,728. Rather, the entry regarding Plaintiff's *satisfaction* of the November 6, 2012 judgment was filed on the publicly-available case docket that day. *See* ¶ 72, *supra*.

108. The TURSS report contained no reference to the May 14, 2015 satisfaction, instead inaccurately casting it as an additional judgment entered against Plaintiff, doubling the negative impact of the inaccurate information.

109. As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 6, 2012 judgment for more than two years.

18

110. Because her previous lease at another location expired and her most recent attempts to secure rental housing have been unsuccessful, Plaintiff has been forced to live in much more expensive extended-stay housing for many months.

*TURSS Inadequately Discloses the Sources of Eviction Information*

111. In April 2018, Plaintiff requested and obtained a copy of her TURSS file ("TURSS Disclosure").

112. The TURSS Disclosure purported to contain, among other information, "the contents of a consumer report generated on 8/18/2016 and 7/27/2017 for Duffield House and RentGrow."

113. Under the heading "Eviction Results," in a portion of the TURSS Disclosure that purported to have been "requested" on April 30, 2018, five inaccurate and out-of-date entries pertaining to eviction cases appeared.

114. The first inaccurate and out-of-date entry appeared, in relevant part, as follows:

---

1. Mcintrye, Patrcia          Dataset: Pennsylvania Evictions (PAEVN)

|  |  |  |  |
|---|---|---|---|
| Address: | 3701 Conshohocken Av #31 921 | Action Date: | 7/28/2017 |
|  | Philadelphia PA 19131 | Case Type: | Civil Dismissal |
| County: | Philadelphia County Muni Court |  | Plaintiff: Duffield House Assoc |
| Record ID: | MY59115837 | Judgment Amount: | $0.00 |
| File Number: | 1612063568 |  |  |

---

115. This information was inaccurate and out-of-date because no judgment was entered in case LT-16-12-06-3568 on July 28, 2017, but rather, the case was dismissed and an entry reflecting same was entered in the case docket on that day, making the case a legal nullity.

116.    The second inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 2.  Mcintrye, Patrcia | Dataset: Pennsylvania Evictions (PAEVN) |
| --- | --- |
| Address: 3701 Conshohocken Av #C3 | Action Date: 8/3/2011 |
| Philadelphia PA 19131 | Case Type: Civil Judgment |
| County: Philadelphia County Muni Court | Plaintiff: Kinsale Partners L P |
| Record ID: MY59749883 | Judgment Amount: $0.00 |
| File Number: 1104275672 | |

117.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-11-04-27-5672 on August 3, 2011. Rather, the entry regarding Plaintiff's *satisfaction* of the May 16, 2011 judgment was filed on the publicly-available case docket that day.

118.    The TURSS Disclosure contained no reference to the August 3, 2011 satisfaction, instead inaccurately casting it as a "civil judgment" entered against Plaintiff, denying her the benefit of having satisfied the May 16, 2011 judgment.

119.    Upon information and belief, TURSS never reports the satisfaction of an eviction case judgment, denying the subjects of its reports the benefit of having paid what they owed to former landlords.

120.    The third inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 3.  Mcintrye, Patrcia | Dataset: Pennsylvania Evictions (PAEVN) |
| --- | --- |
| Address: 3902 City Ave #B1223 | Action Date: 10/5/2012 |
| Philadelphia PA 19131 | Case Type: Civil New Filing |
| County: Philadelphia County Muni Court | Plaintiff: Bldg Philadelphia Lp |
| Record ID: MP80537285 | Judgment Amount: $0.00 |
| File Number: 1210053884 | |

121.    This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-12-10-05-3884 on October 5, 2012 merged with the judgment entered on November 6, 2012, which Plaintiff *satisfied* on May 14, 2015. *See* ¶¶ 125-126, *infra*.

20

122. The fourth inaccurate and out-of-date entry appeared, in relevant part, as follows:

---

4. Mcintrye, Patrcia        Dataset: Pennsylvania Evictions (PAEVN)

    Address: 3902 City Ave #B1223               Action Date: 2/17/2012
              Philadelphia PA 19131               Case Type: Civil Dismissal
      County: Philadelphia County Muni Court            Plaintiff: Bldg Philadelphia Lp
   Record ID: MP65555473               Judgment Amount: $0.00
File Number: 1201185230

---

123. This information was inaccurate and out-of-date because when the complaint filed

against Plaintiff in case LT-12-01-18-5230 on January 18, 2012 was *withdrawn* on February 17,

2012, it became a nullity.

124. The fifth inaccurate and out-of-date entry appeared, in relevant part, as follows:

---

5. Mcintrye, Patrcia        Dataset: Pennsylvania Evictions (PAEVN)

    Address: 3902 City Ave #B1223               Action Date: 5/14/2015
              Philadelphia PA 19131               Case Type: Civil Judgment
      County: Philadelphia County Muni Court            Plaintiff: Bldg Philadelphia Lp
   Record ID: MY69476513               Judgment Amount: $0.00
File Number: 1210053884

---

125. This information was inaccurate and out-of-date because no "civil judgment" was

entered against Plaintiff in case LT-12-10-05-3884 on May 14, 2015. Rather, the entry regarding

Plaintiff's *satisfaction* of the November 6, 2012 judgment was filed on the publicly-available case

docket that day.

126. The TURSS disclosure contained no reference to the May 14, 2015 satisfaction,

instead inaccurately casting it as a "civil judgment" entered against Plaintiff, denying her the

benefit of having satisfied the November 6, 2012 judgment.

127.    In relevant part, the TURSS Disclosure also stated:

**TURSS Sources of Data**

The information TransUnion Rental Screening Solutions (TURSS) has on file related to you and/or included in your current and/or historical consumer report(s) generated on 8/18/2016, 7/27/2017 and 4/30/2018 was collected from public record sources by TransUnion Rental Screening Solutions or a company TURSS hired to collect such information. If you submit a dispute of the accuracy of a public record item, TransUnion Rental Screening Solutions may update the item based on the information you provide, or we may investigate your dispute by checking with the public record source or by asking our vendor to verify that the current status of the public record is reported accurately.

The public record sources used to generate the report(s) are as follows:

Pennsylvania, Philadelphia County Muni Court

128.    In fact, TURSS had not obtained information regarding Plaintiff's eviction litigation history from the records of the Philadelphia County Municipal Court.

129.    Rather, upon information and belief, TransUnion acquired such information from a third-party vendor, transferred same into its database, and provided TURSS with the means to access same and to prepare consumer reports including the information.

130.    TURSS disclosed neither TransUnion nor the third-party vendor as the source(s) of the eviction information in Plaintiff's file in the TURSS Disclosure.

*TransUnion's Incomplete Disclosure of Plaintiff's TransUnion File*

131.    In July of 2018, Plaintiff requested and obtained a copy of her TransUnion credit file disclosure ("TransUnion Disclosure").

132.    The TransUnion Disclosure contained no reference to any eviction information whatsoever, let alone the copious information that TURSS had provided to Plaintiff's potential landlords and/or property managers and which had appeared in the reports prepared by TURSS and the TURSS Disclosure. *See ¶¶ 47-126, supra.*

22

133.    Nevertheless, the TransUnion Disclosure included several inquiries for Plaintiff's credit information associated with "Tenant Screening," making it clear that TransUnion had provided eviction information to third parties including, but not limited to, Plaintiff's potential landlords and property managers.

134.    TransUnion did not disclose Plaintiff's complete file to her after her request failing to disclose the eviction information that it had previously provided to third parties.

135.    TransUnion's incomplete disclosure denied Plaintiff the opportunity to learn the extent of the eviction information TransUnion was providing to third parties about her despite Congress's clear mandate in FCRA section 1681g(a)(1) and its implementing regulations.

136.    At all times pertinent hereto and with respect to all of the foregoing allegations, Defendants' conduct was a result of deliberate policies and practices, was willful, was carried out in reckless disregard for a consumers' rights as set forth under sections 1681e(b) and 1681g(a) of the FCRA, and further assumed an unjustifiably high risk of harm.

## V.    CLASS ACTION ALLEGATIONS

137.    Plaintiff brings this action on behalf of the following Classes for Defendant TURSS' violations of FCRA section 1681e(b):

### *Failure to Update Class – United States*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were the subjects of tenant screening consumer reports created by Defendant TransUnion Resident Screening Solutions, Inc. that contained eviction information, but failed to state that, according to court records dated at least 30 days prior to the date Defendant prepared the report, the referenced eviction action had been withdrawn, dismissed, non-suited, or had resulted in a judgment for the tenant defendant.

### *Failure to Update Subclass I: Commonwealth of Pennsylvania*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were the subjects of tenant screening consumer reports created by Defendant TransUnion Resident Screening Solutions, Inc. that contained information pertaining to a landlord tenant action filed within the Commonwealth of Pennsylvania, but failed to state that the action, according to court records dated at least 30 days prior to the date Defendant prepared the report, had been withdrawn, dismissed, non-suited, or had resulted in a judgment for the tenant defendant.

### *Failure to Update Subclass II: Philadelphia Municipal Court*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were the subjects of tenant screening consumer reports created by Defendant TransUnion Resident Screening Solutions, Inc. that contained information pertaining to a landlord tenant action filed in the Philadelphia, Pennsylvania Municipal Court but failed to state that, according to court records dated at least 30 days prior to the date Defendant prepared the report, the action had been withdrawn, dismissed, non-suited, or had resulted in a judgment for the tenant defendant.

138. Plaintiff brings this action on behalf of the following Class for Defendant TransUnion's violations of FCRA section 1681g(a)(1):

### *Incomplete Disclosure Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories for whom Defendant TransUnion, LLC has a record of transmitting a file disclosure in response to a request, which did not include any eviction information that TransUnion Resident Screening Solutions, Inc. had previously included in a consumer report it prepared about the subject of the file disclosure.

139.     Plaintiff brings this action on behalf of the following Classes for Defendant TransUnion's and Defendant TURSS' violations of FCRA section 1681g(a)(2):

### Sources Disclosure Class

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories for whom Defendants TransUnion, LLC or TransUnion Rental Screening Solutions, Inc. have a record of sending a file disclosure that included any eviction information in response to a request.

140.     The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the members of the Classes number in the thousands. Defendants sell eviction information to thousands of businesses throughout the country, and their reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Furthermore, upon information and belief, Defendants prepare and send disclosures to consumers using standardized policies and procedures.

141.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether Defendants willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction cases that had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant at least 30 days prior; whether Defendants violated the FCRA by failing to provide all of the information it maintains about consumers upon request; and whether Defendants violated the FCRA by failing to disclose the source(s) of eviction information.

142.     Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

143. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

144. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

145. Whether Defendants violated the FCRA can be determined by examination of Defendants' policies and conduct and a ministerial inspection of Defendants' business records and publicly available eviction litigation records.

146. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendants' records.

26

## VI.    CLAIMS *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)
### *Against Defendant TransUnion Rental Screening Solutions, Inc.*

147.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

148.    Pursuant to sections 1681n and 1681o of the FCRA, TURSS is liable to the Plaintiff and the Failure to Update Classes for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b). Specifically, TURSS failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Failure to Update Classes, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

### COUNT II – VIOLATION *of* FCRA SECTION 1681g(a)(1)
### *Against Defendant TransUnion, LLC*

149.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

150.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, TransUnion is liable to Plaintiff and members of the Incomplete Disclosure Classes for negligently and willfully failing to provide a complete copy of all the information in her file upon request, in violation of FCRA section 1681g(a)(1). Specifically, TransUnion did not disclose to Plaintiff and members of the Incomplete Disclosure Classes upon their request the eviction information it maintains and sells about them to potential landlords and other users of TURSS products and services.

### COUNT III - VIOLATION *of* FCRA SECTION 1681g(a)(2)
*Against Defendants TransUnion, LLC and TransUnion Rental Screening Solutions, Inc.*

151. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

152. Pursuant to 15 U.S.C. §§ 1681n and 1681o, TransUnion and TURSS are liable for negligently and willfully failing to provide the sources of the information in consumers' file upon request, in violation of FCRA section 1681g(a)(2). Specifically, TransUnion and TURSS do not disclose the identity of the third-party vendor(s) of eviction information to consumers upon their request, but instead falsely imply that the information comes directly from courthouses and other government record sources.

### VII. PRAYER *for* RELIEF

WHEREFORE, with respect to Plaintiff's Counts I, II, and III, Plaintiff prays this Honorable Court enter an order granting the following relief:

    A.    certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and her counsel to represent the Classes;

    B.    declaring that Defendants' conduct as alleged is in violation of the FCRA;

    C.    awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

    D.    awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

    E.    awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    F.    awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

    G.    and granting such other and further relief as may be just and proper.

## VIII.   JURY TRIAL DEMAND

153.   Plaintiff demands trial by jury on all issues so triable.

Dated: September 10, 2018                    Respectfully submitted,

PATRICIA MCINTYRE, *on behalf of herself and all others similarly situated.*

By:   */s/John Soumilas*
       James A. Francis
       John Soumilas
       Lauren KW Brennan
       FRANCIS & MAILMAN, P.C.
       Land Title Building, 19th Floor
       100 South Broad Street
       Philadelphia, PA 19110
       Tel: (215) 735-8600
       Fax: (215) 940-8000
       jfrancis@consumerlawfirm.com
       jsoumilas@consumerlawfirm.com
       lbrennan@consumerlawfirm.com

       Leonard A. Bennett*
       CONSUMER LITIGATION ASSOCIATES, P.C.
       763 J. Clyde Morris Blvd., Suite 1-A
       Newport News, VA 23601
       Tel: (757) 930-3660
       Fax: (757) 257-3450
       lenbennett@clalegal.com

       *Attorneys for Plaintiff*

       * Petition to appear *pro hac vice* forthcoming.

# EXHIBIT 5

Current on Bloomberg Law as of Jan. 21, 2020 12:26:33

**U.S. District Court**
**Eastern District of Virginia - (Alexandria)**
**CIVIL DOCKET FOR CASE #: 1:19-cv-01185-TSE-JFA**

# Francis v. TransUnion Rental Screening Solutions, LLC

## DOCKET INFORMATION

Minimize

| | |
|---|---|
| **Date Filed:** | Sept 13, 2019 |
| **Nature of suit:** | 480 Consumer Credit |
| **Assigned to:** | District Judge T. S. Ellis, III |
| **Cause:** | 15:1681 Fair Credit Reporting Act |
| **Jurisdiction:** | Federal Question |
| **Jury demand:** | Plaintiff |
| **Referred to:** | Magistrate Judge John F. Anderson |

# Parties and Attorneys

Expand All  Minimize

| Plaintiff | Karl Anthony Francis |
|---|---|
| | Plaintiff |

Representation

**Leonard Anthony Bennett**
*Consumer Litigation Associates*
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
(757) 930-3660
Fax: (757) 930-3662
lenbennett@clalegal.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Casey Shannon Nash**
*Kelly Guzzo PLC*
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
(703) 424-7571
Fax: (703) 591-0167
casey@kellyguzzo.com
ATTORNEY TO BE NOTICED

**Andrew Joseph Guzzo**
*Kelly Guzzo PLC*
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
(703) 424-7576
Fax: (703) 591-0167
aguzzo@kellyguzzo.com
ATTORNEY TO BE NOTICED

**Kristi Cahoon Kelly**
*Kelly Guzzo PLC*
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
(703) 424-7570
Fax: (703) 591-9285
kkelly@kellyguzzo.com
ATTORNEY TO BE NOTICED

| Defendant | TransUnion Rental Screening Solutions, LLC |
|---|---|
| | Defendant |

Representation

**Alison Ross Wickizer Toepp**

**Travis Aaron Sabalewski**

**Bloomberg Law®**

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

*Reed Smith LLP (Richmond)*
901 East Byrd Street
Suite 1900
Richmond, VA 23219-4068
(804) 344-3465
Fax: (804) 344-3410
atoepp@reedsmith.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

*Reed Smith LLP (Richmond)*
901 East Byrd Street
Suite 1900
Richmond, VA 23219-4068
(804) 344-3400
Fax: (804) 344-3410
tsabalewski@reedsmith.com
ATTORNEY TO BE NOTICED

# Docket Entries

## Print Entries Request Entries Reverse Entries
Numbers shown are court assigned numbers

| Entry | Filed | Description |
|---|---|---|
| 1 | Sept 13, 2019 | Complaint ( Filing fee $ 400, receipt number 0422-6835539.), filed by Karl Anthony Francis. (Attachments: # 1 Civil Cover Sheet)(Nash, Casey) (Entered: 09/13/2019) |
| 2 | Sept 13, 2019 | Proposed Summons by Karl Anthony Francis. (Nash, Casey) (Entered: 09/13/2019) |
| 3 | Sept 13, 2019 | NOTICE of Appearance by Kristi Cahoon Kelly on behalf of Karl Anthony Francis (Kelly, Kristi) (Entered: 09/13/2019) |
| 4 | Sept 13, 2019 | NOTICE of Appearance by Andrew Joseph Guzzo on behalf of Karl Anthony Francis (Guzzo, Andrew) (Entered: 09/13/2019) |
| | Sept 13, 2019 | Initial Case Assignment to District Judge T. S. Ellis, III and Magistrate Judge John F. Anderson. (acha, ) (Entered: 09/13/2019) |
| 5 | Sept 13, 2019 | Summons Issued as to TransUnion Rental Screening Solutions, LLC. NOTICE TO ATTORNEY: Print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (Attachments: # 1 Notice to Attorney)(acha, ) (Entered: 09/13/2019) |
| 6 | Oct 2, 2019 | Certificate of Compliance by Karl Anthony Francis. TransUnion Rental Screening Solutions, LLC served on 10/2/2019, answer due 10/23/2019. (acha, ) (Entered: 10/02/2019) |
| 7 | Oct 17, 2019 | Consent MOTION for Extension of Time to File Answer re 1 Complaint by TransUnion Rental Screening Solutions, LLC. (Attachments: # 1 Proposed Order)(Toepp, Alison) (Entered: 10/17/2019) |
| 8 | Oct 17, 2019 | Corporate Disclosure Statement by TransUnion Rental Screening Solutions, LLC. (Toepp, Alison) (Entered: 10/17/2019) |
| 9 | Oct 17, 2019 | ORDER granting in part 7 Motion for Extension of Time to Answer. FURTHER ORDERED that the time for Defendant Trans Union Rental Screening Solutions, LLC to serve its responsive pleadings shall be extended to and including November 13, 2019. Such pleadings or motions shall be considered timely-filed by the Court. Signed by Magistrate Judge John F. Anderson on 10/17/2019. (wgar, ) (Entered: 10/17/2019) |
| 10 | Nov 13, 2019 | ANSWER to Complaint by TransUnion Rental Screening Solutions, LLC.(Toepp, Alison) (Entered: 11/13/2019) |
| 11 | Nov 14, 2019 | SCHEDULING ORDER:Initial Pretrial Conference set for 12/11/2019 at 11:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson.Discovery due by 4/10/2020.Final Pretrial Conference set for 5/21/2020 at 04:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III (if the parties do not file dispositive motions).Final Pretrial Conference set for 7/9/2020 at 04:00 PM in Alexandria Courtroom 900 before District Judge T. S. Ellis III (if the parties do file dispositive motions). Signed by District Judge T. S. Ellis, III on 11/14/2019. (Attachments: # 1 Magistrate Consent Form, # 2 Pretrial Notice)(tran) (Entered: 11/14/2019) |
| 12 | Nov 18, 2019 | Motion to appear Pro Hac Vice by Kristen DeGrande and Certification of Local Counsel Alison R.W. Toepp Filing fee $ 75, receipt number 0422-6944120. by TransUnion Rental Screening Solutions, LLC. (Toepp, Alison) (Entered: 11/18/2019) |

| 13 | Nov 18, 2019 | Motion to appear Pro Hac Vice by Michael Charles O'Neil and Certification of Local Counsel Alison R.W. Toepp Filing fee $ 75, receipt number 0422-6944149. by TransUnion Rental Screening Solutions, LLC. (Toepp, Alison) (Entered: 11/18/2019) |
| 14 | Nov 18, 2019 | Motion to appear Pro Hac Vice by Albert Edward Hartmann and Certification of Local Counsel Alison R.W. Toepp Filing fee $ 75, receipt number 0422-6944181. by TransUnion Rental Screening Solutions, LLC. (Toepp, Alison) (Entered: 11/18/2019) |
| 15 | Nov 18, 2019 | Motion to appear Pro Hac Vice by Eleanor Michelle Drake and Certification of Local Counsel Kristi Cahoon Kelly Filing fee $ 75, receipt number 0422-6944558. by Karl Anthony Francis. (Kelly, Kristi) (Entered: 11/18/2019) |
| 16 | Nov 18, 2019 | Motion to appear Pro Hac Vice by Joseph Hasmall and Certification of Local Counsel Kristi Cahoon Kelly Filing fee $ 75, receipt number 0422-6944565. by Karl Anthony Francis. (Kelly, Kristi) (Entered: 11/18/2019) |
| 17 | Nov 20, 2019 | ORDER granting 16 Motion for Pro hac vice as to Joseph Hashmall. Signed by District Judge T. S. Ellis, III on 11/20/2019. (dvanm, ) (Entered: 11/20/2019) |
| 18 | Nov 20, 2019 | ORDER granting 15 Motion for Pro hac vice as to Eleanor Michelle Drake. Signed by District Judge T. S. Ellis, III on 11/20/2019. (dvanm, ) (Entered: 11/20/2019) |
| 19 | Nov 20, 2019 | ORDER granting 13 Motion for Pro hac vice as to Michael Charles O'Neil. Signed by District Judge T. S. Ellis, III on 11/20/2019. (dvanm, ) (Entered: 11/20/2019) |
| 20 | Nov 20, 2019 | ORDER granting 14 Motion for Pro hac vice as to Albert Edward Hartmann. Signed by District Judge T. S. Ellis, III on 11/20/2019. (dvanm, ) (Entered: 11/20/2019) |
| 21 | Nov 20, 2019 | ORDER granting 12 Motion for Pro hac vice as to Kristen DeGrande. Signed by District Judge T. S. Ellis, III on 11/20/2019. (dvanm, ) (Entered: 11/20/2019) |
| 22 | Nov 26, 2019 | MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay by TransUnion Rental Screening Solutions, LLC. (Sabalewski, Travis) (Entered: 11/26/2019) |
| 23 | Nov 26, 2019 | Memorandum in Support re 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay filed by TransUnion Rental Screening Solutions, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Sabalewski, Travis) (Entered: 11/26/2019) |
| 24 | Nov 26, 2019 | Notice of Hearing Date set for December 20, 2019 re 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay (Sabalewski, Travis) (Entered: 11/26/2019) |
|    | Nov 27, 2019 | Set Deadlines as to 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay. Motion Hearing set for 12/20/2019 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 11/27/2019) |
|    | Nov 27, 2019 | Set Deadlines as to 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay. Motion Hearing set for 12/20/2019 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 11/27/2019) |
| 25 | Dec 4, 2019 | JOINT Discovery Plan by TransUnion Rental Screening Solutions, LLC.(Toepp, Alison) (Entered: 12/04/2019) |
| 26 | Dec 5, 2019 | Order Rule 16(b) Scheduling Order - Upon consideration of the representations made by the parties in their Joint Discovery Plan (Docket no. 25) and taking note of the Scheduling Order entered in this case (Docket no. 11 ), the court makes the following rulings: The Joint Discovery Plan filed by the parties is approved and shall control discovery to the extent of its application unless further modified by the court. This includes the request in Paragraph 4 of the Joint Discovery Plan concerning the timing for serving objections to discovery requests, with the understanding that any objections must be addressed promptly when served and if not resolved, brought to the court's attention for resolution. Signed by Magistrate Judge John F. Anderson on 12/05/2019. SEE ORDER FOR FURTHER DETAILS. (wgar, ) (Entered: 12/05/2019) |
| 27 | Dec 10, 2019 | Memorandum in Opposition re 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay filed by Karl Anthony Francis. (Attachments: # 1 Exhibit 1. Declaration of Michelle Drake)(Nash, Casey) (Entered: 12/10/2019) |
| 28 | Dec 10, 2019 | MOTION to Seal & Request to File Sealed Documents Conventionally by Karl Anthony Francis. (Attachments: # 1 Proposed Order)(Nash, Casey) (Entered: 12/10/2019) |
| 29 | Dec 10, 2019 | Notice of Filing Sealing Motion LCvR5(C) by Karl Anthony Francis re 28 MOTION to Seal & |

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

| | | Request to File Sealed Documents Conventionally (Nash, Casey) (Entered: 12/10/2019) |
|---|---|---|
| 30 | Dec 10, 2019 | Memorandum in Support re 28 MOTION to Seal & Request to File Sealed Documents Conventionally filed by Karl Anthony Francis. (Nash, Casey) (Entered: 12/10/2019) |
| 31 | Dec 11, 2019 | Notice of Hearing Date set for December 20, 2019 re 28 MOTION to Seal & Request to File Sealed Documents Conventionally (Nash, Casey) (Entered: 12/11/2019) |
| | Dec 11, 2019 | MOTIONS REFERRED to Magistrate Judge: Anderson. 28 MOTION to Seal & Request to File Sealed Documents Conventionally (klau, ) (Entered: 12/11/2019) |
| | Dec 11, 2019 | Set Deadlines as to 28 MOTION to Seal & Request to File Sealed Documents Conventionally. Motion Hearing set for 12/20/2019 at 10:00 AM in Alexandria Courtroom 501 before Magistrate Judge John F. Anderson. (klau, ) (Entered: 12/11/2019) |
| 32 | Dec 16, 2019 | Notice of Hearing Date (Amended) set for January 17, 2020 re 28 MOTION to Seal & Request to File Sealed Documents Conventionally, 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay (Kelly, Kristi) (Entered: 12/16/2019) |
| 33 | Dec 16, 2019 | REPLY to Response to Motion re 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay filed by TransUnion Rental Screening Solutions, LLC. (Attachments: # 1 Exhibit C)(Sabalewski, Travis) (Entered: 12/16/2019) |
| | Dec 17, 2019 | Reset Deadlines as to 28 MOTION to Seal & Request to File Sealed Documents Conventionally, 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay. Motion Hearing set for 1/17/2020 at 10:00 AM in Alexandria Courtroom 900 before District Judge T. S. Ellis III. (clar, ) (Entered: 12/17/2019) |
| 34 | Dec 17, 2019 | RESPONSE to Motion re 28 MOTION to Seal & Request to File Sealed Documents Conventionally filed by TransUnion Rental Screening Solutions, LLC. (Attachments: # 1 Exhibit A)(Sabalewski, Travis) (Entered: 12/17/2019) |
| 35 | Dec 27, 2019 | ORDERED that the motion is granted in part and the plaintiff may file the First Amended Complaint- Class Action that has been filed in the United States District Court for the Northern District of Georgia under seal and by providing a paper copy to the Clerk for scanning given that Plaintiff's Virginia counsel does not have access to that document. The remaining portion of the motion to seal is taken under advisement for seven days. If the defendant wishes to provide more detailed, specific information as to each redaction, it may do so within seven days and the court will consider that information on a individual basis. Signed by Magistrate Judge John F. Anderson on 12/27/2019. (choy, ) (Entered: 12/27/2019) |
| 36 | Dec 30, 2019 | Sealed Exhibit A by Karl Anthony Francis re 35 ORDER. (lcre, ) (Entered: 12/30/2019) |
| 37 | Jan 3, 2020 | RESPONSE in Support re 28 MOTION to Seal & Request to File Sealed Documents Conventionally filed by TransUnion Rental Screening Solutions, LLC. (Attachments: # 1 Exhibit A)(Sabalewski, Travis) (Entered: 01/03/2020) |
| 38 | Jan 7, 2020 | NOTICE of Appearance by Leonard Anthony Bennett on behalf of Karl Anthony Francis (Bennett, Leonard) (Entered: 01/07/2020) |
| 39 | Jan 13, 2020 | ORDER- It is hereby ORDERED that the remaining portion of this motion is granted and the material that has been filed under seal will remain under seal until further order of the court. By granting this motion to seal, the undersigned is not making a decision that the information that is being allowed to be filed under seal pursuant to this motion will remain under seal throughout this proceeding and will not be disclosed to the public during any hearing or trial before the District Judge. Signed by Magistrate Judge John F. Anderson on 1/13/2020. (See order for further details). (acha, ) (Entered: 01/13/2020) |
| 40 | Jan 17, 2020 | Minute Entry for proceedings held before District Judge T. S. Ellis, III: Motion Hearing held on 1/17/2020 re 22 MOTION to Transfer Case pursuant to First-to-File Rule or, Alternatively, for a Stay filed by TransUnion Rental Screening Solutions, LLC.Casey Nash and E. Michelle Drake appeared on behalf of the plaintiff. Alison Toepp and Michael O'Neil appeared on behalf of the defendant.Matter argued. Motion 22 DENIED. Court will hold in abeyance the motion to stay. Discovery will be stayed until further order of the court. Party to file a motion for class certification suit within three (3) weeks from todays date. Local rules to govern responses. Court will then decide how the case will proceed and set motion hearings at that time. Order to follow. Court Reporter: P. Kaneshiro-Miller(tran) (Entered: 01/17/2020) |

**Bloomberg Law®**

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Francis v. TransUnion Rental Screening Solutions, LLC, Docket No. 1_19-cv-01185 (E.D. Va. Sep 13, 2019), Court Docket

# General Information

**Court**                        United States District Court for the Eastern District of Virginia;
                                 United States District Court for the Eastern District of Virginia

**Federal Nature of Suit**       Consumer Credit[480]

**Docket Number**                1:19-cv-01185

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

---

KARL ANTHONY FRANCIS,

                     Plaintiff,

vs.

TRANSUNION RENTAL SCREENING
SOLUTIONS, LLC,

                    Defendant.

Civil Action No.: 1:19-**cv**-1185

**JURY TRIAL DEMANDED**

---

### COMPLAINT

Plaintiff Karl Anthony Francis ("Plaintiff"), by and through his attorneys, brings the following Complaint on behalf of himself and the classes set forth below and states as follows:

### INTRODUCTION

1.    This is a class action for damages, costs and attorneys' fees brought against TransUnion Rental Screening Solutions, LLC ("Defendant" or "TURSS") pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA").

2.    Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3.    Defendant falsely reported to Plaintiff's potential landlord that Plaintiff is a serial criminal. Plaintiff is not a serial criminal.

4.      Defendant's inaccurate reporting cost Plaintiff his ability to rent the property of his choice, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

5.      Defendant's inaccurate report could have been easily remedied had Defendant consulted the current public record prior to issuing Plaintiff's report to his prospective landlord.

6.      Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

7.      As a result of Defendant's conduct, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings a claim for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA.

## THE PARTIES

8.      Plaintiff Karl Anthony Francis is a natural person who resides in Arlington, Virginia, and who is a "consumer" protected by the FCRA.

9.      Defendant TransUnion Rental Screening Solutions, LLC ("TURSS") is a Delaware corporation doing business throughout the United States, including in the State of Virginia, and has a principal place of business located at 5889 South Greenwood Plaza Boulevard, Suite 201, Greenwood Village, CO 80111. TURSS is a wholly-owned subsidiary of TransUnion, LLC, which is wholly owned by TransUnion Intermediate Holdings, Inc.

10.     Among other things, Defendant sells consumer reports, often called background checks and credit reports, to landlords for their use in deciding whether to rent to a prospective tenant. These reports are sold to landlords in connection with a business transaction initiated by the consumer.

2

11.     Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

14.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting. It regulates all consumer reports such as the tenant screening report prepared in Plaintiff's name.

15.     In the parlance of the FCRA, background checks, including tenant screening reports, are "consumer reports," and providers of background checks like TURSS are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

16.     The FCRA provides a number of protections for housing applicants who are subject to background checks.

3

17.     The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

18.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

**FACTS**

**Defendant's Inaccurate Tenant Screening Report**

19.     In early February 2019, Plaintiff and his wife, Elisabeth Farny ("Ms. Farny"), sought to rent an apartment in Alexandria, Virginia.

20.     In looking for a rental property, Plaintiff and Ms. Farny found only one that met their needs, an apartment unit at the Reserve at Potomac Yard Apartments ("Potomac Yard") in Alexandria, Virginia.

21.     Plaintiff and Ms. Farny had a preference for renting at Potomac Yard because it was in a convenient location. In early February 2019, Ms. Farny had accepted a promising new job offer in Alexandria and had to relocate from Washington, D.C., while Plaintiff had accepted a promising job offer in Maryland and had to relocate from Pennsylvania. Potomac Yard was centrally located and was only a five minute walk from Ms. Farny's new place of employment and a 20 minute drive from Plaintiff's new place of employment. And it was an affordable and attractive option given the quality of units and numerous amenities.

22.     Potomac Yard was managed by Equity Residential Management, L.L.C. ("Equity Management").

4

23.     During the week of February 11, 2019, Plaintiff and Ms. Farny contacted Potomac Yard by telephone and spoke with Equity Management's Leasing Manager, Laura Falletta ("Ms. Falletta"), expressing their interest to rent an apartment unit for approximately $1,600.00 per month.

24.     Sometime during the week of February 11, 2019, Plaintiff and Ms. Farny met with Ms. Falletta at Potomac Yard and were given a tour of the complex and available apartment units. After completing the tour, Ms. Falletta instructed Plaintiff and Ms. Farny to complete a joint rental application online and submit payment, which would cover multiples fees.

25.     Later that same day, Plaintiff and Ms. Farny completed the joint rental application on a computer in Potomac Yard's lobby and submitted it, along with their debit card information for payment of multiple fees, including an apartment unit holding fee, two months' rent, and a security deposit, totaling approximately $3,500.00.

26.     Shortly thereafter, Ms. Falletta presented Plaintiff and Ms. Farny with a copy of the lease, which they both signed, and informed them that they could move into their apartment unit on February 16, 2019.

27.     Immediately thereafter, in preparation for their fast-approaching move-in date, Plaintiff and Ms. Farny ordered furniture for their apartment, including, but not limited to, a bed frame, mattress, dining room table, and chairs. They also set up payment for water, electricity, internet, and cable television service.

28.     Potomac Yard contracted with TURSS to provide tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant was eligible to rent an apartment unit.

5

29.     On or about February 14, 2019, Potomac Yard obtained a consumer report regarding Plaintiff from TURSS, which it calls a "Resident Screening Report" ("the Report"), which included a compilation of Plaintiff's credit report, a criminal record report, and eviction report.

30.     The Report is a consumer report regulated by the FCRA.

31.     The "Criminal Report" section of the Report included false information about three separate criminal cases, including multiple charges, *none* of which pertain to Plaintiff Karl Francis.

32.     The report included the following information about the first criminal case that was misattributed to Plaintiff:

Dataset: NJ Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A
Aliases: no aliases found
Sex: U
Person Physical Features: No Physical Features listed
Activity Type: CRIMINAL/TRAFFIC
Court Record Id: 15005435
Jurisdiction Description: ESSEX

Charge Sequence Id: 1
        Charge    Description:    TERRORISTIC    THREATS-THREATEN
        IMMINENT DEATH-PURP FEAR
        Charge Disposition Date: 2016-08-23
        Plea Negotiated Indicator: false
        Plea Description: DISMISS PLEA BARG
        Plea Guilty Indicator: false
        Plea No Contest Indicator: false

Charge Sequence Id: 2
        Charge Description: POSS OF WAEPON FOR UNLAWFUL
        PURPOSE-OTHER WEAPON
        Charge Disposition Date: 2016-08-23
        Plea Negotiated Indicator: false
        Plea Description: GUILTY PLEA AS CHARG

6

Please Guilty Indicator: true
Please No Contest Indicator: false

Charge Sequence Id: 3

Charge Description: UNLAWFUL POSS WEAP - OTHER WEAPONS
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: DISMISS PLEA BARG
Plea Guilty Indicator: false
Plea No Contest Indicator: false

Appealed From Lower Court: false

33.     The report included the following information about the second criminal case that

was misattributed to Plaintiff:

Dataset: NJ Superior Court
Dataset: NJ Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A
Aliases: no aliases found
Sex: U
Person Physical Features: No Physical Features listed
Activity Type: CRIMINAL/TRAFFIC
Court Record Id: 15001885
Jurisdiction Description: ESSEX

Charge Sequence Id: 1

Charge Description: CREDIT CARD CRIMES-POSSESS
MATERIAL ETC USE IN SCANNER
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: DISMISS PLEA BARG
Plea Guilty Indicator: false
Plea No Contest Indicator: false

Charge Sequence Id: 2

Charge Description: OBTAIN/POSSESS A SYNTHETIC
CANNABINOID
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: GUILTY PLEA AS CHARG

7

Plea Guilty Indicator: true
Plea No Contest Indicator: false

Charge Sequence Id: 3
Charge Description: RECEIVING STOLEN PROP-KNOW PROP STOLEN-VAL 500-74999 ETC
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: DISMISS PLEA BARG
Plea Guilty Indicator: false
Plea No Contest Indicator: false

Appealed from Lower Court: false

34.     The report included the following information about a third criminal case that was

misattributed to Plaintiff:

Dataset: NJ Superior Court
Dataset: NJ Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A
Aliases: no aliases found
Sex: U
Person Physical Features: No Physical Features listed
Activity Type: CRIMINAL/TRAFFIC
Court Record Id: 14004387
Jurisdiction Description: ESSEX

Charge Sequence Id: 1
Charge Description: TERRORISTIC THREATS-THREATEN IMMENT DEATH-PURP FEAR
Charge Disposition Date: 2016-11-01

Appealed from lower court: false

35.     TURSS's reporting was false. The aforementioned criminal charges and guilty

dispositions from Essex County should not have been included in Plaintiff's Report.

36.     Plaintiff has never been charged with or convicted of any of the aforementioned

criminal offenses.

8

37.     Any member of the public who took a five minute cursory review of Plaintiff's public record could confirm the flaw in the TURSS report about Plaintiff because contrary to Defendant's representation in its reports that the original public records did not contain a date of birth, in fact, all of the original public records do contain a date of birth. Specifically, the original public records contain a date of birth which has a different month, day and year from Plaintiff's date of birth. The year of birth on the original public records is 1990. Plaintiff was born 28 years earlier, in 1962.

38.     It is indisputable that prior to supplying the report about Plaintiff to Potomac Yard, TURSS failed to consult current public records in Essex County, New Jersey, which indicate that the aforementioned criminal charges and guilty dispositions belong to Plaintiff's *son*, named Karl Anthony Francis ("Convicted Misdemeanant Karl Francis"). Had TURSS actually consulted or obtained the underlying court records, it would have seen an obvious discrepancy between Convicted Misdemeanant Karl Francis and Plaintiff.

39.     On February 15, 2019, Ms. Farny received a telephone call from Ms. Falletta informing her that Potomac Yard received Plaintiff's background check and that there was an issue with his criminal history. Ms. Farny immediately asked what the issue was and Ms. Falletta informed her that Plaintiff's background check indicated that he had a significant criminal record. Ms. Farny told Ms. Falletta that Plaintiff did not have a significant criminal record and that there must have been a mistake. Ms. Falletta stated that she would investigate the background check issue further and get back to Ms. Farny the following day with more information. However, Ms. Falletta informed Ms. Farny that she and Plaintiff would no longer be allowed to move into their unit at Potomac Yard on February 16, 2019, as previously agreed.

9

40.     Upon speaking with Ms. Farny about her call with Ms. Falletta, Plaintiff was humiliated that his potential landlord now thought he was a serial criminal, especially considering that he had truthfully stated in the joint rental application that he was not.

41.     Later that same day, Ms. Farny received email correspondence from Ms. Falletta, on behalf of Equity Residential, stating that she and Plaintiff's joint rental application had been denied.

42.     On February 16, 2019, Ms. Farny received a follow-up telephone call from Ms. Falletta. Plaintiff got on the phone, stated that they were being denied an apartment based upon false criminal record information belonging to his son who was born 28 years after him, and demanded contact information for the company who prepared his background check. Ms. Falletta stated that she was bound by the information contained within TURSS's report and that he needed to contact TURSS if he wanted to discuss the information in his report. She then provided Plaintiff with TURSS's telephone number.

43.     On February 18, 2019, having still not seen a copy of the Report, Plaintiff placed a telephone call to TURSS and spoke with a male representative. After providing his identification information, Plaintiff informed the representative that he had recently applied for housing at Potomac Yard and it had been brought to his attention that TURSS completed a background check in his name that contained inaccurate criminal record information. Plaintiff informed the representative that he was calling to dispute the inaccurate criminal record information contained within his background check and requested that TURSS reinvestigate and provide him with an updated copy of his report.

44.     On February 20, 2019, with the assistance of counsel, Plaintiff sent a 15 U.S.C. § 1681g file request to TURSS.

45.     On February 21, 2019, Plaintiff received email correspondence from TURSS,

which read:

> We received you request for investigation regarding your potential criminal history on 02/16/2019. After further investigation, our findings show the records in our database under 15005435, 15001885 and 14004387 have been confirmed as inaccurate or incomplete public record information based on the following additional record details obtained from the New Jersey, Essex County Superior Court – Criminal website.
>
> On 02/19/2019 we confirmed the records 15005435, 15001885 and 14004387 **do not match your personal identifying information.**
>
> Based on the additional record details obtained from the New Jersey, Essex County Superior Court – Criminal website our office has suppressed this data from your consumer file as a preventative measure and the data will not show on a future criminal background screening from TransUnion Rental Screening Solutions. A copy of the updated report has been enclosed.

(emphasis added).

46.     On February 28, 2019, TURSS responded to Plaintiff's 15 U.S.C. § 1681g file

request and enclosed two documents: 1) the aforementioned copy of Plaintiff's Report, created on

February 14, 2019, which falsely reported Plaintiff as a convicted criminal, and 2) an Application

Summary, created on February 28, 2019, which indicated that no criminal records were found in

his name.

47.     After Potomac Yard denied Plaintiff's joint rental application, he suffered the

following economic damages: 1) his $200 security deposit was never refunded; 2) his water and

electricity, internet, and cable television fees for the month of February 2019 were never refunded;

and 3) he had to pay a fee to return all of the apartment furniture he ordered from Amazon.

48.     As a result of the erroneous information contained within TURSS's Report,

Plaintiff and Ms. Farny had to continue living in her apartment in Washington, D.C., forcing her

to spend a significant amount of additional time each morning commuting to her new job in

11

Alexandria, Virginia via public transit. Plaintiff and Ms. Farny also spent another month searching for places to rent before they found an apartment in Arlington, Virginia in March 2019.

49.     But for TURSS's false Report, Plaintiff's joint rental application would have been accepted by Potomac Yard and he and Ms. Farny would have been allowed to move into the unit they desired to rent on February 16, 2019, as originally scheduled.

50.     TURSS has been sued many times for its failure to use reasonable procedures to assure that the rental-purposed consumer reports it sells are maximally accurate. TURSS knows that its process for obtaining and accurately reporting, updating, and investigating criminal public records is so shoddy that it leads to material inaccuracies. TURSS's parent company, TransUnion, has been admonished by at least one federal court that it doesn't comply with the FCRA.

51.     Among many other cases, for instance, a jury recently returned a verdict in favor of plaintiffs against TransUnion for its failure to use reasonable procedures to assure maximum possible accuracy in erroneously reporting that the plaintiffs in that case were terrorists, money launderers, and narcotics traffickers on the Office of Foreign Asset Control's "blocked persons" list. *Ramirez v. TransUnion, LLC*, No. 3:13CV632 (N.D. Cal.).

52.      The injuries suffered by Plaintiff as a direct result of TURSS's erroneous reporting are the type of injuries that the FCRA was enacted to address.  At common law, TURSS's conduct would have given rise to causes of action based on defamation and invasion of privacy.

53.     As a direct result of TURSS's conduct, Plaintiff has suffered these injuries resulting in damages, including the inability to rent the unit he desired, the expenditure of time and money looking for another unit and trying to correct TURSS's erroneous Report; damage to his reputation; physical injury as a result of emotional distress; damage to his relationship with his wife; loss of

12

sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings Count I as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Inaccurate Matching Class, defined as:

> All individuals on whom Defendant prepared erroneous consumer reports including criminal records, where the information was included on the report based on a name match, to the exclusion of a match based on date of birth. The class begins on the date two years prior to the filing of this Complaint and ends on the date the class list is prepared.

55.     Plaintiff also brings Count I as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Verified Disputes Class, defined as

> All individuals on whom Defendant prepared erroneous consumer reports including criminal records, where the information that was included on the report was subsequently removed based a dispute made by the consumer. The class begins on the date two years prior to the filing of this Complaint and ends on the date the class list is prepared.

56.     Class certification is appropriate under Fed. R. Civ. P. 23(a).

57.     Numerosity:  The classes are so numerous that joinder of all class members is impracticable. Given the volume of Defendant's business, there are hundreds or thousands of class members.

58.     Typicality: Plaintiff's claims are typical of the members of the classes.  It is typical for Defendant to match consumers to criminal records using name to the exclusion of date of birth. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

59.     Adequacy: Plaintiff will fairly and adequately protect the interests of the classes

13

because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the classes.

60.     Commonality: This case presents common questions of law and fact, including but not limited to:

        a.   Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal convictions based on a name-only match;

        b.   Whether Defendant's violations of the FCRA were willful; and

        c.   The proper measure of damages.

61.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because, *inter alia*, questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

62.     In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

63.     Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

64.     Plaintiff intends to send notice to all members of the classes to the extent required by Rule 23(c)(2). The names and addresses of the class members are available from Defendant's records.

### CLAIMS FOR RELIEF
#### COUNT I
#### 15 U.S.C. § 1681e(b)
#### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
#### (On Behalf of Plaintiff, the Inaccurate Matching Class and the Verified Disputes Class)

65.     Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

66.     Defendant violated 15 U.S.C. § 1681e(b) by preparing a consumer report relating to Plaintiff without following reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

67.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

68.     In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

15

69.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

70.     WHEREFORE, Plaintiff prays for relief as follows:

a. Determining that this action may proceed as a class action under Rule 23;

b. Designating Plaintiff as the class representative for the classes;

c. Designating Plaintiff's counsel as counsel for the classes;

d. Issuing proper notice to the classes at Defendant's expense;

e. Determining that Defendant negligently and/or willfully violated the FCRA;

f. Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

g. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

71.     Plaintiff demands a trial by jury.

By:_____*/s/ Casey S. Nash*_____
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

16

Email: casey@kellyguzzo.com
*Counsel for Plaintiff*

# EXHIBIT 6

Current on Bloomberg Law as of 2020-01-21 12:34:02

**U.S. District Court**
**Eastern District of Virginia - (Richmond)**
CIVIL DOCKET FOR CASE #: 3:19-cv-00790-MHL

# Hector v. Trans Union Rental Screening Solutions, Inc.

## DOCKET INFORMATION
Minimize

| | |
|---|---|
| **Date Filed:** | Oct 25, 2019 |
| **Nature of suit:** | 480 Consumer Credit |
| **Assigned to:** | District Judge M. Hannah Lauck |
| **Cause:** | 15:1681 Fair Credit Reporting Act |
| **Jurisdiction:** | Federal Question |
| **Jury demand:** | Plaintiff |

# Parties and Attorneys

Expand All  Minimize

**Plaintiff**

**Kaila Hector**
on behalf of herself and all others similarly situated
Plaintiff

Representation

**Leonard Anthony Bennett**
*Consumer Litigation Associates*
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
(757) 930-3660
Fax: (757) 930-3662
lenbennett@clalegal.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Andrew Joseph Guzzo**
*Kelly Guzzo PLC*
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
(703) 424-7576
Fax: (703) 591-0167
aguzzo@kellyguzzo.com
ATTORNEY TO BE NOTICED

**Casey Shannon Nash**
*Kelly Guzzo PLC*
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
(703) 424-7571
Fax: (703) 591-0167
casey@kellyguzzo.com
ATTORNEY TO BE NOTICED

**Craig Carley Marchiando**
*Consumer Litigation Associates*
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
(757) 930-3660
Fax: (757) 930-3662
craig@clalegal.com
ATTORNEY TO BE NOTICED

**Eleanor Michelle Drake**
*Berger & Montague PC*
43 S.E. Main Street
Suite 505
Minneapolis, MN 55414
(612) 594-5999
Fax: (612) 584-4470
emdrake@bm.net
**NA**
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Elizabeth W. Hanes**
*Consumer Litigation Associates (Richmond)*
626 E Broad Street
Suite 300
Richmond, VA 23219
(757) 930-3660
Fax: (757) 930-3662
elizabeth@clalegal.com
ATTORNEY TO BE NOTICED

**Joseph Christopherson Hashmall**
*Berger & Montague PC*
43 S.E. Main Street
Suite 505
Minneapolis, MN 55414

**Kristi Cahoon Kelly**
*Kelly Guzzo PLC*
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030

(612) 594-5999
Fax: (612) 584-4470
jhashmall@bm.net
**NA**
PRO HAC VICE
ATTORNEY TO BE NOTICED

(703) 424-7570
Fax: (703) 591-9285
kkelly@kellyguzzo.com
ATTORNEY TO BE NOTICED

**Defendant**

Representation

**Alison Ross Wickizer Toepp**
*Reed Smith LLP (Richmond)*
901 East Byrd Street
Suite 1900
Richmond, VA 23219-4068
(804) 344-3465
Fax: (804) 344-3410
atoepp@reedsmith.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Michael Charles O'Neill**
*Reed Smith LLP (IL-NA)*
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-2879
Fax: (312) 207-6400
michael.oneil@reedsmith.com
**NA**
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Trans Union Rental Screening Solutions, Inc.**
Defendant

**Albert Edward Hartmann**
*Reed Smith LLP (IL-NA)*
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-2821
Fax: (312) 207-6400
ahartmann@reedsmith.com
**NA**
PRO HAC VICE
ATTORNEY TO BE NOTICED

**Travis Aaron Sabalewski**
*Reed Smith LLP (Richmond)*
901 East Byrd Street
Suite 1900
Richmond, VA 23219-4068
(804) 344-3400
Fax: (804) 344-3410
tsabalewski@reedsmith.com
ATTORNEY TO BE NOTICED

**Kristen DeGrande**
*Reed Smith LLP (IL-NA)*
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-2842
Fax: (312) 207-6400
kdegrande@reedsmith.com
**NA**
PRO HAC VICE
ATTORNEY TO BE NOTICED

# Docket Entries

Print Entries Request Entries  Reverse Entries
Numbers shown are court assigned numbers

| Entry | Filed | Description |
|---|---|---|
| 1 | Oct 25, 2019 | Complaint (Filing Fee: $400, Receipt Number: 0422-6906565), filed by Kaila Hector. (Attachments: # 1 Civil Cover Sheet) (Bennett, Leonard) (Entered: 10/25/2019) |
| 2 | Oct 25, 2019 | Proposed Summons re 1 Complaint by Kaila Hector. (Bennett, Leonard) (Main Document 2 replaced on 10/29/2019) (jsau, ). (Entered: 10/25/2019) |
|  | Oct 25, 2019 | Initial Case Assignment to District Judge John A. Gibney, Jr.. (smej, ) (Entered: 10/25/2019) |
| 3 | Oct 29, 2019 | Summons Issued as to Trans Union Rental Screening Solutions, Inc.. NOTICE TO ATTORNEY: REMOVE HEADERS and print out two electronically issued summons and one copy of the attachments for each defendant to be served with the complaint. (smej, ) (Main Document 3 replaced on 10/29/2019) (jsau, ). (Entered: 10/25/2019) |
| 4 | Nov 13, 2019 | NOTICE by Kaila Hector of Related Case (Bennett, Leonard) (Entered: 11/13/2019) |
| 5 | Nov 18, 2019 | ORDER - The plaintiff contends that this case will involve interpreting the settlement agreement in Clark and Anderson. Accordingly, in the interest of judicial efficiency and economy, the Court |

Case 6:18-cv-05141-NBF-JB Document 173 Filed 01/24/20 Page 178 of 199
Case 6:18-cv-05141-NBF-JB Document 173 Filed 01/24/20 Page 178 of 199
Hector v. Trans Union Rental Screening Solutions, Inc., Docket No. 3_19-cv-00790 (E.D. Va. Oct 25, 2019), Court Docket

|   | | REASSIGNS this case to Judge Lauck. SEE ORDER FOR DETAILS. Signed by District Judge John A. Gibney, Jr. on 11/18/2019. (smej, ) (Entered: 11/18/2019) |
|---|---|---|
|   | Nov 18, 2019 | Case Reassigned to District Judge M. Hannah Lauck. District Judge John A. Gibney, Jr. no longer assigned to the case. (smej, ) (Entered: 11/18/2019) |
| 6 | Dec 5, 2019 | Consent MOTION for Extension of Time to File Answer re 1 Complaint by Trans Union Rental Screening Solutions, Inc.. (Attachments: # 1 Proposed Order)(Toepp, Alison) (Entered: 12/05/2019) |
| 7 | Dec 5, 2019 | Corporate Disclosure Statement by Trans Union Rental Screening Solutions, Inc.. (Toepp, Alison) (Entered: 12/05/2019) |
| 8 | Dec 6, 2019 | Motion to appear Pro Hac Vice by Michael Charles O'Neil and Certification of Local Counsel Alison R.W. Toepp Filing fee $ 75, receipt number 0422-6972432. by Trans Union Rental Screening Solutions, Inc.. (Toepp, Alison) (Entered: 12/06/2019) |
| 9 | Dec 6, 2019 | Motion to appear Pro Hac Vice by Kristen DeGrande and Certification of Local Counsel Alison R.W. Toepp Filing fee $ 75, receipt number 0422-6972471. by Trans Union Rental Screening Solutions, Inc.. (Toepp, Alison) (Entered: 12/06/2019) |
| 10 | Dec 6, 2019 | Motion to appear Pro Hac Vice by Albert Edward Hartmann and Certification of Local Counsel Alison R.W. Toepp Filing fee $ 75, receipt number 0422-6972484. by Trans Union Rental Screening Solutions, Inc.. (Toepp, Alison) (Entered: 12/06/2019) |
| 11 | Dec 6, 2019 | ORDER - IT IS HEREBY ORDERED that the Consent Motion 6 is GRANTED, and it is FURTHER ORDERED that the time for Defendant TransUnion Rental Screening Solutions, LLC, specially appearing by counsel, to serve its responsive pleadings shall be extended to and including December 31, 2019. Such pleadings or motions shall be considered timely-filed by the Court. SEE ORDER FOR DETAILS. Signed by District Judge M. Hannah Lauck on 12/06/2019. (smej, ) (Entered: 12/06/2019) |
| 12 | Dec 10, 2019 | ORDER granting 8 Motion for Michael Charles O'Neil to appear as Pro hac vice for Trans Union Rental Screening Solutions, Inc.. Signed by District Judge M. Hannah Lauck on 12/09/2019. (smej, ) (Entered: 12/10/2019) |
| 13 | Dec 10, 2019 | ORDER granting 9 Motion for Kristen DeGrande to appear as Pro hac vice for Trans Union Rental Screening Solutions, Inc.. Signed by District Judge M. Hannah Lauck on 12/09/2019. (smej, ) (Entered: 12/10/2019) |
| 14 | Dec 10, 2019 | ORDER granting 10 Motion for Albert Edward Hartmann to appear as Pro hac vice for Trans Union Rental Screening Solutions, Inc.. Signed by District Judge M. Hannah Lauck on 12/09/2019. (smej, ) (Entered: 12/10/2019) |
| 15 | Dec 30, 2019 | MOTION to Dismiss for Lack of Jurisdiction by Trans Union Rental Screening Solutions, Inc.. (Sabalewski, Travis) (Entered: 12/30/2019) |
| 16 | Dec 30, 2019 | Memorandum in Support re 15 MOTION to Dismiss for Lack of Jurisdiction filed by Trans Union Rental Screening Solutions, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Sabalewski, Travis) (Entered: 12/30/2019) |
| 17 | Dec 30, 2019 | Response to 4 NOTICE of Related Case filed by Trans Union Rental Screening Solutions, Inc.. (Attachments: # 1 Exhibit A)(Sabalewski, Travis) (Entered: 12/30/2019) |
| 18 | Jan 10, 2020 | MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss for Lack of Jurisdiction by Kaila Hector. (Attachments: # 1 Proposed Order)(Hanes, Elizabeth) (Entered: 01/10/2020) |
| 19 | Jan 10, 2020 | Memorandum in Support re 18 MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss for Lack of Jurisdiction filed by Kaila Hector. (Hanes, Elizabeth) (Entered: 01/10/2020) |
| 20 | Jan 10, 2020 | ORDER. For good cause shown, this Court hereby grants Plaintiff's Motion for an Extension of Time deadline to respond to Defendant's Motion to Dismiss. Therefore, it is hereby ORDERED that Plaintiff shall respond on or before January 27, 2020, and the Defendant shall serve its reply on or before February 10, 2020. It is SO ORDERED. Signed by District Judge M. Hannah Lauck on 1/10/20. (jsau, ) (Entered: 01/10/2020) |
| 21 | Jan 13, 2020 | Motion to appear Pro Hac Vice by Joseph Christopherson Hashmall and Certification of Local Counsel Elizabeth W. Hanes Filing fee $ 75, receipt number 0422-7021865. by Kaila Hector. (Hanes, Elizabeth) (Entered: 01/13/2020) |

| 22 | Jan 13, 2020 | Motion to appear Pro Hac Vice by Eleanor Michelle Drake and Certification of Local Counsel Elizabeth W. Hanes Filing fee $ 75, receipt number 0422-7021882. by Kaila Hector. (Hanes, Elizabeth) (Entered: 01/13/2020) |
| 23 | Jan 14, 2020 | ORDER granting 21 Motion for Joseph Christopherson Hashmall to appear as Pro hac vice for Kaila Hector. Signed by District Judge M. Hannah Lauck on 1/14/2020. (smej, ) (Entered: 01/14/2020) |
| 24 | Jan 14, 2020 | ORDER granting 22 Motion for Eleanor Michelle Drake to appear as Pro hac vice for Kaila Hector. Signed by District Judge M. Hannah Lauck on 1/14/2020. (smej, ) (Entered: 01/14/2020) |
| 25 | Jan 16, 2020 | NOTICE of Appearance by Kristi Cahoon Kelly on behalf of Kaila Hector (Kelly, Kristi) (Entered: 01/16/2020) |
| 26 | Jan 16, 2020 | NOTICE of Appearance by Andrew Joseph Guzzo on behalf of Kaila Hector (Guzzo, Andrew) (Entered: 01/16/2020) |
| 27 | Jan 16, 2020 | NOTICE of Appearance by Casey Shannon Nash on behalf of Kaila Hector (Nash, Casey) (Entered: 01/16/2020) |

**Bloomberg Law®**

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

# General Information

| | |
|---|---|
| **Court** | United States District Court for the Eastern District of Virginia; United States District Court for the Eastern District of Virginia |
| **Federal Nature of Suit** | Consumer Credit[480] |
| **Docket Number** | 3:19-cv-00790 |

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

KAILA HECTOR and WILLIAM AIRD,
on behalf of themselves and all others similarly
situated,

        *Plaintiffs*,

        v.

TRANSUNION RENTAL SCREENING
SOLUTIONS, INC.,

        *Defendant*.

Civil Action No. 3:19-cv-00790

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs KAILA HECTOR and WILLIAM AIRD, on behalf of themselves and all others

similarly situated, bring the following Amended Class Action Complaint and state as follows:

### PRELIMINARY STATEMENT

1.    This is a consumer class action for damages, costs and attorneys' fees brought

against Defendant TRANSUNION RENTAL SCREENING SOLUTIONS, INC. ("Defendant" or

"TURSS"), based upon the Defendant's widespread violations of the Fair Credit Reporting Act,

15 U.S.C. §§ 1681–1681x ("FCRA").

2.    Defendant is a consumer reporting agency that compiles and maintains files on

consumers on a nationwide basis. It sells consumer reports generated from its database and

furnishes these consumer reports to landlords who use the reports to make decisions regarding

whether to rent to certain consumers.

3.    Despite the public availability of court records that conclusively demonstrate that

eviction cases have been dismissed, withdrawn, or vacated, Defendant routinely fails to obtain up-

to-date information pertaining to the disposition of those cases and publishes harmful, inaccurate

"tenant screening" reports about consumers like Plaintiffs to potential landlords. Additionally, Defendant fails to report accurate information by reporting a single eviction as multiple evictions, and otherwise misreporting information related to eviction cases.

## The PARTIES and JURISDICTION

4.      Plaintiff Kaila Hector ("Ms. Hector") is an adult individual who previously resided in Hampton, Virginia and is a "consumer" as defined by FCRA section 1681a(c).

5.      Plaintiff William Aird ("Mr. Aird") is an adult individual who resides in Chesapeake, Virginia and is a "consumer" as defined by FCRA section 1681a(c).

6.      Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") is a "consumer reporting agency" ("CRA") as defined by FCRA section 1681a(f) and regularly does business in this District. TURSS is a Delaware corporation doing business throughout the United States, including in the State of Virginia, and has a principal place of business in Illinois. TURSS is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports to third parties, including within this District and Division.

7.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

8.      The Court has personal jurisdiction over TURSS. TURSS regularly reports Virginia records to potential landlords and business. TURSS regularly sells reports to potential landlords and businesses located in Virginia. TURSS regularly reports records relating to Virginia consumers. For example, TURSS sold at least one report (containing Virginia records) about Plaintiff Aird, a Virginia resident, to a rental property manager located in Virginia. In total, TURSS has reported hundreds of thousands, if not millions, of records which originated in Virginia's

courts, including courts in this district, and has sold and resold information about thousands, if not tens or hundreds of thousands, of Virginians and people with Virginia records, to its clients.

9.     On information and belief, TURSS also regularly advertises and markets reports to customers and potential customers located in Virginia. TURSS regularly advertised and markets itself as providing records from around the country, including eviction records from Virginia.

10.    TURSS also conducts investigations and creates reports on individuals located in this District and Division.

11.    TURSS reports records from Virginia's courts. These records are stored and maintained by the Executive Secretary of the Supreme Court of Virginia, in Richmond, Virginia.

12.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including but not limited, the collection of the underlying court records from the Executive Secretary of the Commonwealth of Virginia, which is based in Richmond, Virginia. Additionally, TURSS's omission, its failure to update the underlying court records, also occurred in Richmond, Virginia. Important witnesses and records necessary for the prosecution of this case are also based in Richmond, Virginia, including the Executive Secretary, as well as employees of the Office of the Executive Secretary. Specifically, the original and updated court records are located in Richmond, Virginia, and will establish that the information reported about Plaintiffs was inaccurate. Additionally, employees of the Office of the Executive Secretary will provide evidence related to Defendant's willfulness, for example by providing evidence related to the availability of records online.

## FACTUAL ALLEGATIONS

*As to Defendant's Reporting of Eviction Litigation Information*

3

13.     For many years, TURSS has reported information pertaining to residential eviction litigation ("eviction information") without retrieving the actual underlying court records themselves—or even more manageable digital representations—for the purpose of creating and selling consumer reports to third-party landlords and rental property managers.

14.     TURSS fails to obtain the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

15.     Obtaining distilled, incomplete public record information was the impetus for regulatory investigations of TransUnion, LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC (the "national CRAs"), and dozens of FCRA class action lawsuits throughout the United States, including in this District.[1]

16.     For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that the CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[2]

17.     Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

---

[1]     *See, e.g., Soutter v. Equifax Info. Serv's, LLC,* Case No. 3:10-cv-107 (E.D. Va.); *Clark v. Experian Info. Sols., Inc.,* Case No. 3:16-cv-32 (E.D. Va.); *Anderson v. TransUnion, LLC,* Case No. 3:16-cv-558 (E.D. Va.); *Clark v. TransUnion, LLC,* Case No. 3:15-cv-00391 (E.D. Va.); *Thomas v. Equifax Info. Serv's, LLC,* No. 3:18-cv-684 (E.D. Va.).

[2]     CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[3]

18.    Other regulators, including the New York Attorney General, initiated investigations of the national CRAs, in part due to similar problems with the accuracy and currency of public record information in credit reports.

19.    The national CRAs ultimately entered into an agreement[4] with the New York Attorney General called the "National Consumer Assistance Plan" ("NCAP").

20.    As of July 1, 2017, pursuant to the requirements of the settlement and the NCAP, the national CRAs ceased including in credit reports civil judgment information that did not meet certain minimum standards. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the national CRAs.[5]

21.    At all times relevant to these allegations, TURSS was aware of the CFPB's and state attorneys' general investigations into the national CRA's public records practices, the NCAP, the various public records class actions pending throughout the United States, and its own obligations under the FCRA.

---

[3]    *Id.* at 2.1.2.

[4]    Settlement Agreement, *In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC,* http://www.ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf (last viewed July 9, 2018).

[5]    *See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed July 9, 2018).

22.  TURSS knows that the public record information it reports contains mistakes and incomplete information.

23.  TURSS knows that the information it reports for credit reporting purposes routinely does not include the most up-to-date status of the actual cases.

24.  Nevertheless, fully aware of the problems associated with the incomplete and inaccurate information it reports, TURSS continues to report eviction information to potential landlords via its SmartMove tenant screening product.

25.  TURSS markets its SmartMove product to landlords by noting that it can provide "renter credit, income estimate and eviction reports plus criminal background checks." It purports to offer "[a]dvanced matching logic" resulting in more accuracy. [6]

26.  On its website, TURSS asks potential landlords if there is ". . . anything more painful than evicting a tenant?"[7] and promises that the "Eviction Report" portion of the SmartMove product will help them predict future evictions because "prior evictions are highly predictive of future evictions."[8]

27.  According to TURSS, the information contained on an Eviction Report is generated based upon a "database of over 27 million eviction records." The Eviction Report "include court records on every file" and information on the Eviction Report comes "from a variety of sources including public court records, and are enhanced with data reported directly to TransUnion."[9]

---

[6]  TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., *TransUnion | SmartMove* , https://www.mysmartmove.com (last visited January 21, 2020).

[7]  TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., *Eviction Report*, https://www.mysmartmove.com/SmartMove/eviction-check.page (last visited January 21, 2020).

[8]  *Id.*

[9]  *Id.*

6

28.     The TURSS Eviction Reports includes: "Tenant judgment for possession and money[;] Unlawful detainers[;] Tenant judgments for rent[;] Failure to pay rent[; and] Writs and warrants of eviction[.]"[10]

29.     By its own admissions, TURSS is engaged in the business of assembling, evaluating, and disbursing eviction information concerning consumers for the purpose of furnishing consumer reports to landlords and rental property managers.

30.     The data and reports TURSS sells are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the eviction information included in each report bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer.

31.     Thus, the SmartMove reports that TURSS sells about thousands of consumers each year meet the definition of "consumer report" in FCRA section 1681a(d).

32.     TURSS is regulated by the FCRA and admits as much on its website.[11]

33.     TURSS routinely fails to report accurate information about eviction litigation, including the most up-to-date status of those cases because it fails to follow reasonable procedures to assure the maximum possible accuracy of the eviction information it sells about consumers. *See* 15 U.S.C. § 1681e(b).

34.     TURSS's practices and procedures regarding the reporting of eviction information, specifically its failure to report the most up-to-date status of eviction cases cause widespread harm to consumers.

---

[10]     *Id.*

[11]     *Id.* (noting that TURSS has "[o]ne of the largest evictions databases subject to the FCRA with 27+ million eviction records, covering all 50 states plus Washington D.C.").

*Plaintiffs' Experiences*

**Kaila Hector**

35.     On or about November 2017, Plaintiff Hector identified a house that she wanted lease.

36.     Plaintiff Hector contacted the owner, who indicated the house rented for approximately $1,300.00 per month.

37.     Plaintiff Hector completed an application and paid an application fee of $100.00. Plaintiff Hector also paid $50.00 in additional fees.

38.     As a part of her application, the owner obtained a SmartMove report about the Plaintiff. Plaintiff was required to pay for the cost of this report, approximately $50.00. TURSS created and sold the owner a SmartMove report about Plaintiff Hector that same day for a fee.

39.     Upon meeting with the owner of the house, Plaintiff Hector told the owner about her previous eviction in Virginia as well as the fact that she had paid any obligation associated with the eviction. The owner told Plaintiff Hector she wanted Plaintiff Hector to be her tenant and would be willing to give her the keys early. The owner advised Plaintiff Hector that the house was hers to rent, once the TURSS report came back consistent with their conversation.

40.     The report that TURSS provided regarding Plaintiff Hector was inaccurate and incorrectly double reported the same judgment under the heading "Eviction records."

41.     The two TURSS "eviction records" stated, in relevant part, as follows:

| | |
|---|---|
| **Name** | HECTOR, KAILA S |
| **Address**[12] | XXXX Goldsboro Dr #2 |
| | Hampton VA 23605 |
| **County** | Hampton District Court |

[12] The full address was included in Plaintiff Hector's TURSS report, but has been redacted for purposes of this publicly-filed Complaint.

| Record ID | MP45064565 |
|---|---|
| File Number | 650GV1001921000 |
| Action Date | 1/11/2011 |
| Case Type | Civil Judgment |
| Plaintiff | Cambridge Apartments LC |
| Judgment Amount | $879 |

| Name | HECTOR, KAILA S |
|---|---|
| Address | XXXX Goldsboro Dr #2 |
| | Hampton VA 23605 |
| County | Hampton District Court |
| Record ID | MP93521309 |
| File Number | 650GV1001921000 |
| Action Date | 6/6/2013 |
| Case Type | Civil Judgment |
| Plaintiff | Cambridge Apartments LC |
| Judgment Amount | $879 |

42.     This information was inaccurate because the information was reported as if Plaintiff Hector had two evictions that were unpaid two years apart in the amount of $879 each.

43.     In fact, the two reported evictions were actually the same case.

44.     Court records relating to the case reside with the Executive Secretary of the Commonwealth of Virginia, which is based in Richmond, Virginia.

45.     The publicly available court record clearly shows that only one case was initiated against Plaintiff Hector. The case was initiated on December 16, 2010. A default judgment was entered on January 11, 2011, and a notice of satisfaction was filed on June 6, 2013. No second case was ever brought against Plaintiff Hector.

9

46.     As a result of TURSS reporting two eviction judgments that were unpaid, and because this was contrary to what Plaintiff Hector had represented to the owner, the owner denied Plaintiff Hector's application. The owner told Plaintiff Hector that the existence of two judgments, as opposed to only one, was the reason she was denied.

47.     As a result of the inaccurate information, Plaintiff Hector was required to rent a less desirable apartment at the High Ridge Landing Complex in Boynton Beach, Florida. This apartment had a monthly rent of $1,700.00, approximately $300 higher per month than the house she wanted to lease. She lost the application fees paid to the owner, and she had to live with her mother for approximately one month while she sought new housing.

### William Aird

48.     On or about June 8, 2018, Plaintiff Aird applied to rent a home in Chesapeake, Virginia, where he planned to live with his wife and their grandson.

49.     As a part of his application, the rental property manager of the home obtained a SmartMove report about Plaintiff Aird. TURSS created and sold the property manager a SmartMove report about Plaintiff Aird that same day for a fee.

50.     The SmartMove report was inaccurate and incorrectly associated two judgments with Plaintiff Aird under the heading "Eviction records."

51.     The first TURSS "eviction record" stated, in relevant part, as follows:

| | |
|---|---|
| **Name** | WILLIAM AIRD |
| **Address**[13] | XXX OAK LAKE RUN CRES<br>CHESAPEAKE, VA 23320 |
| **Description** | Virginia Evictions |
| **Record ID** | MP87845257 |

---

[13] The full address was included in Plaintiff Aird's TURSS report, but has been redacted for purposes of this publicly-filed Complaint.

| File Number | 550GV1300287700 |
|---|---|
| County | Chesapeake City District Court |
| Action Date | 2/20/2013 |
| Case Type | Civil New Filing |
| Plaintiff | Oak Lake Apartments |
| Judgment Amount | $635 |

52.     This information was inaccurate because no judgment was ever entered against Plaintiff in case GV13-2877, let alone one for $635.

53.     Court records relating to the case reside with the Executive Secretary of the Commonwealth of Virginia, which is based in Richmond, Virginia.

54.     The publicly available court record clearly shows that the case was *dismissed* on March 8, 2013. *See* Exhibit A.

55.     The second TURSS "eviction record" stated, in relevant part, as follows:

| Name | WILLIAM AIRD |
|---|---|
| Address | XXX OAK LAKE RUN CRES CHESAPEAKE, VA 23320 |
| Description | Virginia Evictions |
| Record ID | MP85471440 |
| File Number | 550GV1300144800 |
| County | Chesapeake City District Court |
| Action Date | 1/25/2013 |
| Case Type | Civil New Filing |
| Plaintiff | Oak Lake Apartments |
| Judgment Amount | $314 |

56.     This information was inaccurate because no judgment was ever entered against Plaintiff Aird in case GV13-1448, let alone one for $314.

57.     Court records relating to the case reside with the Executive Secretary of the Commonwealth of Virginia, which is based in Richmond, Virginia.

58. The publicly available court record clearly shows that the case was *dismissed* on February 8, 2013. *See* Exhibit B.

59. Plaintiff Aird was never evicted from Oak Lake Apartments. He lived there until the expiration of his one-year lease in or about August 2013.

60. Nevertheless, pursuant to its automated programing and processes, TURSS recommended that the property manager reject Plaintiff Aird's rental application.

61. Solely as a result of the derogatory, inaccurate eviction information on the TURSS report, the property manager denied Plaintiff Aird's rental application.

62. Because their previous lease at another location expired and the new housing application was not approved, Plaintiff Aird, his wife, and his grandson have been forced to depend upon the kindness of friends for housing since the end of May 2018.

*Facts Regarding TURSS's Willfulness*

63. If TURSS had reasonable procedures to ensure maximum possible accuracy, it would not have reported multiple evictions for Plaintiff Hector and would not have reported Plaintiff Aird's dismissed unlawful detainer actions as cases resulting in a judgment. TURSS's reporting was inconsistent with publicly available records.

64. TURSS did not consult the readily available online court records before reporting the eviction records. If it had, it would have avoided its error.

65. Instead, TURSS chose to rely on stale and incomplete data, which was not up-to-date. TURSS likely did this because it was cheaper for TURSS to obtain information in this manner than to re-check the court data at or near the time of the report.

66. In addition to the conduct set forth above, TURSS's willful conduct is further reflected by, *inter alia*, the following:

a. The FCRA was enacted in 1970; TURSS has had 49 years to become compliant;

b. TURSS and its parent company have been repeatedly sued for misreporting public record information.[14]

c. TURSS is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

d. TURSS knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

e. TURSS voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

f. If TURSS had consulted the publicly available online court records, it would have easily discovered that the information it was reporting about Plaintiffs was inaccurate. However, TURSS failed to do so;

g. TURSS's violations of the FCRA were repeated and systematic.

67. At all times relevant hereto, TURSS's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. TURSS's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and TURSS will continue to engage in this

---

[14] *Anderson v. Trans Union LLC*, No. 3:16-cv-588 (E.D. Va.); *Clark v Trans Union LLC*, No. 3:15-cv-391 (E.D. Va.); *Walsh v. Trans Union, LLC*, No. 6:18-cv-00166, (M.D. Fla.).

conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs Hector and Aird bring this action on behalf of the Failure to Update Class for TURSS's violations of FCRA section 1681e(b), defined as:

> Within the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to an unlawful detainer action filed in the Commonwealth of Virginia, but which failed to state that the action had been withdrawn, dismissed, vacated, non-suited, satisfied or had resulted in a judgment for the tenant defendant at least 30 days prior to the date of the Defendant's report.

69.     Plaintiff Hector also brings this action on behalf of the Multiple Entries Class for TURSS's violations of the FCRA section 1681e(b), defined as:

> Within the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to an unlawful detainer or other eviction action where two distinct Record IDs are reported with the same File Number and County.

70.     The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiffs aver upon information and belief that the members of the Classes number in the thousands.

71.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' files with respect to two types of situations: eviction cases that had a judgment that had been

vacated, satisfied or otherwise withdrawn at least 30 days prior to the date Defendant prepared the report and/or reporting one case as multiple cases.

72.     Plaintiffs' claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

73.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs are committed to vigorously litigating this matter and have secured counsel very experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

74.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

75.     Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records and publicly available eviction litigation records.

76.     A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

15

## CLAIMS for RELIEF

### COUNT I – VIOLATION of FCRA § 1681e(b)

77.     Plaintiffs incorporate the foregoing paragraphs as though set forth at length herein.

78.     Pursuant to sections 1681n and 1681o of the FCRA, TURSS is liable to Plaintiffs and the members of the Classes for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of consumer reports it prepared and sold about Plaintiffs and other members of the Classes, in violation of 15 U.S.C. § 1681e(b). Specifically, TURSS failed to follow reasonable procedures to assure maximum accuracy of consumers reports when it prepared reports containing information pertaining to either: 1) eviction judgments that had been vacated, satisfied or otherwise withdrawn at least 30 days prior to the date Defendant prepared the report or 2) eviction records that were double reported.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an order granting the following relief:

A.     Certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Classes;

B.     Entering judgment for Plaintiffs and the members of the Classes against Defendant for statutory, actual, and punitive damages for violation of 15 U.S.C. §1681e(b) pursuant to 15 U.S.C. §§ 1681n and 1681o;

C.     Awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

D.     Granting such other and further relief as may be just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

KAILA HECTOR and WILLIAM AIRD, *on behalf of themselves and all others similarly situated.*

By:  */s/ Leonard A. Bennett*
 Leonard A. Bennett, VSB No. 37523
 Craig Marchiando, VSB No. 89736
 CONSUMER LITIGATION ASSOCIATES, P.C.
 763 J. Clyde Morris Blvd., Suite 1-A
 Newport News, VA 23601
 Tel: (757) 930-3660
 Fax: (757) 930-3662
 Email: lenbennett@clalegal.com
 Email: craig@clalegal.com

 Kristi C. Kelly, VSB #72791
 Email: kkelly@kellyguzzo.com
 Andrew J. Guzzo, VSB #82170
 Email: aguzzo@kellyguzzo.com
 Casey S. Nash, VSB# 84261
 KELLY GUZZO, PLC
 3925 Chain Bridge Road, Suite 202
 Fairfax, VA 22030
 Telephone: (703) 424-7572
 Facsimile: (703) 591-0167

 E. Michelle Drake, *Admitted Pro Hac Vice*
 Email: emdrake@bm.net
 Joseph C. Hashmall *Admitted Pro Hac Vice*
 Email: jhashmall@bm.net
 BERGER & MONTAGUE, P.C.
 43 SE Main Street, Suite 505
 Minneapolis, Minnesota 55414
 Telephone: (612) 594-5999
 Facsimile: (612) 584-4470

*Attorneys for Plaintiffs and the Classes*

17

Case 3:19-cv-00764-YNK-FBox Document 113-1 Filed 01/21/20 Page 20 of 99 Page ID# 160

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all counsel of record.

Alison Ross Wickizer Toepp
Reed Smith LLP (Richmond)
901 East Byrd Street
Suite 1900
Richmond, VA 23219-4068
Email: atoepp@reedsmith.com

Albert Edward Hartmann
Reed Smith LLP (IL-NA)
10 South Wacker Drive
40th Floor
Chicago, IL 60606
Email: ahartmann@reedsmith.com

Kristen DeGrande
Reed Smith LLP (IL-NA)
10 South Wacker Drive
40th Floor
Chicago, IL 60606
Email: kdegrande@reedsmith.com

Michael Charles O'Neill
Reed Smith LLP (IL-NA)
10 South Wacker Drive
40th Floor
Chicago, IL 60606
Email: michael.oneil@reedsmith.com

Travis Aaron Sabalewski
Reed Smith LLP (Richmond)
901 East Byrd Street
Suite 1900
Richmond, VA 23219-4068
Email: tsabalewski@reedsmith.com

/s/ Leonard A. Bennett
Leonard A. Bennett, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com